UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMIN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-248 (PLF) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

Defendants move, pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss plaintiff's complaint

and pursuant to Fed. R. Civ. P. 56(c) for summary judgment.  The Court is respectfully referred

to the attached statement of materials facts not in dispute, memorandum of points and authorities

and the attached supporting documents.  A proposed order is attached.

Plaintiff should take notice that any factual assertions contained in the attachments in

support of defendant's motion will be accepted by the Court as true unless the plaintiff submits

his own affidavit or other documentary evidence contradicting the assertions in the  attachments.

See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), Local Rule 7.1 and Fed. R. Civ. P. 56(e)

which

provides as follows:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein.  Sworn or certified copies of
> all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith.  The court may permit
> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits.  When a motion for
> summary judgment is made and supported as provided in this rule,
> an adverse party may not rest upon the mere allegations or denials
> of the adverse party's pleading, but the adverse party's response, by

affidavits or as otherwise provided in this rule, must set forth
specific facts showing that there is a genuine issue for trial.  If the
adverse party does not so respond, summary judgment, if
appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMIN JONES,                                    )
                                               )
                    Plaintiff,                 )
                                               )
        v.                                     )        Civil Action No. 06-248 (PLF)
                                               )
U.S. DEPARTMENT OF JUSTICE, et al.,            )
                                               )
                    Defendants.                )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

### INTRODUCTION

The plaintiff in this civil action was a federal inmate Amin Jones, serving a 63-month

concurrent sentence imposed on July 7, 2002, by the Honorable Judge Fawsett, of the United

States District Court for the Middle District of Florida, following his guilty plea to Conspiracy to

Possess with Intent to Distribute Marijuana, in violation of Title 21, United States Code, Section

846. See Attachment A, hereto ("Declaration of Mary A. Benning"), ¶¶ 2-4.

In his amended complaint, plaintiff appears to be asserting two claims against two

components of the U.S. Department of Justice:  1) that the Federal Bureau of Prisons ("BOP")

erroneously maintains inaccurate information in his Presentence Investigation Report and relied

upon this allegedly incorrect information in making determinations concerning him in violation

of the Privacy Act, and 2) that the Executive Office for United States Attorneys ("EOUSA")

improperly withheld records pursuant to the Freedom of Information Act ("FOIA"). R. 30.

Plaintiff also appears to be alleging a Privacy Act claim against the U.S. Probation Office.  Id.

This dispositive motion addresses the Privacy Act claims against the BOP and, to the

extent that there is a claim against the U.S. Probation Office, this motion addresses that as well.

A separate motion will be filed addressing plaintiff's FOIA claims under separate cover.[1]

## FACTUAL BACKGROUND

The Court is respectfully referred to the attached Statement of Material Facts Not in Dispute. <u>See</u> Attachment C, hereto.  Briefly stated, the facts are as follows:  Plaintiff  claims that his Presentence Investigation Report ("PSR") in connection with the above-referenced conviction was inaccurate.  <u>See</u> R. 30 at 9.  Instead of participating in the crime for which he pled guilty and was convicted, plaintiff now alleges that he was "kidnaped, tortured and extorted" and that his PSR is therefore incorrect. <u>Id</u>.  He has sought to correct the report through the U.S. Probation Office in the Middle District of Florida to no avail. <u>Id</u>.  After review, the Probation Office concluded that plaintiff's claim was frivolous. <u>Id</u>.

Plaintiff has also sought correction of this information with the BOP.  Plaintiff's claims against the BOP are also frivolous. The following sets forth the process that must be used in this connection.

The BOP has a three-part administrative remedy program designed to address a federal inmate's concerns regarding any aspect of his or her confinement, found in Program Statement 1330.13, *Administrative Remedy Program*.  <u>See</u> Declaration of Mary A. Benning, ¶ 6, Exhibit B, Program Statement 1330.13, *Administrative Remedy Program*.  This procedure is also codified in 28 C.F.R. § 542.  <u>Id.</u>  This policy affords inmates confined in federal institutions the opportunity to voice their grievances and provides staff an opportunity to resolve issues in-house prior to an

---

[1] Because of a death in agency counsel's family, a delay was encountered in the receipt of one of the supporting declarations addressing plaintiff's FOIA claim.  Therefore, instead of filing a dispositive motion this date addressing plaintiff's FOIA claim, defendant is moving for an extension of time to March 2, 2007.

inmate seeking relief through the judicial system.  Id.

The BOP utilizes its Administrative Remedy Program to an inmate's request for correction of records.  See Id. at ¶ 7, Exhibit C, Program Statement 1351.05, *Release of Information*.  This grievance process also is designed to address inmate appeals concerning their claims that information in their files are inaccurate.  Id., Exhibit C, p. 23.

Under the administrative remedy program for inmates, an inmate is required to first attempt informal resolution of the complaint, and if unsuccessful then must raise his complaint, with the informal resolution attached, to the Warden of the institution where he is confined.  See Declaration of Mary A. Benning, ¶ 8; 28 C.F.R. § 542.14.  If dissatisfied with that response, the inmate may appeal his complaint to the Regional Director.  Id.  28 C.F.R. § 542.15(a).  If dissatisfied with the Regional Director's response, the inmate may appeal to the Director, National Inmate Appeals, in the Office of the General Counsel in Washington D.C.  Id.  Generally, an inmate has not exhausted his remedies until he has sought review and received a final response at all three levels.  Id.

Since July 1990, the BOP has maintained information related to administrative complaints filed by inmates under the Administrative Remedy Program in a national database called "SENTRY."  See Id. at ¶ 9.  One of the many functions of the SENTRY database is to track administrative remedy complaints and appeals.  Id.  This system allows for a computerized search of complaints and appeals.  Id.

Each complaint is logged into SENTRY at the receiving location.  See Declaration of

Mary A. Benning, ¶ 10.  If the complaint is an initial filing, it will be assigned a unique "Remedy

ID Number" upon initial entry, which will follow the complaint throughout the appeal process.

Id.  Each "Remedy ID Number" also contains an extender that identifies the level of review.  Id.

The extension "F-1" indicates the complaint was filed at the institution level.  Id.  The extension

"R-1" indicates the complaint or appeal was filed at the regional level.  Id.  The extension "A-1"

indicates the appeal was filed at the national level.  Id.  The number at the end of the extension

may change if the appeal is refiled due to a technical problem, such as improper form, failing to

include documentation, or improper filing at that level.  Id.

        The automated administrative remedy records in the SENTRY database concerning each

inmate are not purged and can be searched back as far as inception of the system.  See

Declaration of Mary A. Benning, ¶ 11.  Administrative Remedy Indexes must be maintained in

computer accessible form for twenty years and then destroyed.  Id.  Pre-SENTRY indexes are

maintained at the site of creation for twenty years and then destroyed.  Id.  However, the hard

copies of the actual administrative remedy files are maintained for a period of three years and

then destroyed.  Id.; Exhibit B.

        At all phases of the administrative remedy process, paper copies of the appeal

documentation are returned to the inmate, along with the agency response.  See Id. at ¶ 12,

Exhibit B.  As such, if the petitioner did in fact exhaust his administrative remedies, he has, at

one time or another, been in possession of copies of all the appeal documentation that would be

necessary for him to prove exhaustion to the Court.  Id.

The plaintiff in this matter has not exhausted his administrative remedies with respect to the issues he presents in his complaint, specifically that the BOP has relied upon inaccurate information in making decisions concerning him, or that the BOP is relying on inaccurate information in his Presentence Investigation Report (PSR). See Declaration of Mary A. Benning, ¶ 13, Exhibit D, Administrative Remedy Data.

The plaintiff has filed a total of seven administrative remedies with the BOP, pertaining to his request for a complete set of his medical records, alleging retaliation against staff, and pertaining to mail complaints. See Id. at ¶ 14, Exhibit D. The plaintiff has not submitted any administrative remedies pertaining to his contention BOP records are inaccurate, or that BOP decisions are based upon inaccurate information in his PSR. Id.

The plaintiff does not specify the type of decisions that he believes are inaccurate and need correction or amendments. See Declaration of Mary A. Benning, ¶ 15. The primary system of records that contains information pertaining to a BOP inmate is what is referred to as the Central File. Id., Exhibit E, Program Statement 5800.11, *Inmate Central File, Privacy Folder, and Parole Mini-Files*. The Central File is the system of records that contains information such as classification decision, security and custody level determinations, sentence computations, etc. Id. The BOP maintains complete information on all inmates confined in BOP institutions, and use the Central File to maintain pertinent information regarding a detainee, unsentenced and sentenced offenders. Id. The BOP has implemented a policy concerning this record-keeping system, its contents, and its maintenance, specifically Program Statement 5800.11, *Inmate Central File, Privacy Folder, and Parole Mini-Files*. Id.

5

The BOP also has implemented a policy concerning procedures for an inmate to challenge the accuracy of the information in his/her Central File.  <u>See</u> Declaration of Mary A. Benning, ¶16, Exhibit E, p. 19; Exhibit C, p. 24.  If an inmate challenges the information's accuracy, Unit Team staff are to take reasonable steps to ensure the accuracy of the challenged information, particularly when that information is capable of being verified.  <u>Id.</u>  Such steps also include contacting the appropriate United States Probation Office (USPO) when an inmate challenges the accuracy of information in his PSR.  <u>Id.</u>

The plaintiff appears to contend that the BOP relied on inaccurate information in his PSR in making decisions concerning him.  Primarily the BOP relies upon the PSR in making classification decisions concerning an inmate, such as an inmate's security or custody classification level, the application of a Public Safety Factor, or other similar decisions.  <u>See</u> Attachment B, hereto ("Declaration of Charles H. Mildner"), ¶ 3.

The plaintiff made an allegation to BOP staff in October 2003, via an Informal Request to Staff Member, commonly referred to as a cop-out, to his unit team at the United States Penitentiary in Beaumont, Texas (USP Beaumont), that he contested aspects of his PSR.  <u>See</u> <u>Id</u>. at ¶ 4, Exhibit 1, October 2003 cop-out.  Specifically the plaintiff claimed that he was the victim of a kidnaping crime, and was not participating in the criminal activity.  <u>Id.</u>

In response to the plaintiff's request and in accordance with BOP policy, in November 2003, the plaintiff's Unit Manager at USP Beaumont sent a letter to the USPO which had completed the plaintiff's PSR.  <u>See</u> Declaration of Charles H. Mildner, ¶ 5, Exhibit 2, November 2003, Unit Manager Letter.  The letter sought clarification from the USPO concerning the plaintiff's allegations of erroneous information.  <u>Id.</u>

The USPO in December 8, 2003, sent back a letter to the BOP indicating that the information contained in the PSR was accurate. <u>See Id</u>. at ¶ 6 ( This letter is also attached to plaintiff's Amended Complaint. R. 30 at p. 9.)  As such, the BOP has taken reasonable steps to verify the accuracy of the information the plaintiff contended was inaccurate in his PSR.

## ARGUMENT

I.    <u>The Applicable Legal Standard</u>

A. <u>Fed. R. Civ. P. 12(b)(6).</u>

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Thomas v. City Lights School, Inc., et al.</u>, 124 F.Supp.2d 707, 708 (D.D.C. 2000) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>Hishon v. King and Spaulding</u>, 467 U.S. 69, 73, (1984).  Plaintiff's factual allegations must be accepted as true when reviewing the adequacy of the complaint pursuant to Fed. R. Civ. P. 12(b)(6). <u>Hill v. City of New York</u>, 45 F.3d 653, 657 (2d Cir. 1995).  A Rule 12(b)(6) motion may be converted into a summary judgment motion pursuant to Fed. R. Civ. P. 56 when matters outside the pleadings are considered.  While the plaintiff need not plead the elements of a prima facie case in the pleadings, the plaintiff carries the burden of alleging a set of facts upon which relief can be granted.  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002).

B. <u>The Standard for Summary Judgment</u>

In order to prevail as the movant for summary judgment, a defendant must show the absence of any genuine issue of material fact.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A defendant can meet that burden by demonstrating that "there is an absence of

evidence to support the nonmoving party's case." Id. at 325. "To survive a motion for summary judgment, the party bearing the burden of proof at trial [in this case the plaintiff] must provide evidence showing that there is a triable issue as to each element essential to that party's claim" Kaempe v. Myers, 367 F.3d 958, 966 (D.C. Cir. 2004) (citing Celotex, 477 U.S. at 322). If the plaintiff has failed to make a showing on an essential element of her case where she has the burden of proof, then the movant is entitled to summary judgment. Id. at 322-23. The non-moving party is entitled to all reasonable inferences in its favor, yet the non-movant does have the burden of presenting an affirmative defense to a properly submitted motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-56 (1986). The nonmoving party may not rest on mere allegations, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). Finally, a court must enter an order for summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that claim. Pure Gold, Inc. v. Syntex (U.S.A.), 739 F.2d 624, 626-27 (Fed. Cir. 1984). As set forth below, plaintiff is unable to make a showing sufficient to establish the existence of elements essential to his claim.

## II.    THIS COURT LACKS JURISDICTION OVER THE CLAIM AGAINST THE U.S. PROBATION OFFICE.

To the extent that plaintiff is attempting to allege a violation by the Probation Office under the Privacy Act, 5 U.S.C.§ 552a, the Privacy Act definition of "agency" does not include the Courts or their administrative arms such as Pretrial Services or the Probation Office. See Schwartz v. United States Dep't of Justice, No. 95-6423, 1996 WL 335757, at *1 (2d Cir. June 6, 1996), aff'g No. 94 CIV. 7476, 1995 WL 675462, at *7 (S.D.N.Y. Nov. 14, 1995); Callwood v.

Department of Probation of the V.I., 982 F. Supp. 341, 343 (D.V.I. 1997).

Should plaintiff claim that he is proceeding under the Freedom of Information Act, 5 U.S.C.§552, it is also clear that the Courts of the United States and their administrative arms such as the Probation Office and Pretrial Services are not "agencies" subject to the act. See Gaydos v. Mansmann, 1998 WL 389104 (D.C. Cir 1998)(per curiam); Warth v. Department of Justice, 595 F. 2d 521, 523 (9th Cir. 1979).[2]

## III.    THIS COURT LACKS JURISDICTION OVER THE CLAIM, AS THE PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES WITH REGARDS TO THE ISSUES HE PRESENTS.

As plaintiff has failed to request a BOP administrative amendment to his records pursuant to Title 28, Code of Federal Regulations, Section 542.10, plaintiff has failed to exhaust his administrative remedies.  Consequently, this court lacks jurisdiction over this portion of plaintiff's litigation and should therefore be dismissed.

Privacy Act plaintiffs are required to exhaust their administrative remedies before initiating a civil action for injunctive relief under 5 U.S.C. § 552a(g)(2)(A).  Hill v. U.S. Air Force, 795 F.2d 1067, 1069 (D.C.Cir.1986) (holding that "[a] Privacy Act plaintiff ... must exhaust his or her administrative remedies prior to bringing an amendment suit"). Doe v. U.S. Dept. of Labor, 451 F.Supp.2d 156, 168 (D.D.C. 2006).  This Circuit has recognized that under the Privacy Act, as well as the Freedom of Information Act, a plaintiff must exhaust his administrative remedies before filing a suit.  Muhammad v. U.S. Bureau of Prisons, 789 F.Supp.

---

[2] In plaintiff's Amended Complaint, he appears to be attempting to sue two government officials in their individual and official capacities. R. 30 at p. 1-2.  However, there is no civil cause of action against an agency official under either the FOIA or the Privacy Act.  See e.g., Petrus v. Bowen, 833 F.2d 581, 582 (5th Cir. 1987); Buckles v. Indian health Serv./Belcourt Serv. Unit, 268 F.Supp.2d 113, 115-16 (D.N.D. 2003).

449, 450 (D.D.C.1992) (citing Oglesby v. Dep't of Army, 920 F.2d 57, 61-62 (D.C.Cir.1990)

(FOIA); Crooker v. Federal Bureau of Prisons, 579 F.Supp. 309, 311 (D.D.C.1984) (Privacy

Act)). Exhaustion of administrative remedies is also required under the Prison Litigation Reform

Act. See Reid v. Fed. Bureau of Prisons, (D.D.C. July 20, 2005)(even when exhaustion is

normally not required for certain damages actions under the Privacy Act, but that the PLRA

imposes additional procedural requirements with respect to prisoners).

The BOP's system of records is exempt from the amendment provisions of the Privacy

Act of 1974, 5 U.S.C. § 552a, by virtue of subsection (j)(2) of the Act. See 28 C.F.R. § 16.81;

See also Argument II. Accordingly, pursuant to Title 28, Code of Federal Regulations, Section

542.10, an inmate seeking to amend the contents of his records must submit to the

Administrative Remedy Procedure. See also Declaration of Mary A. Benning, ¶¶ 6-7, Exhibits

B-C. Pursuant to the Administrative Remedy Program, an inmate may challenge any aspect of

his imprisonment. Id., ¶ 6; See also 28 C.F.R. § 542.10. To exhaust administrative remedies, an

inmate must pursue a claim at three distinct levels: (1) the Warden, (2) the Regional Director,

and (3) the National Inmate Appeals Administrator. Id., ¶ 8. To date, the plaintiff has not filed

*any* formal Administrative Remedy requesting amendment of his records. Id., ¶¶ 13-14, Exhibit

C.

Thus, plaintiff's failure to file an Administrative Remedy Procedure complaint to amend

his records constitutes a failure to exhaust the administrative remedies required under the

Privacy Act and the PLRA. As such, this claim must be dismissed as to defendant BOP, as the

plaintiff's failure to exhaust administrative remedies precludes judicial review of his Privacy Act

claims.

IV.    **THE PLAINTIFF'S CLAIMS UNDER THE PRIVACY ACT AGAINST THE BOP MUST FAIL, AS THE AGENCY HAS EXEMPTED ITSELF FROM CERTAIN PROVISIONS OF THE PRIVACY ACT.**

To prevail on a Privacy Act claim for damages, plaintiff must show (1) that the agency failed to maintain accurate records; (2) that the agency's conduct was intentional or willful; and (3) that an adverse determination was made respecting the plaintiff due to the inaccurate record. Toolasprashad v. Bureau of Prisons,  286 F.3d 576, 582 (D.C. Cir. 2002).

A.    **The BOP's Central File record keeping system is exempt from the Privacy Act's Accuracy Record Requirement under 5 U.S.C. §552a(e)(5).**

The principal function of the Privacy Act is to require agencies to keep accurate "systems of records."  5 U.S.C. § 552a(e).  The Act provides that an agency must maintain all records used by it in making determinations about individuals "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."  5 U.S.C. § 552a(e)(5).  However, there is a provision of the Privacy Act that permits certain agencies to exempt themselves from the record provisions of 5 U.S.C. §552a(e)(5).

Privacy Act regulations pertaining to inmate Central File records have been properly exempted from 5 U.S.C. §552a(e)(5), which requires the agency to maintain records used in making determinations "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination [about the individual]..."  5 U.S.C. § 552(e)(5).

28 C.F.R. § 16.97(o) provides that these exemptions apply only to the extent that information in this system is subject to exemption pursuant to 5 U.S.C. § 552a(j).  Where compliance would not appear to interfere with or adversely affect the law enforcement process,

11

and/or where it may be appropriate to permit individuals to contest the accuracy of the information collected, e.g. public source materials, or those supplied by third parties, the applicable exemption may be waived, either partially or totally, by the Bureau. The Bureau of Prisons has not waived such exemption, with respect to the Central File.

### 1. The BOP is an agency which can clearly exempt systems of records under 5 U.S.C. §552a(j)(2).

In order to met the threshold requirement for an agency to exempt systems of records pursuant to (j)(2), the system of records must be maintained by "an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws." The BOP has been recognized as such an agency. See, Martinez v. Bureau of Prisons, 444 F.3d 620, 624 (D.C. Cir. 2006).

Additionally, the BOP's records have been held to meet the threshold requirement of Exemption 7 of the FOIA. Agencies must be able to demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies, such as the BOP, must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency. See Keys v. United States Dep't of Justice, 830 F.2d 337, 340 (D.C. Cir. 1984) (citing with approval Pratt v. Webster, 673 F.2d 408, 420-21 (D.C. Cir. 1982).

Once the threshold is satisfied, it must be shown that the system of records at issue consists of information compiled for one of the criminal law enforcement purposes listed in subsection (j)(2)(A)-(c) . An important requirement of subsection (j) is that an agency must state in the Federal Register "the reasons why the system of records is to be exempted" from a particular subsection of the Act. 5 U.S.C. §552a(j). The Bureau of Prisons has stated its reasons

12

and justification from subsection (e)(5).  67 Fed. Reg. 51755-01 (Aug. 9, 2002)(codified at 28 C.F.R. §16.97(o)(2)).

In this case, the BOP has exempted itself from the accuracy provisions of the Privacy Act, and have clearly provided their reasons and justifications for exempting this subsection.

The plaintiff in his complaint does not specify the specific records he claims the BOP is not maintaining in an accurate fashion.  Generally, he contends the PSR is inaccurate and the BOP decisions which rely on the PSR are inaccurate.  Generally, the PSR is used to make classification decisions, which are contained in the Central File.  See Declaration of Charles H. Mildner, ¶ 3, Declaration of Mary A. Benning, ¶15.  These classification decisions in this system of records are of the type that warrant exemption from Privacy Act claims.  Thus, plaintiff has no claim under 5 U.S.C. 552a(e)(5) for allegations of inaccurate records.[3]

**B.    The BOP's Central File record keeping system is exempt from the Privacy Act's Amendment Requirement under 5 U.S.C. §552a(d)(1).**

The plaintiff does not specify the BOP records or decisions that have been made by the BOP that have been based upon his alleged inaccuracies in his PSR, or what, if any, BOP records he seeks to amend.  Generally, the PSR is relied upon by BOP staff to make classification determinations, such as security and custody levels, applications of Public Safety Factors, etc.. See Declaration of Charles Mildner, ¶ 3.

The Privacy Act provides that an agency must maintain all records used by it in making determinations about individuals "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."  5 U.S.C. §

---

[3]  As will be shown later, the BOP also took reasonable steps to verify the accuracy of the records.  See Declaration of Charles H. Mildner, ¶¶ 4-6.

552a(e)(5). In furtherance of this goal, the Act grants individuals the right to obtain access to agency records pertaining to them, and to request amendment of any records they believe to be inaccurate, irrelevant, untimely, or incomplete. 5 U.S.C. § 552a(d)(1) and (2). Where an agency denies such an amendment request, the Act grants the individual seeking amendment the right to obtain agency review. 5 U.S.C. § 552a(d)(3).

Subsection (g)(1)(A) and (g)(1)(B) of 5 U.S.C. § 552a authorizes a private right of action in Federal court whenever any agency:

> makes a determination under subsection (d)(3) . . . not to amend an individual's record in accordance with his request, [or] refuses to comply with an individual request under subsection (d)(1).

The obligations created by the Privacy Act, however, are not absolute. Doe v. FBI, 936 F.2d 1346, 1351 (D.C. Cir. 1991). The statute permits agencies to exempt certain systems of records from the Act's amendment requirements. Specifically, subsection (j)(2)(c) authorizes the head of an agency to exempt any system of records that consists of "reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision." 5 U.S.C. § 552a(j)(2)(c) . As such, certain agencies may promulgate regulations to exempt systems of records from the amendment provisions of the Privacy Act. See 5 U.S.C. § 552a(j).

Indeed, the records at issue here come from a system of records that have been properly exempted from the amendment provisions of the Privacy Act. See 28 C.F.R. §§ 16.51(c), 16.97(a); Martinez v. Bureau of Prisons, 444 F.3d at 624; see also White v. United States Probation Office, et al., 148 F.3d 1124, 1125 (D.C. Cir. 1998). The system of records that contains information concerning BOP classification matters is the Inmate Central Record system.

14

See Declaration of Mary A. Benning, ¶ 15.  This system of records, commonly referred to as an

inmate's Central File, is specifically exempted from the access and amendment provisions at

Title 5, United States Code, Section 552a(d).  Thus, plaintiff's claims under Section

552a(g)(a)(A) and (B) to amend his central file records must fail.  In particular, the security

classification information, which is part of the Inmate Central Record System

(JUSTICE/BOP-005) – is exempt from 5 U.S.C. § 552a(d) by Federal regulation.  28 C.F.R. §

16.97(a)(4) (2000); Doe, 936 F.2d at 1352 (no cause of action exists when agency has exempted

records from amendment requirements).

Consequently, Plaintiff has no claim under 5 U.S.C. 552a(g)(1)(A) and (B) to seek an

amendment of his BOP central file records.  Therefore, this court should dismiss this aspect of

plaintiff's Complaint.

> **V.    THE DEFENDANT BOP IS ENTITLED TO SUMMARY
>        JUDGMENT AS IT HAS FULFILLED ITS REQUIREMENTS
>        FOR MAINTAINING ACCURATE INFORMATION.**

As set forth above, plaintiff does not have a claim under the Privacy Act for either damages

or amendment.  However, even if he did, his claims would still fail.  The Privacy Act provides a

remedy for damages to be paid when an agency willfully or intentionally failed to maintain an

individual's records in an accurate manner.  5 U.S.C. § 552a(g)(1)(c);  Toolasprashad v. Bureau

of Prisons,  286 F.3d 576, 582 (D.C. Cir. 2002).  As such, reasonable steps must be taken to

verify the accuracy of the information.  See Sellers v. Federal Bureau of Prisons, 959 F.2d 307,

312 (D.C. Cir. 1992) (provided the information contained in an agency's files is capable of being

verified, the agency must take reasonable steps to maintain the accuracy of the information,

under 5 U.S.C. §552a(e)(5) and (g)(1)(c)).[4]

Here the defendant BOP has made reasonable attempts to verify the accuracy of the information contained in the plaintiff's PSR.  <u>See</u> Declaration of Chuck Mildner, ¶¶ 5-6.  In October 2003, the plaintiff submitted an informal request to his unit team, contesting aspects of his PSR, specifically portions dealing with criminal involvement.  <u>See</u> Declaration of Charles H. Mildner, ¶ 4, Exhibit 1.  Plaintiff contended he was the victim of a kidnaping and denied his criminal involvement.  <u>Id.</u>  Plaintiff's Unit Manager made attempts to verify the accuracy of the information, by submitting a letter in November 2003, to the United States Probation Office, Eastern District of Missouri, the office which prepared the plaintiff's PSR.  <u>See</u> Declaration of Charles H. Mildner, ¶ 5, Exhibit 2.  The Unit Manager sought written clarification and verification of the accuracy of this specific information.  <u>Id.</u>  The BOP received a written response from the United States Probation Office in a letter dated December 8, 2003, indicating the information in the PSR was accurate.  <u>See</u> Declaration of Charles H. Mildner, ¶ 6.  As such, the BOP had obtained assurances from the United States Probation Office that the information was true and accurate.

Therefore, the BOP has made reasonable efforts to verify the accuracy of the information contained in the plaintiff's PSR.  <u>See</u> <u>Sellers v. Federal Bureau of Prisons</u>, <u>supra</u>. The plaintiff has not, and cannot establish that the BOP has intentionally and wilfully failed to maintain accurate records.  The BOP acted reasonably in seeking assurances the information was accurate

---

[4] <u>Sellers</u> interprets the Privacy Act before the BOP exempted itself from the accuracy provisions of the Act and is, thus, no longer applicable in this situation.  However, this section of the brief sets forth the BOP's actions in order to demonstrate to the Court that it acted reasonably and in good faith.

from the United States Probation Office.  When these assurances were provided by the United States Probation Office, the BOP properly relied upon this information.  Therefore, the defendant BOP is entitled to summary judgment in this matter.

In this case, the plaintiff is essentially challenging the legality of his conviction and imprisonment. Such a claim, cannot be sustained unless and until the relevant conviction is overturned.  See Robinson v. Ashcroft, 357 F.Supp.2d 146, 150 (D.D.C. 2004).  A prisoner cannot recover damages for "harm caused by actions whose unlawfulness would render [his] conviction or sentence invalid" unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). This principle applies whenever plaintiff's success on the merits would implicitly question the validity of the conviction or the duration of the sentence.  Id. at 487, 114 S.Ct. 2364.  See also Robinson, 357 F.Supp. 2d at 150; Muhammad v. Close, 540 U.S. 749, 750-51(2004)(per curiam).  By claiming that his PSR is inaccurate because it does not reflect his kidnapping, torture and extortion, rather than his participation in the crime for which he pled guilty and was convicted, he specifically suggests that his conviction is invalid.  As such, his claims are barred by Heck.

## CONCLUSION

Based on the foregoing and the attached supporting documents, defendants respectfully request that this motion to dismiss or for summary judgment be granted and that plaintiff's claims against the Federal Bureau of Prisons and the U.S. Probation Office be dismissed with prejudice.  A proposed order is attached.

17

Respectfully submitted,

_____/s/_____

JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____

CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

18

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMIN JONES,                              )
                                         )
              Plaintiff,                 )
                                         )
       v.                                )        Civil Action No. 06-248 (PLF)
                                         )
U.S. DEPARTMENT OF JUSTICE, et al.,      )
                                         )
              Defendants.                )
_____ )

## DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Defendants submit the following statements of material facts with regard to plaintiff's claims against the Federal Bureau of Prisons and the U.S. Probation Office.

1. On at least three occasions, plaintiff contacted the U.S. Probation Office for the U.S. District Court for the Middle District of Florida to complain about inaccuracies in his Presentence Investigative Report. See Amended Complaint, R. 30 at p. 9.

2. The U.S. Probation Office in the Middle District of Florida investigated plaintiff's claim and determined that it was frivolous. Id.

3. Plaintiff has also sought correction of the same information with the BOP. Attachment A, hereto ("Declaration of Mary A. Benning"), at ¶ 6.

4. The plaintiff did not exhaust his administrative remedies with respect to his claim that the BOP relied upon inaccurate information in making decisions concerning him, or that the BOP is relying on inaccurate information in his Presentence Investigation Report (PSR). See Declaration of Mary A. Benning, ¶¶ 13-14, Exhibit D, Administrative Remedy Data.

5. Plaintiff's challenge as to the accuracy of the records was investigated by his Unit Manager at USP Beaumont who sent a letter to the U.S. Probation Office (USPO) which

completed the plaintiff's PSR.  <u>See</u> Attachment B ("Declaration of Charles H. Mildner"), ¶ 5, Exhibit 2, November 2003, Unit Manager Letter.

6.  The letter referenced in paragraph 5, above, sought clarification from the USPO concerning the plaintiff's allegations of erroneous information.  <u>Id.</u>

7.  The USPO in December 8, 2003, sent back a letter to the BOP indicating that the information contained in the PSR was accurate. <u>See</u> Declaration of Charles H. Mildner, ¶ 6 ( This letter is also attached to plaintiff's Amended Complaint. R. 30 at p. 9.)

8.  The BOP has taken reasonable steps to verify the accuracy of the information the plaintiff contested was inaccurate in his PSR.

Respectfully submitted,

        /s/

JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

        /s/

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

        /s/

CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion and supporting documents was served

this 23th day of February 2007, on plaintiff by first class mail, postage prepaid, at:

AMIN JONES, pro se
LAUREN JAMES BRIEFING INC.
P.O. Box 585
Bronx, NY 10461

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

3