Attachment A
Part 1
(For filing purposes Attachment A
has been divided into two parts)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMIN JONES,                              )
                                         )
                Plaintiff,               )
                                         )
        v.                               )       Case No. 06-0248 (PLF)
                                         )
DEPARTMENT OF JUSTICE, et al.,           )
                                         )
                Defendants.              )
                                         )

## DECLARATION OF MARY A. BENNING

I, Mary A. Benning, do hereby declare and state the following:

1.      I have been employed by the Federal Bureau of Prisons (BOP) as the Senior Consolidated

        Legal Center (CLC) Attorney, at the North Central Regional Office, Kansas City, Kansas,

        since June 2005. Prior to this position, I was employed as an attorney with the Iowa

        Department of Corrections from November 2003-June 2005. Previous to my work with

        the Iowa Department of Corrections, I was employed with the BOP as the Combined

        Litigation Center Attorney in Rochester, Minnesota, from December 2000-November

        2003, as an Attorney-Advisor at the Metropolitan Correctional Center in Chicago,

        Illinois, from October 1997-December 2000, and as an Honors Attorney from September

        1996-October 1997. In my current position, I am responsible for, among other things, the

        review of official files and records maintained by the BOP in conjunction with various

        lawsuits that have been filed by prisoners who are, or who were at one time, assigned to a

*Attachment A*

facility located within the North Central Region. This includes the United States Penitentiary in Leavenworth, Kansas (USP Leavenworth). These file reviews include a review of official prisoner files, and other official manual and electronic records maintained within these facilities incorporating matters of general administration, administrative remedy filings pursuant to 28 C.F.R. § 542.10-542.16, BOP policy, and local supplemental rules and regulations. As an attorney with the agency, I have access to records maintained by the BOP in the normal course of business for inmates, including administrative remedy information and sentence computation information.

2.    Included among my duties as Senior CLC Attorney is the responsibility to assist in the defense of civil litigation involving employees of the BOP. I am familiar with plaintiff and the claims raised in his two complaints and motion. I make this declaration in support of the defendant's motion.

3.    I have reviewed the filings of the plaintiff, Amin Jones, federal register number 88206-079, (plaintiff), and hereby provide the following information.

4.    The plaintiff is a federal inmate, previously incarcerated with the BOP, for service of his federal sentence, which was imposed July 7, 2002, by the Honorable Judge Fawsett, of the United States District Court, Middle District of Florida, following his guilty plea to Conspiracy to Possess with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 846. Attached and incorporated by reference to this declaration as Exhibit A, is a true and accurate copy, kept in the ordinary course of business, of the plaintiff's Public

Information Data.

5.      The plaintiff was released from custody of the BOP on May 9, 2006, via Good Conduct
        Time (GCT) release.

6.      The BOP has a three-part administrative remedy program designed to address a federal
        inmate's concerns regarding any aspect of his or her confinement, found in Program
        Statement 1330.13, *Administrative Remedy Program*. Attached and incorporated by
        reference to this declaration as Exhibit B is a true and accurate copy, kept in the ordinary
        course of business, of Program Statement 1330.13. This procedure is also codified in 28
        C.F.R. § 542. This policy affords inmates confined in federal institutions the opportunity
        to voice their grievances and provides staff an opportunity to resolve issues in-house prior
        to an inmate seeking relief through the judicial system.

7.      The BOP utilizes its Administrative Remedy Program to an inmate's request for
        correction of records. Attached and incorporated by reference to this declaration as
        Exhibit C is a true and accurate copy, kept in the ordinary course of business of Program
        Statement 1351.05, *Release of Information*. This grievance process also is designed to
        address inmate appeals concerning their claims that information in their files are
        inaccurate. See Exhibit C, p. 23.

8.      Under the administrative remedy program for inmates, an inmate is required to first
        attempt informal resolution of the complaint, and if unsuccessful then must raise his

complaint, with the informal resolution attached, to the Warden of the institution where

he is confined. See 28 C.F.R. § 542.14. If dissatisfied with that response, the inmate may

appeal his complaint to the Regional Director. 28 C.F.R. § 542.15(a). If dissatisfied with

the Regional Director's response, the inmate may appeal to the Director, National Inmate

Appeals, in the Office of the General Counsel in Washington D.C. Generally, an inmate

has not exhausted his remedies until he has sought review and received a final response at

all three levels.

9.      Since July 1990, the BOP has maintained information related to administrative

complaints filed by inmates under the Administrative Remedy Program in a national

database called "SENTRY." One of the many functions of the SENTRY database is to

track administrative remedy complaints and appeals. This system allows for a

computerized search of complaints and appeals.

10.     Each complaint is logged into SENTRY at the receiving location. If the complaint is an

initial filing, it will be assigned a unique "Remedy ID Number" upon initial entry, which

will follow the complaint throughout the appeal process. Each "Remedy ID Number"

also contains an extender that identifies the level of review. The extension "F-1"

indicates the complaint was filed at the institution level. The extension "R-1" indicates

the complaint or appeal was filed at the regional level. The extension "A-1" indicates the

appeal was filed at the national level. The number at the end of the extension may change

if the appeal is refiled due to a technical problem, such as improper form, failing to

include documentation, or improper filing at that level.

11.    The automated administrative remedy records in the SENTRY database concerning each

inmate are not purged and can be searched back as far as inception of the system.

Administrative Remedy Indexes must be maintained in computer accessible form for

twenty years and then destroyed. Pre-SENTRY indexes are maintained at the site of

creation for twenty years and then destroyed. However, the hard copies of the actual

administrative remedy files are maintained for a period of three years and then destroyed.

See Exhibit B.

12.    At all phases of the administrative remedy process, paper copies of the appeal

documentation are returned to the inmate, along with the agency response.  See Exhibit B.

As such, if the petitioner did in fact exhaust his administrative remedies, he has, at one

time or another, been in possession of copies of all the appeal documentation that would

be necessary for him to prove exhaustion to the Court.

13.    The plaintiff in this matter has not exhausted his administrative remedies with respect to

the issues he presents in his complaint, specifically that the BOP has relied upon

inaccurate information in making decisions concerning him, or that the BOP is relying on

inaccurate information in his Presentence Investigation Report (PSR).  Attached and

incorporated by reference to this declaration as Exhibit D is a true and accurate copy, kept

in the ordinary course of business, of the petitioner's Administrative Remedy Generalized

Retrieval Data from SENTRY.

14.   The plaintiff has filed a total of seven administrative remedies with the BOP, pertaining
      to his request for a complete set of his medical records, alleging retaliation against staff,
      and pertaining to mail complaints. The plaintiff has not submitted any administrative
      remedies pertaining to his contention BOP records are inaccurate, or that BOP decisions
      are based upon inaccurate information in his PSR.

15.   The plaintiff does not specify the type of decisions that he believes are inaccurate and
      need correction or amendments. The primary system of records that contains information
      pertaining to a BOP inmate is what is referred to as the Central File. The Central File is
      the system of records that contains information such as classification decision, security
      and custody level determinations, sentence computations, etc. The BOP maintains
      complete information on all inmates confined in BOP institutions, and use the Central
      File to maintain pertinent information regarding a detainee, unsentenced and sentenced
      offenders. The BOP has implemented a policy concerning this record-keeping system, its
      contents, and its maintenance, specifically Program Statement 5800.11, *Inmate Central
      File, Privacy Folder, and Parole Mini-Files*. Attached and incorporated by reference to
      this declaration as Exhibit E is a true and accurate copy, kept in the ordinary course of
      business, of Program Statement 5800.11.

16.   The BOP also has implemented a policy concerning procedures for an inmate to
      challenge the accuracy of the information in his/her Central File. See Exhibit E, p. 19;
      Exhibit C, p. 24. If an inmate challenges the information's accuracy, Unit Team staff are
      to take reasonable steps to ensure the accuracy of the challenged information, particularly

when that information is capable of being verified. Id. Such steps also include contacting the appropriate United States Probation Office when an inmate challenges the accuracy of information in his PSR.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on this 13th day of February 2006, in Kansas City, Kansas.

Mary A. Benning
Senior CLC Attorney
North Central Regional Office
Federal Bureau of Prisons

<u>Jones v. Department of Justice, et al.</u>
Case No. 06-0248 (PLF)
Benning Declaration
Exhibit A - Public Information Data

```
NCRSD            *      PUBLIC INFORMATION        *    02-13-2007
PAGE 001         *           INMATE DATA          *    14:35:36
                            AS OF 02-13-2007

REGNO..: 89206-079 NAME: JONES, AMIN

                  RESP OF: LVN / GOOD CONDUCT TIME RELEASE

                  PHONE..: 913-682-8700   FAX: 913-578-1010
                                          RACE/SEX....: BLACK / MALE
FBI NUMBER.: 46121CB3                     DOB/AGE....: 02-21-1973 / 33
ACTUAL RELEASE METH.: GCT REL
ACTUAL RELEASE DATE.: 05-09-2006
------------------------- ADMIT/RELEASE HISTORY ------------------------------
FCL    ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP  DATE/TIME
LVN    GCT REL    GOOD CONDUCT TIME REL (CCCA) 05-09-2006 1247 CURRENT
LVN    A-DES      DESIGNATED, AT ASSIGNED FACIL 10-02-2005 1714 05-09-2006 1247
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 10-02-2005 1814 10-02-2005 1814
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 10-02-2005 1421 10-02-2005 1814
SMM    TRANSFER   TRANSFER                     10-02-2005 1311 10-02-2005 1311
RMM    A-DES      DESIGNATED, AT ASSIGNED FACIL 08-18-2004 1006 10-02-2005 1311
7-A    RELEASE    RELEASED FROM IN-TRANSIT FACL 08-18-2004 1106 08-18-2004 1106
7-A    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-18-2004 1021 08-18-2004 1106
RMP    TRANSFER   TRANSFER                     08-18-2004 0921 08-18-2004 0921
RMP    A-DES      DESIGNATED, AT ASSIGNED FACIL 09-24-2002 1701 08-18-2004 0921
B18    RELEASE    RELEASED FROM IN-TRANSIT FACL 09-24-2002 1801 09-24-2002 1801
B18    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 09-24-2002 0645 09-24-2002 1801
OKL    HLD REMOVE HOLDOVER REMOVED            09-24-2002 0545 09-24-2002 0545
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED 09-19-2002 1735 09-24-2002 0545
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 09-19-2002 1835 09-19-2002 1835
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 09-19-2002 1531 09-19-2002 1835
ATL    HLD REMOVE HOLDOVER REMOVED            09-19-2002 1531 09-19-2002 1531
ATL    A-BOP HLD  HOLDOVER FOR INST TO INST TRF 09-13-2002 1922 09-19-2002 1531
1-W    RELEASE    RELEASED FROM IN-TRANSIT FACL 08-13-2002 1922 08-13-2002 1922
1-W    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-06-2002 1547 08-13-2002 1922
COR    ADMIN REL  ADMINISTRATIVE RELEASE       08-06-2002 1547 08-06-2002 1547
COR    A-ADMIN    ADMINISTRATIVE ADMISSION     08-06-2002 1154 08-06-2002 1547
1-W    RELEASE    RELEASED FROM IN-TRANSIT FACL 08-06-2002 1154 08-06-2002 1154
1-W    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-05-2002 1349 08-06-2002 1154
COR    ADMIN REL  ADMINISTRATIVE RELEASE       08-05-2002 1349 08-05-2002 1349
COR    A-ADMIN    ADMINISTRATIVE ADMISSION     08-05-2002 1337 08-05-2002 1349
1-W    RELEASE    RELEASED FROM IN-TRANSIT FACL 08-05-2002 1337 08-05-2002 1337
1-W    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-02-2002 1524 08-05-2002 1337
COR    ADMIN REL  ADMINISTRATIVE RELEASE       08-02-2002 1524 08-02-2002 1524
COR    A-ADMIN    ADMINISTRATIVE ADMISSION     08-02-2002 1429 08-02-2002 1524
1-W    RELEASE    RELEASED FROM IN-TRANSIT FACL 08-02-2002 1429 08-02-2002 1429
1-W    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-02-2002 1120 08-02-2002 1429
COR    ADMIN REL  ADMINISTRATIVE RELEASE       08-02-2002 1120 08-02-2002 1120
COR    A-ADMIN    ADMINISTRATIVE ADMISSION     08-02-2002 1045 08-02-2002 1120
1-W    RELEASE    RELEASED FROM IN-TRANSIT FACL 08-02-2002 1045 08-02-2002 1045
1-W    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-01-2002 1456 08-02-2002 1045


G0002    MORE PAGES TO FOLLOW . . .
```

```
NCRSD          *      PUBLIC INFORMATION        *    02-13-2007
PAGE 002       *          INMATE DATA           *    14:35:36
                       AS OF 02-13-2007

REGNO..: 45206-079 NAME: JONES, AMIN

              RESP OF: LVN / GOOD CONDUCT TIME RELEASE
                 PHONE..: 913-682-6700   FAX: 913-578-1010
COA   ADMIN REL  ADMINISTRATIVE RELEASE      08-01-2002 1456 08-01-2002 1456
COA   A-ADMIN    ADMINISTRATIVE ADMISSION    08-01-2002 0925 08-01-2002 1456
P02   RELEASE 08 RELEASED FROM IN-TRANSIT, AUG 08-01-2002 0925 08-01-2002 0925
P02   A-ADMIT 05 ADMITTED TO IN-TRANSIT, MAY 05-30-2002 0530 08-01-2002 0925
I-T   RELEASE    RELEASED FROM IN-TRANSIT FACL 05-30-2002 0530 05-30-2002 0530
I-T   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-30-2002 0538 05-30-2002 0530
A01   RELEASE    RELEASED FROM IN-TRANSIT FACL 01-30-2002 0538 01-30-2002 0530
A01   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-29-2002 1000 01-30-2002 0538
OKL   HLD REMOVE HOLDOVER REMOVED            01-29-2002 0900 01-29-2002 0900
OKL   A-HLD      HOLDOVER, TEMPORARILY HOUSED 01-16-2002 1720 01-29-2002 0900
A02   RELEASE    RELEASED FROM IN-TRANSIT FACL 01-16-2002 1820 01-16-2002 1820
A02   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-16-2002 1002 01-16-2002 1820
NOU   HLD REMOVE HOLDOVER REMOVED            01-16-2002 0902 01-16-2002 0902
NOU   A-HLD      HOLDOVER, TEMPORARILY HOUSED 01-13-2002 0553 01-16-2002 0902
P00   RELEASE 01 RELEASED FROM IN-TRANSIT, JAN 01-13-2002 0653 01-13-2002 0653
P00   A-ADMIT 08 ADMITTED TO IN-TRANSIT, AUG 08-18-2000 0530 01-13-2002 0653
I-T   RELEASE    RELEASED FROM IN-TRANSIT FACL 08-18-2000 0530 08-18-2000 0530
I-T   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-19-2000 0530 08-18-2000 0530
A01   RELEASE    RELEASED FROM IN-TRANSIT FACL 04-19-2000 0530 04-19-2000 0530
A01   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-18-2000 0905 04-19-2000 0530
OKL   HLD REMOVE HOLDOVER REMOVED            04-18-2000 0805 04-18-2000 0805
OKL   A-HLD      HOLDOVER, TEMPORARILY HOUSED 04-11-2000 1900 04-18-2000 0805

G0002      MORE PAGES TO FOLLOW . . .
```

```
   NCRSD        *        PUBLIC INFORMATION        *      02-13-2007
   PAGE 003      *           INMATE DATA            *      14:35:36
                     AS OF 05-09-2006


REGNO..: 08286-079 NAME: JONES, AMIN


               RESP OF: LVN / GOOD CONDUCT TIME RELEASE
               PHONE..: 913-682-8700    FAX: 913-578-1010
PRE-RELEASE PREPARATION DATE: 11-24-2005


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE: 05-09-2006 VIA GCT REL


-----------------------PRIOR JUDGMENT/WARRANT NO: 010 ---------------------


COURT OF JURISDICTION...........: FLORIDA, MIDDLE DISTRICT
DOCKET NUMBER...................: 6:00-CR-9-ORL-19JGG
JUDGE...........................: FAWSETT
DATE SENTENCED/PROBATION IMPOSED: 07-09-2002
DATE COMMITTED..................: 08-24-2002
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


               FELONY ASSESS  MISDMNR ASSESS  FINES       COSTS
NON-COMMITTED.: $100.00        $00.00         $00.00      $00.00


RESTITUTION...: PROPERTY: NO  SERVICES: NO       AMOUNT: $00.00


-------------------------PRIOR OBLIGATION NO: 010 ------------------------
OFFENSE CODE....: 391
OFF/CHG: CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE & DISTRIBUTION
         OF MARIJUANA; 721USC846


   SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
   SENTENCE IMPOSED/TIME TO SERVE.:   63 MONTHS
   TERM OF SUPERVISION............:    3 YEARS
   DATE OF OFFENSE................: 09-09-1998
```

G0002    MORE PAGES TO FOLLOW . . .

MCRSD      *      PUBLIC INFORMATION      *    02-13-2007
PAGE 004 OF 004 *         INMATE DATA        *    14:35:36
                    AS OF 05-09-2006

REGNO..: 88206-079 NAME: JONES, AMIN


                    RESP OF: LVN / GOOD CONDUCT TIME RELEASE
                    PHONE..: 913-682-8700    FAX: 913-576-1010
------------------------------PRIOR COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 10-03-2002 AT BMF AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:    010 010

DATE COMPUTATION BEGAN..........: 07-09-2002
TOTAL TERM IN EFFECT............:   63 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    5 YEARS      3 MONTHS
EARLIEST DATE OF OFFENSE........: 09-09-1998

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                     03-08-1999    03-09-1999
                                     11-16-1999    11-17-1999
                                     03-27-2000    06-23-2000
                                     01-13-2002    07-08-2002

TOTAL PRIOR CREDIT TIME.........: 270
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 247
TOTAL GCT EARNED................: 247
STATUTORY RELEASE DATE PROJECTED: 05-09-2006
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 01-11-2007


ACTUAL SATISFACTION DATE........: 05-09-2006
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: LVN
ACTUAL SATISFACTION KEYED BY....: TRF

DAYS REMAINING..................: 247
FINAL PUBLIC LAW DAYS...........: 0

<u>Jones v. Department of Justice, et al.</u>
Case No. 06-0248 (PLF)
Benning Declaration
Exhibit B - Program Statement 1330.13, *Administrative Remedy Program*



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE AFFECTED:** 1330.13
**CHANGE NOTICE NUMBER:** 4
**DATE:** 8/13/2002

1. **PURPOSE AND SCOPE.**  To revise PS 1330.13, the Administrative Remedy Program.

2. **SUMMARY OF CHANGES.**  Section 1, Purpose and Scope is revised to allow staff to process any request or appeal related to an inmate's conditions of confinement under the Administrative Remedy Program.  We intend this change to provide the inmate with maximum opportunity to seek review of any issue related to his or her confinement.

Previously, Section 6 (28 CFR 542.12) specified matters excluded from consideration under the Administrative Remedy Program.  We eliminate this section because 28 CFR 542.10 in Section 1 now allows the Administrative Remedy Program to accept those matters previously excluded.  This will allow the Program to address more quickly the full range of corrective actions available, including any that may be peripheral to issues which have other statutorily-mandated administrative procedures in place.

Directives Referenced are updated and references to ACA Foundation/Core Standards are deleted since the Bureau no longer uses these standards.

3. **TABLE OF CHANGES**

| **Remove** | **Insert** |
|---|---|
| Pages 1 - 6 | Pages 1 - 6 (CN-4) |

4.  **ACTION.**  File this Change Notice in front of PS 1330.30,
Administrative Remedy Program.


                                        /s/
                              Kathleen Hawk Sawyer
                              Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change Notice

**DIRECTIVE BEING CHANGED:** 1330.13
**CHANGE NOTICE NUMBER:** CN-03
**DATE:** October 7, 1997

1.  <u>PURPOSE AND SCOPE</u>.  To update the Administrative Remedy Program Statement, PS 1330.13.

2.  <u>SUMMARY OF CHANGES</u>.  This Change Notice removes all SENTRY transaction codes and replaces them with function descriptions. The attachment is now incorporated in the updated Technical Reference Manual, TRM 1301.02 which is being issued concurrent with the issuance of this Change Notice.

3.  <u>TABLE OF CHANGES</u>

| <u>Remove</u> | <u>Insert</u> |
|---|---|
| Pages 11 and 12 | Pages 11 and 12 |
| Attachment A, Pages 1 - 9 | |

4.  <u>ACTION</u>.  File this Change Notice in front of PS 1330.13, Administrative Remedy Program.


/s/
Kathleen M. Hawk
Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE BEING CHANGED:** 1330.13
**CHANGE NOTICE NUMBER:** CN-02
**DATE:** April 14, 1997

1.  <u>PURPOSE AND SCOPE</u>.  To transmit page changes to PS 1330.13, the Administrative Remedy Program.

2.  <u>SUMMARY OF CHANGES</u>.  The General Accounting Office no longer requires the "Annual Report of Holdings"; therefore, this Change Notice removes the requirement for locations to maintain a record of the volume, by year, of the Administrative Remedy case files destroyed.

3.  <u>TABLE OF CHANGES</u>

| <u>Remove</u> | <u>Insert</u> |
|---------------|---------------|
| Page 15       | Page 15       |

4.  <u>ACTION</u>.  File this Change Notice in front of PS 1330.13, Administrative Remedy Program.


                              \s\
                              Kathleen M. Hawk
                              Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE BEING CHANGED:** 1330.13
**CHANGE NOTICE NUMBER:** CN-01
**DATE:** April 24, 1996

1.  <u>PURPOSE AND SCOPE</u>.  To transmit page changes to Program Statement 1330.13, Administrative Remedy Program.

2.  <u>SUMMARY OF CHANGES</u>.  This Change Notice requires an inmate that is illiterate, disabled, or not functionally literate in English, to contact a staff member if he/she needs assistance in the preparation or submission of an Administrative Remedy or Appeal.  It also removes the requirement that the Wardens, Regional Offices, and Central Office Administrative Remedy Files be maintained by case number.

3.  <u>TABLE OF CHANGES</u>.

    <u>Remove</u>                    <u>Insert</u>

    Pages 10 and 13            Pages 10 and 13 (CN-01)


4.  <u>ACTION</u>.  File this Change Notice in front of Program Statement 1330.13, Administrative Remedy Program.



                        \s\
                        Kathleen M. Hawk
                        Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

| | |
|---|---|
| **OPI:** | OGC |
| **NUMBER:** | 1330.13 |
| **DATE:** | CN 4, 8/13/2002 |
| **SUBJECT:** | Administrative Remedy Program |

**RULES EFFECTIVE DATE:** 8/6/2002

---

\*    1.   [<u>PURPOSE AND SCOPE</u> §542.10

    a.   <u>Purpose</u>.   The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement. An inmate may not submit a Request or Appeal on behalf of another inmate.

    **b.   Scope.**   **This Program applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement. This Program does not apply to inmates confined in other non-federal facilities.]**

   The president of a recognized inmate organization may submit a request on behalf of that organization regarding an issue that specifically affects that organization.

   **[c.   <u>Statutorily-mandated Procedures</u>.   There are statutorily-mandated procedures in place for Tort claims (28 CFR 543, subpart C), Inmate Accident Compensation claims (28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D). If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures.]**      \*

2.   **PROGRAM OBJECTIVES.**   The expected results of this program are:

    a.   A procedure will be available by which inmates will be able to have any issue related to their incarceration formally reviewed by high-level Bureau officials.

b.  Each request, including appeals, will be responded to within the time frames allowed.

c.  A record of Inmate Administrative Remedy Requests and Appeals will be maintained.

d.  Bureau policies will be more correctly interpreted and applied by staff.

3.  **DIRECTIVES AFFECTED**

a.  **Directive Rescinded**

PS 1330.11    Administrative Remedy Procedure for Inmates (10/29/93)

b.  **Directives Referenced**

PS 1320.05    Claims Under the Federal Tort Claims Act (6/28/00)
PS 4500.04    Trust Fund Manual (12/15/95)
PS 5212.07    Control Unit Programs (02/20/01)
PS 5214.04    HIV, Handling of Inmates Testing Positive (2/4/98)
PS 5264.06    Telephone Regulations for Inmates (12/22/95)
PS 5270.07    Inmate Discipline and Special Housing Units (12/29/87)
PS 5890.13    SENTRY-National On-Line Automated Information System (12/14/99)

28 CFR 301    Inmate Accident Compensation
28 CFR 16.10  Fees (for records requested pursuant to the Freedom of Information Act (FOIA))

c.  Rules cited in this Program Statement are contained in 28 CFR 542.10 through 542.19.

4.  **STANDARDS REFERENCED**

*   a.  American Correctional Association 3rd Edition Standards for Adult Correctional Institutions:  3-4236 and 3-4271

b.  American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:  3-ALDF-3C-22, and 3-ALDF-3E-11                                                      *

5.  [RESPONSIBILITY §542.11

   a.  **The Community Corrections Manager (CCM), Warden, Regional Director, and General Counsel are responsible for the implementation and operation of the Administrative Remedy Program at the Community Corrections Center (CCC), institution, regional and Central Office levels, respectively, and shall:**

   **(1)  Establish procedures for receiving, recording, reviewing, investigating and responding to Administrative Remedy Requests (Requests) or Appeals (Appeals) submitted by an inmate;]**

   See Section 13 for further information on remedy processing, including use of SENTRY.

   **[(2)  Acknowledge receipt of a Request or Appeal by returning a receipt to the inmate;]**

   The receipt is generated via SENTRY.

   **[(3)  Conduct an investigation into each Request or Appeal;**

   **(4)  Respond to and sign all Requests or Appeals filed at their levels.  At the regional level, signatory authority may be delegated to the Deputy Regional Director.  At the Central Office level, signatory authority may be delegated to the National Inmate Appeals Administrator.  Signatory authority extends to staff designated as acting in the capacities specified in this §542.11, but may not be further delegated without the written approval of the General Counsel.]**

   § 542.11 refers to Section 5 of this Program Statement.

   For purposes of this Program Statement, the term "institution" includes Community Corrections Centers (CCCs); the term "Warden" includes Camp Superintendents and Community Corrections Managers (CCMs) for Requests filed by CCC inmates; and the term "inmate" includes a former inmate who is entitled to use this program.

   (5)  The Warden shall appoint one staff member, ordinarily above the department head level, as the Administrative Remedy Coordinator (Coordinator) and one person to serve as Administrative Remedy Clerk (Clerk).  The Regional Director and the National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

To coordinate the regional office program, each Regional Director shall also appoint an Administrative Remedy Coordinator of at least the Regional Administrator level, ordinarily the Regional Counsel, and an Administrative Remedy Clerk. The National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

(6)  The Administrative Remedy Coordinator shall monitor the program's operation at the Coordinator's location and shall ensure that appropriate staff (e,g., Clerk, unit staff) have the knowledge needed to operate the procedure. The Coordinator is responsible for signing any rejection notices and ensuring the accuracy of SENTRY entries, e.g., abstracts, subject codes, status codes, and dates. The Coordinator also shall serve as the primary point of contact for the Warden or Regional Director in discussions of Administrative Remedies appealed to higher levels.

(7)  The Administrative Remedy Clerk shall be responsible for all clerical processing of Administrative Remedies, for accurately maintaining the SENTRY index, and for generating SENTRY inmate notices.

(8)  The Unit Manager is responsible for ensuring that inmate notices (receipts, extension notices, and receipt disregard notices from institutions, regions and the Central Office) are printed and delivered daily for inmates in their units and for deleting those notices from SENTRY promptly after delivery to the inmate. CCMs are responsible for this function for inmates under their supervision.

**[b.  Inmates have the responsibility to use this Program in good faith and in an honest and straightforward manner.]**

6.  **RESERVED**

7.  **[INFORMAL RESOLUTION §542.13**

**a.  Informal Resolution. Except as provided in §542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy. Each warden shall establish procedures to allow for the informal resolution of inmate complaints.]**

The Warden is responsible for ensuring that effective informal resolution procedures are in place and that good faith attempts at informal resolution are made in an orderly and timely manner by both inmates and staff. These procedures may not operate to limit inmate access to formal filing of a Request.

**[b.  Exceptions.  Inmates in CCCs are not required to attempt informal resolution.  An informal resolution attempt is not required prior to submission to the regional or Central Office as provided for in §542.14(d) of this part.  An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution.]**

For example, the Warden may waive informal resolution for Unit Discipline Committee (UDC) appeals, or when informal resolution is deemed inappropriate due to the issue's sensitivity.

Although not mandatory, inmates may attempt informal resolution of DHO decisions.  See the Program Statement on Inmate Discipline and Special Housing Units.

**8.  [INITIAL FILING.  §542.14**

**a.  Submission.  The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.]**

In accord with the settlement in Washington v. Reno, and for such period of time as this settlement remains in effect, the deadline for completing informal resolution and submitting a formal written Administrative Remedy Request, on the appropriate form (BP-9), for a disputed telephone charge, credit, or telephone service problem for which the inmate requests reimbursement to his/her telephone account, is 120 days from the date of the disputed telephone charge, credit, or telephone service problem.

Administrative Remedy Requests concerning telephone issues that do not involve billing disputes or requests for refunds for telephone service problems (such as Administrative Remedy Requests concerning telephone privileges, telephone lists, or telephone access) are governed by the 20-day filing deadline.

**[b.  Extension.  Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed.  In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame.  Valid reasons for delay include the following:  an**

extended period in-transit during which the inmate was separated
from documents needed to prepare the Request or Appeal;  an
extended period of time during which the inmate was physically
incapable of preparing a Request or Appeal;  an unusually long
period taken for informal resolution attempts; indication by an
inmate, verified by staff, that a response to the inmate's
request for copies of dispositions requested under §542.19 of
this part was delayed.]

   Ordinarily, the inmate should submit written verification from
staff for any claimed reason for delay.

   If an inmate requests an Administrative Remedy form but has not
attempted informal resolution, staff should counsel the inmate
that informal resolution is ordinarily required.  If the inmate
nevertheless refuses to present a request informally, staff
should provide the form for a formal Request.  Upon receipt of
the inmate's submission, the Coordinator shall accept the Request
if, in the Coordinator's discretion, informal resolution was
bypassed for valid reasons, or may reject it if there are no
valid reasons for bypassing informal resolution.

   [c.  **Form**

      **(1)  The inmate shall obtain the appropriate form from CCC
staff or institution staff (ordinarily, the correctional
counselor).]**

P.S. 1330.13
December 22, 1995
Page 7

The following forms are appropriate:

♦ Request for Administrative Remedy, Form BP-9, is appropriate for filing at the institution;
♦ Regional Administrative Remedy Appeal, Form BP-10, is appropriate for submitting an appeal to the regional office;
♦ Central Office Administrative Remedy Appeal, Form BP-11, is appropriate for submitting an appeal to the Central Office.

**[(2)  The inmate shall place a single complaint or a reasonable number of closely related issues on the form.  If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue.  For DHO and UDC appeals, each separate incident report number must be appealed on a separate form.]**

Placing a single issue or closely related issues on a single form facilitates indexing, and promotes efficient, timely and comprehensive attention to the issues raised.

**[(3)  The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 1/2" by 11") continuation page. The inmate must provide an additional copy of any continuation page.  The inmate must submit one copy of supporting exhibits. Exhibits will not be returned with the response.  Because copies of exhibits must be filed for any appeal (see § 542.15 (b) (3)), the inmate is encouraged to retain a copy of all exhibits for his or her personal records.**

**(4)  The inmate shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor).  CCC inmates may mail their Requests to the CCM.]**

The correctional counselor shall submit the form promptly (ordinarily not later than the next business day) to the Clerk for processing.

**[d.  Exceptions to Initial Filing at Institution**

**(1)  Sensitive Issues.  If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director.  The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution.  If the Regional Administrative Remedy Coordinator agrees that the**

P.S. 1330.13
December 22, 1995
Page 8

Request is sensitive, the Request shall be accepted.  Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request.  The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden.  The Warden shall allow a reasonable extension of time for such a resubmission.

(2)  **DHO Appeals**.  DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.]

See the Program Statement on Inmate Discipline and Special Housing Units.

[(3)  **Control Unit Appeals**.  Appeals related to Executive Panel Reviews of Control Unit placement shall be submitted directly to the General Counsel.]

See the Program Statement on Control Unit Programs.

[(4)  **Controlled Housing Status Appeals**.  Appeals related to the Regional Director's review of controlled housing status placement may be filed directly with the General Counsel.]

See the Program Statement on Procedures for Handling HIV Positive Inmates Who Pose Danger to Others.

9.  [**APPEALS** § 542.15

a.  **Submission**.  An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.  An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response.  When the inmate demonstrates a valid reason for delay, these time limits may be extended.  Valid reasons for delay include those situations described in §542.14(b) of this part.  Appeal to the General Counsel is the final administrative appeal.]

These deadlines specify the date of the Appeal's receipt in the regional office or the Central Office.  The deadlines have been made deliberately long to allow sufficient mail time.  Inmates should mail their Appeals promptly after receiving a response to ensure timely receipt.  Ordinarily, the inmate must submit written verification from institution staff for any reason for delay that cannot be verified through SENTRY.

In many cases, courts require a proper Appeal to the General Counsel before an inmate may pursue the complaint in court.

[b. **Form**

(1)  **Appeals to the Regional Director shall be submitted on the form designed for regional Appeals (BP-10) and accompanied by one complete copy or duplicate original of the institution Request and response.  Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses.  Appeals shall state specifically the reason for appeal.**

(2)  **An inmate may not raise in an Appeal issues not raised in the lower level filings.  An inmate may not combine Appeals of separate lower level responses (different case numbers) into a single Appeal.**

(3)  **An inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 1/2" x 11") continuation page.  The inmate shall provide two additional copies of any continuation page and exhibits with the regional Appeal, and three additional copies with an Appeal to the Central Office (the inmate is also to provide copies of exhibits used at the prior level(s) of appeal).  The inmate shall date and sign the Appeal and mail it to the appropriate Regional Director, if a Regional Appeal, or to the National Inmate Appeals Administrator, Office of General Counsel, if a Central Office Appeal (see 28 CFR part 503 for addresses of the Central Office and Regional Offices).]**

c.  Processing.  The appropriate regional office to process the Appeal is the regional office for the institution where the inmate is confined at the time of mailing the Appeal, regardless of the institution that responded to the institution filing.

10.  [**ASSISTANCE** §542.16

a.  **An inmate may obtain assistance from another inmate or from institution staff in preparing a Request or an Appeal.  An inmate may also obtain assistance from outside sources, such as family members or attorneys.  However, no person may submit a Request or Appeal on the inmate's behalf, and obtaining assistance will not be considered a valid reason for exceeding a time limit for submission unless the delay was caused by staff.**

b.  **Wardens shall ensure that assistance is available for inmates who are illiterate, disabled, or who are not functionally literate in English.  Such assistance includes provision of reasonable accommodation in order for an inmate with a disability to prepare and process a Request or an Appeal.]**

P.S. 1330.13
CN-01, April 24, 1996
Page 10

\*     For example, Wardens must ensure that staff (ordinarily unit
staff) provide assistance in the preparation or submission of an
Administrative Remedy or an Appeal upon being contacted by such
inmates that they are experiencing a problem.                    \*

11.   [**RESUBMISSION §542.17**

   **a. Rejections. The Coordinator at any level (CCM,
institution, region, Central Office) may reject and return to the
inmate without response a Request or an Appeal that is written by
an inmate in a manner that is obscene or abusive, or does not
meet any other requirement of this part.**

   **b. Notice. When a submission is rejected, the inmate shall be
provided a written notice, signed by the Administrative Remedy
Coordinator, explaining the reason for rejection. If the defect
on which the rejection is based is correctable, the notice shall
inform the inmate of a reasonable time extension within which to
correct the defect and resubmit the Request or Appeal.]**

      (1) _Sensitive Submissions_. Submissions for inmate claims
which are too sensitive to be made known at the institution are
not to be returned to the inmate. Only a rejection notice will
be provided to the inmate. However, other rejected submissions
ordinarily will be returned to the inmate with the rejection
notice.

      (2) _Defects_. Defects such as failure to sign a submission,
failure to submit the required copies of a Request, Appeal, or
attachments, or failure to enclose the required single copy of
lower level submissions are examples of correctable defects.
Ordinarily, five calendar days from the date of the notice to the
inmate is reasonable for resubmission at the institution level;
at least 10 calendar days at the CCM or regional offices; and 15
calendar days at the Central Office.

      (3) _Criteria for Rejection_. When deciding whether to
reject a submission, Coordinators, especially at the institution
level, should be flexible, keeping in mind that major purposes of
this Program are to solve problems and be responsive to issues
inmates raise. Thus, for example, consideration should be given
to accepting a Request or Appeal that raises a sensitive or
problematic issue, such as medical treatment, sentence
computation, staff misconduct, even though that submission may be
somewhat untimely.

   [**c. Appeal of Rejections. When a Request or Appeal is
rejected and the inmate is not given an opportunity to correct
the defect and resubmit, the inmate may appeal the rejection,
including a rejection on the basis of an exception as described
in §542.14 (d), to the next appeal level. The Coordinator at
that level may affirm the rejection, may direct that the
submission be accepted at the lower level (either upon the**

inmate's resubmission or direct return to that lower level), or
may accept the submission for filing. The inmate shall be
informed of the decision by delivery of either a receipt or
rejection notice.]

12. [RESPONSE TIME §542.18. If accepted, a Request or Appeal
is considered filed on the date it is logged into the
Administrative Remedy Index as received. Once filed, response
shall be made by the Warden or CCM within 20 calendar days; by
the Regional Director within 30 calendar days; and by the General
Counsel within 40 calendar days. If the Request is determined to
be of an emergency nature which threatens the inmate's
immediate health or welfare, the Warden shall respond not later
than the third calendar day after filing. If the time period for
response to a Request or Appeal is insufficient to make an
appropriate decision, the time for response may be extended once
by 20 days at the institution level, 30 days at the regional
level, or 20 days at the Central Office level. Staff shall inform
the inmate of this extension in writing. Staff shall
respond in writing to all filed Requests or Appeals. If the
inmate does not receive a response within the time allotted for
reply, including extension, the inmate may consider the absence
of a response to be a denial at that level.]

The date a Request or an Appeal is received in the Administrative
Remedy index is entered into SENTRY as the "Date Rcv", and should
be the date it is first received and date-stamped in the
Administrative Remedy Clerk's office. Notice of extension
ordinarily is made via SENTRY notice.

13. REMEDY PROCESSING

a. Receipt. Upon receiving a Request or Appeal, the
Administrative Remedy Clerk shall stamp the form with the date
received, log it into the SENTRY index as received on that date,
and write the "Remedy ID" as assigned by SENTRY on the form.
Once a submission is entered into the system, any subsequent
submissions or appeals of that case shall be entered into SENTRY
using the same Case Number. The "Case Number" is the
purely numerical part of the "Remedy ID" which precedes the
hyphen and "Submission ID."

* All submissions received by the Clerk, whether accepted or
rejected, shall be entered into SENTRY in accordance with the
SENTRY Administrative Remedy Technical Reference Manual.         *

Sensitive issues, when the inmate claims that his or her safety
or well-being would be placed in danger if it became known at the
institution that the inmate was pursuing the issue, should be
withheld from logging in until answered and/or should be logged
into SENTRY with sufficient vagueness as to subject code and
abstract to accommodate the inmate's concerns.

P.S. 1330.13
December 22, 1995
Page 12

A Request should be submitted and logged in at the institution
where the inmate is housed at the time the inmate gives the
Request to the counselor or other appropriate staff member.  If
the event(s) occurred at a previous institution, staff at that
previous institution shall provide, promptly upon request, any
investigation or other assistance needed by the institution
answering the Request.  If an inmate is transferred after
giving the Request to a staff member, but before that Request is
logged in or answered, the institution where the Request was
first given to a staff member remains responsible for logging and
responding to that Request.

b.  Investigation and Response Preparation.  The Clerk or
Coordinator shall assign each filed Request or Appeal for
investigation and response preparation.  Matters in which
specific staff involvement is alleged may not be investigated by
either staff alleged to be involved or by staff under their
supervision.

Allegations of physical abuse by staff shall be referred to the
Office of Internal Affairs (OIA) in accordance with procedures
established for such referrals.  Where appropriate, e.g., when
OIA or another agency is assuming primary responsibility for
investigating the allegations, the response to the Request or
Appeal may be an interim response and need not be delayed pending
the outcome of the other investigation.

Requests or Appeals shall be investigated thoroughly, and all
relevant information developed in the investigation shall
ordinarily be supported by written documents or notes of the
investigator's findings.  Notes should be sufficiently detailed
to show the name, title, and location of the information
provided, the date the information was provided, and a
full description of the information provided.  Such documents and
notes shall be retained with the case file copy.  When deemed
necessary in the investigator's discretion, the investigator may
request a written statement from another staff member regarding
matters raised in the Request or Appeal.  Requested staff shall
provide such statements promptly.  For a disciplinary Appeal, a
complete copy of the appealed disciplinary actions record shall
be maintained with the Appeal file copy.

c.  Responses.  Responses ordinarily shall be on the form
designed for that purpose, and shall state the decision reached
and the reasons for the decision.  The first sentence or two of a
response shall be a brief abstract of the inmate's Request or
Appeal, from which the SENTRY abstract should be drawn.  This
abstract should be complete, but as brief as possible.  The
remainder of the response should answer completely the Request or
Appeal, be accurate and factual, and contain no extraneous
information.  The response should be written to be released to
any inmate and the general public under the Freedom of

P.S. 1330.13
CN-01, April 24, 1996
Page 13

Information Act (FOIA) and the Privacy Act.  Inmate names shall
not be used in responses, and staff and other names may not be
used unless absolutely essential.

Program Statements, Operations Memoranda, regulations, and
statutes shall be referred to in responses whenever applicable,
including section numbers on which the response relies.

d.  Response Time Limits.  Responses shall be made as required
in Section 11 of this Program Statement.

e.  Index Completion.  When a response is completed, the Clerk
shall update SENTRY in accordance with the SENTRY Administrative
Remedy Manual and the instructions in Attachment A.  Particular
attention should be paid to updating the status date, code, and
reason, and to making any changes to the subject code and
abstract indicated by the Coordinator or by the response drafter.
The abstract shall be taken from the response's first paragraph.
Abbreviations may be liberally used, as long as they are easily
understood, to allow as complete a description of the issue in
the 50 characters allotted.  For consistency, the Administrative
Remedy Coordinator shall approve the closing entry, including the
subject codes, status code and reason, and abstract before the
closing entry is made by the Clerk.

f.  Response Distribution.  For an institution response, one
copy of the complete Request and response shall be maintained in
the Warden's Administrative Remedy File together with all
supporting material.  Three copies shall be returned to the
inmate.  An inmate who subsequently appeals to the regional or
Central Office shall submit one copy with each appeal.

One copy of a Regional Appeal and response shall be retained at
the regional office.  One copy shall be sent to the Warden at the
original filing location.  The remaining two copies shall be
returned to the inmate; one to submit in case of subsequent
appeal to the Central Office, and one to retain.

One copy of a Central Office Appeal and response will be
returned to the inmate.  One copy will be retained in the Central
Office Administrative Remedy File, one copy will be forwarded to
the regional office where the Regional Appeal was answered, and
one to the Warden's Administrative Remedy File at the original
filing location.

*     g.  File Maintenance.  The Warden's Administrative Remedy File
and Administrative Remedy Files at the Regional Offices and
Central Office shall be maintained in a manner that assures case
files are readily accessible to respond to inquiries from Federal
Bureau of Prison staff, inmates and the public.  Institutions
shall file Regional and Central Office response copies with the
inmate's institution submission copy.  Regional offices shall
file copies of Central Office responses with the inmate's
Regional Appeal file.  Each location shall maintain copies of
supporting material and investigation notes with the case file. *

When a Regional or Central Office Appeal was not preceded by a
lower level filing, the institution and regional copies shall be
filed at the institution and region having responsibility for the
inmate at the time of response.

To provide information and feedback, Wardens and Regional
Directors are encouraged to route response file copies from
subsequent appeal levels to the Coordinator and the appropriate
department head or person who investigated and drafted the
response at their respective levels.

14. **[ACCESS TO INDEXES AND RESPONSES §542.19. Inmates and
members of the public may request access to Administrative Remedy
indexes and responses, for which inmate names and Register
Numbers have been removed, as indicated below. Each institution
shall make available its index, and the indexes of its regional
office and the Central Office. Each regional office shall make
available its index, the indexes of all institutions in its
region, and the index of the Central Office. The Central Office
shall make available its index and the indexes of all
institutions and regional offices. Responses may be requested
from the location where they are maintained and must be
identified by Remedy ID number as indicated on an index. Copies
of indexes or responses may be inspected during regular office
hours at the locations indicated above, or may be purchased in
accordance with the regular fees established for copies furnished
under the Freedom of Information Act (FOIA).]**

At present, fees are detailed in 28 CFR § 16.10, which specifies
a charge of $.10 per page duplicated and no charge for the first
100 pages. Staff shall forward funds received for purchase of
index and response copies to the FOIA/Privacy Act Section, Office
of General Counsel, Central Office.

Any location may produce its index or that of another location by
making the appropriate entries on a SENTRY retrieval transaction,
and specifying the "SAN" (sanitized) output format.

15. RECORDS MAINTENANCE AND DISPOSAL

a. Disposal Authority. The authority for Administrative
Remedy records disposal is the "job number" NC1-129-83-7 provided
by the National Archives.

b. Administrative Remedy Indexes. SENTRY Administrative
Remedy indexes shall be maintained in computer accessible form
for 20 years, then destroyed. Pre-SENTRY indexes shall be
maintained at the site of creation for 20 years, then destroyed.

c. Administrative Remedy Case Files. Administrative Remedy
Case Files shall be destroyed three full years after the year in
which the cases were completed (i.e., response completed). For
cases submitted since implementation of the SENTRY module (July
1990), at the end of each calendar year (beginning at end of

1993), run SENTRY index retrieval transactions to identify the lowest case number for cases <u>answered</u> (status = cl* and status date in the appropriate range) during the calendar year ended three years previously.  Cases below that number must be destroyed.  Thus, cases answered in 1990 would be destroyed at the end of 1993; cases answered in 1991 would be destroyed at the end of 1994, etc.

To identify the lowest case number for cases answered during a given year, it may be necessary to check indexes with "Date Received" in the year in question as well as those with "Date Received" in the previous year.

Cases maintained under the pre-SENTRY numbering and filing system should be destroyed according to the following schedule:

| YEAR OF CASE # | DESTROY AT END OF |
|----------------|-------------------|
| 94             | 1998              |
| 95             | 1999              |
| 96             | 2000              |
| 97             | 2001              |

*                                                                      *

16.  <u>INSTITUTION SUPPLEMENT</u>.  Each Warden shall forward a copy of any Institution Supplement developed to implement this Program Statement to the Regional Administrative Remedy Coordinator and to the National Inmate Appeals Administrator in the Central Office.


                                    \s\
                                    Kathleen M. Hawk
                                    Director

<u>Jones v. Department of Justice, et al.</u>
Case No. 06-0248 (PLF)
Benning Declaration
Exhibit C - Program Statement 1351.05, *Release of Information*



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** OGC
**NUMBER:** 1351.05
**DATE:** 9/19/2002
**SUBJECT:** Release of Information

## PART ONE: [GENERAL PROVISIONS AND PROCEDURES]

1. **[PURPOSE AND SCOPE § 513.30. This subpart establishes procedures for the release of requested records in possession of the Federal Bureau of Prisons ("Bureau"). It is intended to implement provisions of the Freedom of Information Act (FOIA), 5 U.S.C. 552, and the Privacy Act, 5 U.S.C. 552a, and to supplement Department of Justice (DOJ) regulations concerning the production or disclosure of records or information, 28 CFR part 16.]**

The Freedom of Information Act (FOIA) and the Privacy Act (PA) interact with each other in two areas:

- When any person requests access to records about himself or herself, both statutes become potentially applicable;

- When any person requests access to another individual's record through the FOIA, the Privacy Act may prohibit the disclosure of that record unless FOIA requires it.

The determination of what information may be released requires Bureau staff to have a basic understanding of both the FOIA and the Privacy Act, as well as a working knowledge of DOJ and Bureau policy. Bureau staff also should be aware that the Privacy Act establishes criminal penalties and civil liabilities for unauthorized disclosures. The appropriate Regional Counsel shall be contacted when staff are uncertain whether requested information may be disclosed.

Staff shall become familiar with the policy governing release of information, with special emphasis upon those areas with direct application to the employee's job.

Information requests submitted by the union pursuant to 5 U.S.C. § 7114 will be addressed in accordance with this provision and relevant case law.

**[Bold Type - Rules]**
Regular Type - Implementing Information

PS 1351.05
9/19/2002
Page 2

This Program Statement is divided into four major parts:

| Part | Page |
|------|------|
| General Provisions and Procedures | 1 |
| Inmate Requests to Institution for Information | 12 |
| Privacy Act Requests for Information | 21 |
| Freedom of Information Act Requests for Information | 25 |

2. **SUMMARY OF CHANGES**. This Program Statement is being revised to prohibit inmates from obtaining and possessing photocopies of their Pre-sentence Reports (PSR) and the Statement of Reasons (SOR) from their Judgment(s) in a Criminal Case. The purpose of this prohibition is to protect inmates from being coerced by other inmates to produce their PSRs and SORs for illicit purposes. Inmates will be permitted to review their PSRs and SORs, but cannot obtain or possess photocopies. This revision also introduces a new form which inmates can use to facilitate court review of their PSRs or SORs.

If local procedures are changed, notification to the union and training will be handled in accordance with the Master Agreement.

3. **PROGRAM OBJECTIVES**. The expected results of this program are:

   a. Information will be released to a requester in accordance with Federal law and the regulations and policies of the U.S. Department of Justice.

   b. Inmate Freedom of Information Act requests to the Central Office will be reduced by increasing the use of institution procedures that provide for inmate review of Bureau policy documents and records in Inmate Central Files.

   c. Future litigation pertaining to FOIA/Privacy Act issues will be reduced.

4. **DIRECTIVES AFFECTED**

   a. **Directive Rescinded**

   PS 1351.04     Release of Information (12/5/96)

   b. **Directives Referenced**

   PS 1330.13     Administrative Remedy Program (12/22/95)
   PS 1480.05     Contacts with News Media (9/21/00)
   PS 5070.10     Judicial Recommendations and U.S. Attorney
                  Reports, Responses to (6/30/97)

PS 5270.07        Inmate Discipline and Special Housing Units
                  (12/29/87)
PS 5310.12        Psychology Services Manual (8/13/93)
PS 5800.10        Mail Management Manual (11/3/95)
PS 5800.11        Inmate Central File, Privacy Folder and
                  Parole Mini- Files (9/8/97)
PS 6000.05        Health Services Manual (9/15/96)

       Public Information Officer's Handbook (1994)

   c.  Bureau rules cited in this Program Statement are contained
in 28 CFR 513.30 through 68.

   d.  Other rules referenced in this Program Statement are
contained in 5 CFR part 297 and 28 CFR parts 16 and 301.

   e.  United States Code sections cited in this Program Statement
are contained in 5 U.S.C. 301, 552 and 552a; 13 U.S.C.;
18 U.S.C. 3621, 3622, 3624, 4001, 4042, 4081, 4082, 5006, 5024;
28 U.S.C. 509, 510; and 31 U.S.C. 3711(f).

   f.  Privacy Act Issuances, 1991 Comp., Volume II.

   g.  United States Department of Justice et al. v. Julian
       et al., 108 S.Ct. 1606 (1988).

5.  **STANDARDS REFERENCED**

   a.  American Correctional Association 3rd Edition Standards for
Adult Correctional Institutions:  3-4020, 3-4095, and 3-4096

   b.  American Correctional Association 3rd Edition Standards for
Adult Local Detention Facilities:  3-ALDF-1E-04, 1E-05

   c.  American Correctional Association 2nd Edition Standards for
Administration of Correctional Agencies:  2-CO-1E-06, 1E-07, and
1E-08

6.  [**LIMITATIONS** § 513.31

   a.  **Social Security Numbers. As of September 27, 1975, Social
Security Numbers may not be used in their entirety as a method of
identification for any Bureau record system, unless such use is
authorized by statute or by regulation adopted prior to January
1, 1975.**

   b.  **Employee Records. Access and amendment of employee
personnel records under the Privacy Act are governed by Office of
Personnel Management regulations published in 5 CFR part 297 and
by Department of Justice regulations published in 28 CFR part
16.]**

7.  [GUIDELINES FOR DISCLOSURE § 513.32]

    a. [**The Bureau provides for the disclosure of agency
information pursuant to applicable laws, e.g. the Freedom of
Information Act (5 U.S.C. 552), and the Privacy Act
(5 U.S.C. 552a).**]

    b.  Pursuant to 28 CFR part 16, the authority to release or
deny access to records and information is limited to the Director
or his or her designee.

    c.  Bureau staff shall release a Bureau record in response to a
request made in accordance with this rule, unless a valid legal
exemption to disclosure is asserted.

   • Bureau staff may assert any applicable exemption to
     disclosure which is provided under the FOIA in
     5 U.S.C. § 552(b) or under the Privacy Act in
     5 U.S.C. § 552a.

   • For a listing of general FOIA Exemptions, see the
     **Exemptions to Disclosure Provided in the Freedom of
     Information Act (Attachment A)**.

   • For a listing of Bureau systems of records which the
     Attorney General has exempted from access and
     disclosure under the Privacy Act, see 28 CFR 16.97.

Questions regarding the applicability of exemptions may be
referred to the appropriate Regional Counsel or to the Office of
General Counsel.

    d.  Examples of documents or information which ordinarily may
be withheld from disclosure include the examples which follow.
These examples are not intended to represent an all-inclusive
list of every situation when FOIA exemptions may apply, nor are
the FOIA exemptions cited for each example the only ones which
may apply to the examples provided.

    (1)  Documents or information which could reasonably be
expected to constitute an unwarranted invasion of personal
privacy, i.e. information that is not "public information."

   • For the applicable FOIA exemptions, see Exemptions 6
     and 7 in Attachment A.

   • Information concerning an individual inmate is not
     generally available to FOIA requesters unless the
     inmate whose records are being sought has given a
     written consent to the disclosure or unless the

information has been determined to constitute "public
information." For guidance on what constitutes "public
information," see **Public Information (Attachment B)**.

- Requests by one inmate for public information
  concerning other inmates must be reviewed very
  carefully, as prison security concerns may outweigh the
  right to a FOIA disclosure.

- A denial of such public information to an inmate
  requester may be done only with the Regional Counsel's
  approval, after assessing the risks that disclosure
  might pose to the safety of the inmate(s) whose records
  are being sought and to other inmates and staff in the
  institution. See Section 7.d.(2), below. A high risk
  of gang-related prison violence is an example of a
  prison security concern which might justify the
  withholding of public information about one inmate to
  another inmate while in custody.

(2) Documents or information which would reveal sources of
information obtained through a legitimate expectation of
confidentiality or which would otherwise endanger the life or
physical safety of any person.

- For the applicable FOIA exemptions, see Exemptions 6
  and 7 in Attachment A.

- An example is a statement of an inmate witness made in
  the context of a current or a completed disciplinary,
  criminal, or accident investigation. This statement
  shall not be disclosed to another inmate if such
  disclosure would endanger the inmate witness.

(3) Documents or information which could disrupt an
inmate's institutional program due to the diagnostic or
evaluative opinions contained in the document, and which would
likely provoke adjustment difficulties or aggravate existing
adjustment difficulties.

- For the applicable FOIA exemptions, see Exemptions 5
  and 6 in Attachment A.

(4) Documents or information which would interfere with
ongoing law enforcement proceedings, including administrative
investigations.

- For the applicable FOIA exemptions, see Exemptions 5
  and 7 in Attachment A.

- While certain investigative information might be disclosed **after** an administrative investigation is completed, particular care must be exercised regarding disclosure during the course of the investigation. Even after the investigation is completed, personal safety and prison security concerns may outweigh the right to a FOIA disclosure.

- Only the institution staff member the Warden designates as the institution's Public Information Officer is authorized to make public statements regarding any investigation. For further guidance, see the Program Statement on Contacts with the News Media and the Public Information Officer's Handbook.

Questions regarding criminal prosecutions, such as the status of a case, shall be referred to the appropriate U.S. Attorney.

(5) Documents or information which, through disclosure of law enforcement techniques, information, or procedures, could reasonably be expected to enable the requester to violate a law, or to threaten the security of a Bureau institution or the safety of any person.

- For the applicable FOIA exemptions, see Exemptions 2 and 7 in Attachment A.

- Some Program Statements and Operations Memoranda, and other documents such as post orders, construction diagrams, etc., may be exempted because disclosing them would pose a threat to institutional security. This may also apply to information contained in investigations and other Bureau reports where law enforcement techniques are described.

8.  **[PRODUCTION OF RECORDS IN COURT § 513.33. Bureau records are often sought by subpoena, court order, or other court demand, in connection with court proceedings. The Attorney General has directed that these records may not be produced in court without the approval of the Attorney General or his or her designee. The guidelines are set forth in 28 CFR part 16, subpart B.]**

Bureau staff who receive such demands shall consult with their Regional Counsel or the Office of General Counsel for advice regarding proper handling of the demand.

9.  **[PROTECTION OF INDIVIDUAL PRIVACY - DISCLOSURE OF RECORDS TO THIRD PARTIES § 513.34.]** Bureau employees must carefully maintain and process all information concerning individuals to ensure that information is accurate, relevant, and timely, and to ensure that no inadvertent disclosure of information is made.

**[a. Information that concerns an individual and is contained in a system of records maintained by the Bureau shall not be disclosed to any person, or to another agency, except under the provisions of the Privacy Act, 5 U.S.C. 552a, or the Freedom of Information Act, 5 U.S.C. 552, and Departmental regulations.]**

Staff may disclose information from a Bureau system of records only if one or more of the following criteria apply:

(1)  With the written consent of the individual to whom the record pertains.  The Release of Information Consent form (BP-S192.013) may be used;

(2)  To employees of the DOJ who have a need for the record in the performance of their duties;

(3)  If disclosure is permitted under the FOIA, 5 U.S.C. § 552, e.g. "public information", when the public interest in disclosure of the information outweighs the privacy interest involved;

- For guidance on what constitutes "public information," see Attachment B.

(4)  For a **routine use** described in the DOJ "Notice of Record System" for the system of records which contains the information, as published in the Federal Register.

- For a list of the Bureau's systems of records that have been published in the Federal Register, see the **Bureau Systems of Records (Attachment C),** as updated in BOPDOCS.

- The published notices for these systems describe the records contained in each system and the routine uses for disclosing these records without obtaining the consent of the person to whom the records pertain.  For copies of the published systems notices, see BOPDOCS and/or contact the FOIA/PA section of the Office of General Counsel.

A **list of routine uses** for records contained in the Inmate Central File is also contained in the Program Statement concerning Central File, Privacy Folder, and Parole Mini-Files.

Routine uses for Bureau systems of records may include the following:

(a)  To Federal, state, local and foreign law enforcement officials for law enforcement purposes such as investigations, possible criminal prosecutions, civil court actions, or administrative and regulatory proceedings.

PS 1351.05
9/19/2002
Page 8

**Law Enforcement requests for telephone monitoring information:**

- For telephone monitoring information concerning inmate telephone calls, ordinarily only transactional data (e.g. date, time, duration of the call) shall be disclosed without proper process, even to other DOJ law enforcement agencies.

- Copies of the recorded telephone conversations, or written transcripts, shall only be disclosed to a requesting law enforcement agency when:

  (1) requested in an emergency situation;

  (2) criminal activity is discovered as part of the routine monitoring for prison administration purposes; or

  (3) requested through proper process (e.g. grand jury subpoena, administrative subpoena).

- All requests by law enforcement agencies for access to recordings of inmate telephone conversations shall be referred to Regional Counsel.

(b)   To the Bureau of the Census for purposes of planning or carrying out a census or survey or related activity pursuant to the provisions of Title 13, United States Code;

(c)   To a recipient who has provided the Bureau with advance adequate written assurance that the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable;

(d)   To the National Archives and Records Administration (NARA) as a record which has sufficient historical or other value to warrant its continued preservation by the U.S. Government, or for evaluation by the Administrator of the General Services Administration or his or her designee to determine whether the record has such value;

(e)   To either House of the U.S. Congress, or, to the extent of a matter within its jurisdiction, any Congressional committee or subcommittee, any joint committee of Congress or subcommittee of any such joint committee;

PS 1351.05
9/19/2002
Page 9

**Congressional requests on behalf of constituents for information about inmates:**

- Responses to individual members of Congress requesting information on behalf of a constituent are limited to public information unless staff have first obtained the inmate's express or implied consent to provide a fuller response.

- Written consent from the inmate shall be obtained when practical, using the form BP-S192.013. When this is not practical, staff should consider whether there is implied consent by the inmate. An example of implied consent is a Congressional inquiry which resulted from a letter the inmate sent to the member of Congress and this letter is included with the request from the member of Congress.

- Implied consent may not be inferred when a third party (for example, the inmate's spouse or parents) initiated the Congressional request for information. In such a situation, only public information (see Attachment B) may be released to the member of Congress without the inmate's written consent.

Questions regarding appropriate responses to Congressional inquiries shall be directed to the appropriate Regional Counsel or to staff in the FOIA/PA Section of the Office of General Counsel.

(f)  Pursuant to an order of a court of competent jurisdiction;

(g)  To a requester from appropriate state offices (e.g., state department of corrections, parole board, attorney general) seeking access to records concerning state inmates in Bureau custody.

- Although state inmates are confined in Bureau institutions, they remain state prisoners. A state inmate may receive periodic visits from state correctional and parole officials to review and evaluate his or her status, parole eligibility, and release readiness. To accomplish those purposes, state officials require access to the files of state inmates.

- Wardens shall ensure that officials of such state offices, who need to review the records, are provided, upon request, access to the complete record of a state inmate in a Bureau institution.

(5)  **Records Concerning Former Youth Corrections Act (YCA) Inmates.**  Information on former YCA inmates, including the fact that the person has been confined, shall not be released without Regional Counsel review to determine whether the conviction has been expunged and whether disclosure is appropriate.

**[b. Lists of Bureau inmates shall not be disclosed.]**

Any request for such lists shall be forwarded to the Office of General Counsel, Central Office.

c.  A list of Bureau employees may be generally releasable. Questions shall be directed to the appropriate Regional Counsel or to the FOIA/PA Section of the Office of General Counsel.

10.  **[ACCOUNTING/NONACCOUNTING OF DISCLOSURES TO THIRD PARTIES § 513.35.  Accounting/nonaccounting of disclosures to third parties shall be made in accordance with Department of Justice regulations contained in 28 CFR 16.52.]**

Except for disclosures of information to other DOJ employees, and all components thereof, and except for disclosures required under the FOIA (e.g., public information, as listed on Attachment B), an accounting of disclosures to third parties of any information concerning an individual contained in a Bureau system of records will be made in accordance with the following guidelines:

a.  **Oral Disclosure**

(1)  Staff may orally release only public information.  When public information is thus disclosed, no accounting is necessary.

- Only in an emergency shall staff orally release non-public information to parties other than DOJ employees.

- Before such an emergency oral disclosure is made, staff shall contact Regional Counsel or the FOIA/PA Administrator.  If this is not possible, staff shall inform the Regional Counsel, or the FOIA/PA Administrator at the Central Office as soon as practicable after the disclosure.

(2)  Upon oral disclosure of non-public information, a memorandum shall be prepared and retained in the file from which the record is disclosed, or an appropriate notation shall be maintained in the file, attached to the record disclosed.

PS 1351.05
9/19/2002
Page 11

This memorandum or notation shall include the following information:

- the date of the disclosure,
- the name and address of the person to whom the record was disclosed and the name of the agency that person represents, if any,
- the purpose of the request for disclosure; and
- identification of the specific record disclosed.

For a form designed to assist staff receiving an oral request for information, see the Record Of Information Release form (BP-S171.013).

b. **Written Disclosures.** Accounting for a written disclosure may be made by:

(1) Retaining a copy of the correspondence requesting the information and a copy of the response in the file from which the records are disclosed;

(2) Following the procedure for an accounting of an oral disclosure, as described in Section 10.a., above; or

(3) Developing another method if the method provides, at a minimum, the following information:

- the date of the disclosure;
- the name and address of the person to whom the record was disclosed and the agency that person represents, if any;
- the purpose of the request for disclosure; and
- a general description of the specific record disclosed.

c. **Disclosure Record Maintenance.** It is the responsibility of the staff member making a disclosure of non-public information to provide an accurate accounting of that disclosure.

- Accounting records of the disclosure of non-public information shall be maintained for five years or until the record is destroyed, whichever is longer, and will be placed in the privacy folder.

- When records are transferred to the NARA for storage, the disclosure accounting pertaining to those records, other than correspondence, shall be transferred with the records themselves.

- An exemption under 5 U.S.C. § 552a(j) **does not** relieve the Bureau from the responsibility to account for all disclosures other than those within the DOJ or under the FOIA.

11. [GOVERNMENT CONTRACTORS § 513.36

   a.  No Bureau component may contract for the operation of a
record system by or on behalf of the Bureau without the express
written approval of the Director or the Director's designee.

   b.  Any contract which is approved shall contain the standard
contract requirements promulgated by the General Services
Administration (GSA) to ensure compliance with the requirements
imposed by the Privacy Act.  The contracting component shall have
the responsibility to ensure that the contractor complies with
the contract requirements relating to privacy.


          PART TWO: [INMATE REQUESTS TO INSTITUTION FOR INFORMATION]

12.  [INMATE ACCESS TO INMATE CENTRAL FILE § 513.40.  Inmates are
encouraged to use the simple access procedures described in this
section to review disclosable records maintained in his or her
Inmate Central File, rather than the FOIA procedures described in
§§ 513.60 through 513.68 of this subpart.  Disclosable records in
the Inmate Central File include, but are not limited to,
documents relating to the inmate's sentence, detainer,
participation in Bureau programs such as the Inmate Financial
Responsibility Program, classification data, parole information,
mail, visits, property, conduct, work, release processing, and
general correspondence.  This information is available without
filing a FOIA request.  If any information] (in the disclosable
section) [is withheld from the inmate, staff will provide the
inmate with a general description of that information and also
will notify the inmate that he or she may file a FOIA request.

   a.  Inmate Review of His or Her Inmate Central File.  An inmate
may at any time request to review all disclosable portions of his
or her Inmate Central File by submitting a request to a staff
member designated by the Warden.  Staff are to acknowledge the
request and schedule the inmate, as promptly as is practical, for
a review of the file at a time which will not disrupt institution
operations.]

   Further guidance is contained in the Program Statement on
Central File, Privacy Folder, and Parole Mini-Files.

   When an inmate makes a request to institution staff to review
his or her Inmate Central File, he or she shall be advised to
make arrangements pursuant to local procedures.

   •   Because local processing reduces unnecessary FOIA
       requests, staff shall advise an inmate to make a
       request for Inmate Central File records to the FOIA/PA
       Section of the Office of General Counsel **only** when the
       inmate wishes to review exempt information.

- Staff shall not discuss with the inmate the types or nature of nondisclosable documents maintained in his or her Privacy Folder.

Before any document in the Inmate Central File is disclosed to the inmate to whom the documents pertain, or to a third party with the prior written consent of the inmate, the following review shall take place:

(1) **Bureau Documents.** If the document is a Bureau document (generated by Bureau staff) and is not a court-ordered study, staff are to determine whether the document should be withheld from disclosure under Section 7 of this Program Statement and further guidance set forth below.

- Staff shall place in the inmate's Privacy Folder any document that is to be withheld from disclosure.

- Staff shall place all other documents in the disclosable portion of the Inmate Central File, which is all of the Inmate Central File except for the Privacy Folder.

Guidelines for some specific Bureau documents are provided below:

(a) **Progress Reports.** All Progress Reports prepared:

- After October 15, 1974, are subject to release and are to be placed in the disclosable section of the Inmate Central File.

- Between February 15 and October 15, 1974, are subject to release except for the recommendation section, which shall be reviewed for disclosure in accord with Section 7 of this Program Statement.

- Before February 15, 1974, shall be reviewed for disclosure in accord with Section 7 of this Program Statement.

(b) **Psychiatric Reports**

- A psychiatric report written at the request of the U.S. Parole Commission is subject to release and shall be placed in the disclosable section of the Inmate Central File. This report should be written in non-technical language so that it can be understood by non-professionals.

- Other psychiatric, psychological, or evaluative
  reports Bureau staff prepared may also be made
  available to the U.S. Parole Commission and shall
  be inserted in the Privacy Folder.  A summary of
  the document must be placed in the Inmate Central
  File.  The summary may be placed in the Progress
  Report prepared in connection with the inmate's
  parole hearing.  The summary shall be sufficiently
  detailed to permit the inmate to respond, at the
  Parole Hearing, to the substance of the withheld
  information.

(c)  **Medical Records.**  See Section 14 of this Program
Statement.

(d)  **Discipline Records.**  Discipline records, such as Unit
Discipline Committee (UDC) and Discipline Hearing Officer (DHO)
packets (including the UDC/DHO report, incident report, notice of
hearing, list of inmate rights at UDC/DHO hearing, notice of
placement in Administrative Detention, and investigative
memoranda), shall be maintained together in the Privacy Folder
only if a portion of an investigation or other discipline record
contains non-disclosable materials.  Copies of all releasable
documents shall be placed together in the disclosable section of
the Inmate Central File.

(2)  **Non-Bureau Documents**

(a)  **FBI/National Crime Information Center (NCIC)
Information.**  The NCIC prohibits the Bureau from disclosing NCIC
identification records to an inmate.

Procedures for an inmate to request a copy of his or her
FBI/NCIC identification record directly from the FBI are
contained in 28 CFR 513.10 through 513.12.

(b)  **Documents from Other Federal Agencies.**  If a document
originates in another Federal agency (including other components
of the Department of Justice), it shall be placed in the Privacy
Folder, except as provided in section 12, first paragraph
(28 CFR 513.40).

When a request for records includes a document from
another Federal agency, the document shall be referred to the
originating Federal agency for a determination of its
releasability (see Attachment D for a suggested format to request
disclosure instructions from the originating agency).  For
documents originating from Federal courts or probation offices,
see subsection (d) below.

(c) **Documents from Non-Federal Agencies.** If a document has been received from a source outside the Federal government (e.g., a state agency), it shall be placed in the Privacy Folder, except as provided in section 12, first paragraph (28 CFR 513.40).

When a request for records includes a document from a non-Federal agency, Bureau staff must make a determination of its releasability in consultation with the non-Federal organization (see Attachment D). If the originating non-Federal agency recommends non-disclosure, and Bureau staff determine that non-disclosure is appropriate under 28 CFR 513.32, staff shall document the rationale for non-disclosure and place the document in the Privacy Folder.

(d) **Documents from Federal Courts and Probation Offices**

(1) **Federal Presentence Reports (PSR) and Statements of Reasons (SOR) from Judgments in Criminal Cases. For safety and security reasons, inmates are prohibited from obtaining or possessing photocopies of their PSRs, SORs, or other equivalent non-U.S. Code sentencing documents (e.g., D.C., state, foreign, military, etc.).** Inmates violating this provision are subject to disciplinary action.

This prohibition applies only to the SOR portion of an inmate's Judgment in a Criminal Case. The rest of the Judgment document remains releasable unless circumstances or policy dictate otherwise. PSRs and SORs received by mail will be treated as contraband, and handled according to the Mail Management Manual.

This prohibition does not apply to inmates in Bureau of Prisons custody with a need to review their PSRs prior to sentencing. For example, a pretrial inmate scheduled for sentencing may possess and review the PSR in preparation for sentencing. After sentencing, however, the inmate is prohibited from retaining a copy of the PSR.

The Bureau implemented this policy for the following reasons.

- Many PSRs and SORs contain information regarding the inmates' government assistance, financial resources, community affiliations, etc.

- The Bureau has documented an emerging problem where inmates pressure other inmates for a copy of their PSRs and SORs to learn if they are informants, gang members, have financial resources, etc.

- Inmates who refuse to provide the documents are threatened, assaulted, and/or seek protective custody. Likewise, inmates providing PSRs and SORs containing harmful information are faced with the same risks of harm.

Inmates needing a copy of their PSRs or SORs for filing as an attachment in a court case may obtain, complete, and submit to the court an Inmate Request For Certification or Judicial Notice of Pre-sentence Report and/or Statement of Reasons form (BP-S757.013). The form, which includes instructions for completion, must be available to inmates in the housing units and law libraries.

Although prohibited from obtaining or possessing photocopies, federal inmates are entitled under the FOIA to access their own PSRs (see United States Department of Justice v. Julian, 486 U.S. 1 (1988)) and SORs. Inmates must be provided reasonable opportunities to access and review their PSRs, SORs, or other equivalent non-U.S. Code sentencing documents (e.g., D.C., state, foreign, military, etc.). Inmates are responsible for requesting an opportunity to access and review these records with unit staff in accordance with the Program Statement on Inmate Central File, Privacy Folder, and Parole Mini-Files. **To facilitate inmate access and review, PSRs and SORs should ordinarily be maintained in the disclosable portion of the central file unless significant safety and security concerns dictate otherwise.**

In addition to the above procedures, other provisions of the FOIA may require limiting inmate access to PSRs and SORs. Third party requests for inmate PSRs and SORs should be handled according to Section 29 of this Program Statement.

Staff must maintain PSRs as follows:

- A PSR prepared **on or after December 1, 1975,** is to be placed in the disclosable portion of the Inmate Central File.

- A PSR prepared **before December 1, 1975,** is to be returned to the sentencing court with a cover letter indicating that the PSR is being returned based on the Supreme Court's decision in Julian and the fact that the PSR was not prepared with the expectation of release. No copy of the returned PSR is to be maintained at the institution, although relevant material from the PSR may be incorporated into other documents.

- Documents which the sentencing court has sealed or otherwise labeled as not disclosable to the inmate must be placed in the privacy folder. Questions regarding such documents should be referred to the Regional Counsel.

(2) **Documents Other than Federal PSIs.** Generally, documents originating in a Federal court or probation office shall be placed in the Privacy Folder if the documents are clearly marked to indicate that disclosure to the inmate is unadvisable. Other documents, such as a court-ordered study the Bureau prepared, shall be referred to the requesting court for that court's instructions as to disclosure. A copy of the document shall be maintained in the Privacy Folder until a final determination is made regarding its disclosure.

When Bureau staff reclassify a document from non-disclosable to disclosable, subsequent to any information request encompassing that document, staff shall place the reclassified document in the disclosable section of the Inmate Central File.

**[b. Procedures for Inmate Review of His or Her Inmate Central File.**

**(1) Prior to the inmate's review of the file, staff are to remove the Privacy Folder which contains documents withheld from disclosure pursuant to § 513.32.**

**(2) During the file review, the inmate is to be under direct and constant supervision by staff. The staff member monitoring the review shall enter the date of the inmate's file review on the Inmate Activity Record and initial the entry. Staff shall ask the inmate to initial the entry also, and if the inmate refuses to do so, shall enter a notation to that effect.**

**(3) Staff shall advise the inmate if there are documents withheld from disclosure and, if so, shall advise the inmate of the inmate's right under the provisions of § 513.61 to make a FOIA request for the withheld documents.]**

28 CFR 513.32 refers to Section 7 of this Program Statement. 28 CFR 513.61 refers to Section 27 of this Program Statement. The Inmate Activity Record refers to form BP-381.

13. **[INMATE ACCESS TO INMATE CENTRAL FILE IN CONNECTION WITH PAROLE HEARINGS § 513.41. A parole-eligible inmate (an inmate who is currently serving a sentence for an offense committed prior to November 1, 1987) may review disclosable portions of the Inmate Central File prior to the inmate's parole hearing, under the general procedures set forth in § 513.40. In addition, the following guidelines apply:]**

28 CFR 513.40 refers to Section 12 of this Program Statement.

[a.  A parole-eligible inmate may request to review his or her Inmate Central File by submitting the appropriate Parole Commission form.  This form ordinarily shall be available to each eligible inmate within five work days after a list of eligible inmates is prepared.

b.  Bureau staff ordinarily shall schedule an eligible inmate for a requested Inmate Central File review within seven work days of the request after the inmate has been scheduled for a parole hearing.  A reasonable extension of time is permitted for documents which have been provided (prior to the inmate's request) to originating agencies for clearance, or which are otherwise not available at the institution.

c.  A report received from another agency which is determined to be nondisclosable (see § 513.40 (b)) will be summarized by that agency, in accordance with Parole Commission regulations.  Bureau staff shall place the summary in the appropriate disclosable section of the Inmate Central File.  The original report (or portion which is summarized in another document) will be placed in the portion of the Privacy File for Joint Use by the Bureau and the Parole Commission.

d.  Bureau documents which are determined to be nondisclosable to the inmate will be summarized for the inmate's review.  A copy of the summary will be placed in the disclosable section of the Inmate Central File.  The document from which the summary is taken will be placed in the Joint Use Section of the Privacy Folder.  Nondisclosable documents not summarized for the inmate's review are not available to the Parole Commission and are placed in a nondisclosable section of the Inmate Central File.

e.  When no response regarding disclosure has been received from an originating agency in time for inmate review prior to the parole hearing, Bureau staff are to inform the Parole Commission Hearing Examiner.]

14.  [INMATE ACCESS TO MEDICAL RECORDS § 513.42

a.  Except for the limitations of paragraphs (c) and (d) of this section, an inmate may review records from his or her medical file (including dental records) by submitting a request to a staff member designated by the Warden.]

Disclosable Bureau medical records include the following:

- Medical and Related Data Sheets (BP-8), although this form has been discontinued, older files may still contain such records),
- Report of Medical History (SF-93 or BP-360),

PS 1351.05
9/19/2002
Page 19

- Report of Medical Examination (SF-88),
- Doctor's Orders (SF-508), and
- Medication Sheets (such as Medications and Treatments,
  PHS Form 2128, Supplement to SF-510).

[b.  Laboratory Reports which contain only scientific testing
results and which contain no staff evaluation or opinion (such as
Standard Form 514A, Urinalysis) are ordinarily disclosable.  Lab
results of HIV testing may be reviewed by the inmate.  However,
an inmate may not retain a copy of his or her test results while
the inmate is confined in a Bureau facility or a Community
Corrections Center.  A copy of an inmate's HIV test results may
be forwarded to a third party outside the institution and chosen
by the inmate, provided that the inmate gives written
authorization for the disclosure.

c.  Medical records containing subjective evaluations and
opinions of medical staff relating to the inmate's care and
treatment will be provided to the inmate only after the staff
review required by paragraph (d) of this section.  These records
include, but are not limited to, outpatient notes, consultation
reports, narrative summaries or reports by a specialist,
operative reports by the physician, summaries by specialists as
the result of laboratory analysis, or in-patient progress
reports.

d.  Prior to release to the inmate, records described in
paragraph (c) of this section shall be reviewed by staff to
determine if the release of this information would present a harm
to either the inmate or other individuals.  Any records
determined not to present a harm will be released to the inmate
at the conclusion of the review by staff.  If any records are
determined by staff not to be releasable based upon the presence
of harm, the inmate will be so advised in writing and provided
the address of the agency component to which the inmate may
address a formal request for the withheld records.  An accounting
of any medical records will be maintained in the inmate's medical
file.]

Release, review, and accounting of disclosures to inmates and
former inmates shall be in accordance with the procedures in the
Health Services Manual.

15.  [INMATE ACCESS TO CERTAIN BUREAU PROGRAM STATEMENTS
§ 513.43.  Inmates are encouraged to use the simple local access
procedures described in this section to review certain Bureau
Program Statements, rather than the FOIA procedures described in
Sections 513.60 through 513.68 of this Subpart.

a.  **For a current Bureau Program Statement containing rules (regulations published in the Federal Register and codified in 28 CFR), local access is available through the institution law library.**

b.  **For a current Bureau Program Statement not containing rules (regulations published in the Federal Register and codified in 28 CFR), inmates may request that it be placed in the institution law library.  Placement of a requested Program Statement in the law library is within the discretion of the Warden, based upon local institution conditions.**

c.  **Inmates are responsible for the costs of making personal copies of any Program Statements maintained in the institution law library.  For copies of Program Statements obtained under the FOIA procedures described in Sections 513.60 through 513.68 of this Subpart, fees will be calculated in accordance with 28 CFR 16.10.]**

28 CFR 513.60 through 513.68 refers to Sections 26 through 34 of this Program Statement.

16.  **[FEES FOR COPIES OF INMATE CENTRAL FILE AND MEDICAL RECORDS § 513.44.  Within a reasonable time after a request, Bureau staff are to provide an inmate personal copies of requested disclosable documents maintained in the Inmate Central File and Medical Record.  Fees for the copies are to be calculated in accordance with 28 CFR § 16.10.]**

No fee shall be charged for the following:

- the first 100 pages of duplication (or its cost equivalent),
- the first two hours of search time (or its cost equivalent), or
- charges which total $8.00 or less.

The duplication cost is calculated by multiplying the number of pages in excess of 100 by $0.10, the current rate set in 28 CFR 16.10.

The cost for search time is calculated by multiplying the number of quarter hours in excess of two hours by the following rates set in 28 CFR 16.10 for the staff conducting the search:

- $2.25 per quarter hour for clerical staff,
- $4.50 per quarter hour for professional staff, and
- $7.50 per quarter hour for managerial personnel.

Only fees in excess of $8.00 shall be assessed.  This means that the total cost must be greater than $8.00, either for the cost of the search (for time in excess of two hours), for the cost of

PS 1351.05
9/19/2002
Page 21

duplication (for pages in excess of 100 pages), or for both costs combined.

**Examples:**

**Example 1:**   If a request is made for information contained on 181 pages and clerical staff were able to locate the documents in less than two hours, the requester would be charged $8.10 ($0.10 per page x 81).

**Example 2:**   If it takes two hours and 30 minutes for clerical personnel to locate the same 181 pages, the requester would be charged a total of $12.60 (a duplication fee of $8.10 plus a $4.50 search fee for the two quarter hours of time in excess of two hours, at $2.25 per quarter hour).

Fees for searches shall only be assessed with the authorization of the Regional Counsel or the FOIA/PA Administrator in the Office of General Counsel. Requesters shall pay fees by check or money order payable to the Treasury of the United States. Fees shall be forwarded to the office assessing the fees.

## PART THREE: [PRIVACY ACT REQUESTS FOR INFORMATION]

17.  **[PRIVACY ACT REQUESTS BY INMATES § 513.50. Because inmate records are exempt from disclosure under the Privacy Act, (see 28 CFR 16.97) inmate requests for records under the Privacy Act will be processed in accordance with the FOIA. See §§ 513.61 through 513.68.]**

28 CFR 513.61 through 513.68 refers to Sections 27 through 34 of this Program Statement.

18.  **PRIVACY ACT REQUESTS BY EMPLOYEES OR FORMER EMPLOYEES.** An employee or former employee may make a written request for access to documents in his or her Personnel File and/or other documents concerning the requester which are not contained in the employee's personnel file but which are maintained in a Bureau system of records. Such a request is processed pursuant to the applicable provisions of the Privacy Act, 5 U.S.C. § 552a, and the FOIA, 5 U.S.C. § 552.

  ▪ A written request should be submitted to:

        Director
        Federal Bureau of Prisons
        320 First Street NW
        Washington DC  20534

PS 1351.05
9/19/2002
Page 22

- The requester shall clearly mark on the face of the letter and on the envelope **"PRIVACY ACT REQUEST,"** and shall clearly describe the record sought, including the approximate date covered by the record.

- An employee making such a request must provide identification data, as listed in 28 CFR 16.41, and may use a Certification of Identity Form (DOJ-361) or self-sworn declaration.

19. **PRIVACY ACT REQUESTS ON BEHALF OF AN EMPLOYEE OR FORMER EMPLOYEE.** A request for records concerning an employee or former employee made by an authorized representative of that employee or former employee may be made by writing to the address above. Such requests shall be processed pursuant to the provisions of the Privacy Act.

- The request must be clearly marked on the face of the letter and on the envelope **"PRIVACY ACT REQUEST,"** and must describe the record sought, including the approximate dates covered by the record.

- Verification of the identity of the individual whose records are sought is required. See methods of verification listed in 28 CFR 16.41.

20. **ACKNOWLEDGMENT OF PRIVACY ACT REQUESTS.** Requests for records under the Privacy Act received by the FOIA/PA Administrator, Office of General Counsel, shall be reviewed and may be forwarded to the appropriate Regional Office for handling.

- Requests for records located at a Bureau institution other than the Central Office or a Regional Office shall be referred to the appropriate staff at that institution for proper handling.

- The requester shall be notified of the status of his or her request by the office with final responsibility for processing the request.

- Every effort shall be made to respond to the requester within the time limit set under the governing disclosure statute.

21. **REVIEW OF DOCUMENTS FOR PRIVACY ACT REQUESTS.** If a document is deemed to contain information exempt from disclosure, any non-exempt sections of the record shall be provided to the requester after deletion of the exempt portions.

PS 1351.05
9/19/2002
Page 23

22. **LIMITATIONS ON EMPLOYEE RIGHT TO ACCESS UNDER THE PRIVACY ACT.** Under Congressional authority granted to the Attorney General by 5 U.S.C. § 552a(j) and (k), certain systems of records listed at 28 CFR 16.97 and on Attachment C are exempt from access under the Privacy Act of 1974.

Bureau records are also subject to the FOIA exemptions from disclosure listed in 5 U.S.C. § 552(b).

23. **DENIAL OF ACCESS AND NOTICE OF APPEAL RIGHTS.** If a Privacy Act request for records is denied in whole or in part, a denial letter shall be issued and signed by the Director, or his or her designee, and shall state the basis for denial under 28 CFR 513.32.

- A requestor who has been denied such access shall be advised that he or she may appeal that decision to the U.S. Department of Justice, Office of Information and Privacy, (OIP) by filing a written appeal within 30 days of the receipt of the denial.

- The appeal shall be marked on the face of the letter and the envelope, **"PRIVACY APPEAL - DENIAL OF ACCESS,"** and shall be addressed to the:

        Office of Information and Privacy
        U.S. Department of Justice
        Suite 570, Flag Building
        Washington DC  20530

During the appeal, Bureau staff shall assist OIP staff in the review of contested Bureau documents necessary to resolve the appeal and/or litigation. This review may be coordinated by FOIA/PA staff in the Office of General Counsel or Regional Counsel.

24. **CORRECTION OF RECORDS**

   a. **Inmate Requests for Correction.** An inmate may submit a written request for correction of records through the Bureau's Administrative Remedy Program.

   b. **Non-inmate Requests for Correction.** A person other than an inmate may request correction of inaccurate, incomplete, or irrelevant information by writing to the Director of the Federal Bureau of Prisons.

- A request for correction must identify the particular record in question, state the correction sought, and set forth the justification for the correction.

- Both the request and the envelope must be clearly marked **"Privacy Act Correction Request."**

c.  **Bureau Responses**

   (1)  **Requests to Correct Bureau Records**

      (a)  Bureau staff may make or deny requests for correction of Bureau records pursuant to procedures contained in 28 CFR 16.50.  One basis for denial may be that the records are contained in a Bureau system of records that has been published in the Federal Register and exempted from the Privacy Act's provisions requiring amendment and correction.  Refer to 28 CFR 16.97 for further information.

      **Inmate Central File Records.**  Unit staff shall take reasonable steps to ensure the accuracy of challenged information in the Inmate Central File, particularly when the challenged information can be verified.

- Reasonable steps include requiring specific action from the inmate, such as providing documents which support the challenge and/or the names of people to contact regarding the challenged information.

- Once Bureau staff make a determination that the challenged information is incorrect, appropriate notations on the record shall be made to ensure that staff do not use the discredited information to make decisions regarding the inmate.

- Special procedures have been developed when the challenged information involves a PSI Report.  See the Program Statement on Inmate Central File, Privacy Folder, and Parole Mini-Files for further information.

      (b)  Any denial of a request for correction should contain a statement of the reason for denial and notice to the requester that the denial may be appealed to the U.S. Department of Justice, Office of Information and Privacy, by filing a written appeal within 30 days of the receipt of the denial.

      The appeal shall be marked on the face of the letter and the envelope, **"PRIVACY APPEAL - DENIAL OF ACCESS,"** and shall be addressed to the OIP address cited in Section 23 above.

   (2)  **Requests to Correct Records Originated by Other Federal Agencies.**  Requests for correction of records prepared by other Federal agencies shall be forwarded to that agency for appropriate action and the requester shall be immediately notified of the referral in writing.

(3) **Requests to Correct Records Originated by Non-Federal Source.** When the request is for correction of non-Federal records, the requester shall be advised to write to that non-Federal entity.

25. **FEES FOR PRIVACY ACT REQUESTS.** Fees for copies of records disclosed under the Privacy Act, including fees for an employee's own records, may be charged in accordance with 28 CFR 16.47.

PART FOUR: [FREEDOM OF INFORMATION ACT REQUESTS FOR INFORMATION]

26. [**FREEDOM OF INFORMATION ACT REQUESTS** § 513.60. **Requests for any Bureau record (including Program Statements and Operations Memoranda) ordinarily shall be processed pursuant to the Freedom of Information Act, 5 U.S.C. 552. Such a request must be made in writing and addressed to the Director, Federal Bureau of Prisons, 320 First Street, NW., Washington, D.C. 20534. The requester shall clearly mark on the face of the letter and the envelope "FREEDOM OF INFORMATION REQUEST," and shall clearly describe the records sought. See §§ 513.61 through 513.63 for additional requirements.**]

28 CFR 513.61 through 63 refers to Sections 27 through 29 of this Program Statement.

27. [**FREEDOM OF INFORMATION ACT REQUESTS BY INMATES** § 513.61

a. **Inmates are encouraged to use the simple access procedures described in § 513.40 to review disclosable records maintained in his or her Inmate Central File.**]

28 CFR 513.40 refers to Section 12 of this Program Statement.

Similarly, inmates are encouraged to use the simple access procedures described in Section 15 above to review certain Bureau Program Statements that may be available locally at the institution.

[b. **An inmate may make a request for access to documents in his or her Inmate Central File or Medical File (including documents which have been withheld from disclosure during the inmate's review of his or her Inmate Central File pursuant to § 513.40) and/or other documents concerning the inmate which are not contained in the Inmate Central File or Medical File. Staff shall process such a request pursuant to the applicable provisions of the Freedom of Information Act, 5 U.S.C. 552.**

c.  The inmate requester shall clearly mark on the face of the letter and on the envelope "FREEDOM OF INFORMATION ACT REQUEST", and shall clearly describe the records sought, including the approximate dates covered by the record.  An inmate making such a request must provide his or her full name, current address, date and place of birth.  In addition, if the inmate requests documents to be sent to a third party, the inmate must provide with the request an example of his or her signature, which must be verified and dated within three (3) months of the date of the request.]

A request for "my records," "all my records," or similar wording shall be interpreted as a request for a copy of Inmate Central File records **and** Medical File records currently maintained at the inmate's institution of confinement or, in the case of former inmates, in the last institution of confinement.

Inmates are encouraged to provide Federal register numbers to assist in properly identifying requested records.

28.  [FREEDOM OF INFORMATION ACT REQUESTS BY FORMER INMATES § 513.62.  Former federal inmates may request copies of their Bureau records by writing to the Director, Federal Bureau of Prisons, 320 First Street, NW., Washington, D.C.  20534.  Such requests shall be processed pursuant to the provisions of the Freedom of Information Act.  The request must be clearly marked on the face of the letter and on the envelope "FREEDOM OF INFORMATION ACT REQUEST", and must describe the record sought, including the approximate dates covered by the record.  A former inmate making such a request must provide his or her full name, current address, date and place of birth.  In addition, the requester must provide with the request an example of his or her signature, which must be either notarized or sworn under penalty of perjury, and dated within three (3) months of the date of the request.]

Former inmates are encouraged to provide Federal register numbers to assist in properly identifying requested records.

29.  [FREEDOM OF INFORMATION ACT REQUESTS ON BEHALF OF AN INMATE OR FORMER INMATE § 513.63.  A request for records concerning an inmate or former inmate made by an authorized representative of that inmate or former inmate will be treated as in § 513.61, on receipt of the inmate's or former inmate's written authorization.  This authorization must be dated within three (3) months of the date of the request letter.  Identification data, as listed in 28 CFR 16.41, must be provided.]

Requesters are encouraged to provide Federal register numbers to assist in properly identifying requested records.

30. [ACKNOWLEDGMENT OF FREEDOM OF INFORMATION ACT REQUESTS
§ 513.64

   a.  All requests for records under the Freedom of Information
Act received by the FOIA/PA Administrator, Office of General
Counsel, will be reviewed and may be forwarded to the appropriate
Regional Office for proper handling.  Requests for records
located at a Bureau facility other than the Central Office or
Regional Office may be referred to the appropriate staff at that
facility for proper handling.

   b.  The requester shall be notified of the status of his or her
request by the office with final responsibility for processing
the request.]

31. [REVIEW OF DOCUMENTS FOR FREEDOM OF INFORMATION ACT REQUESTS
§ 513.65.  If a document is deemed to contain information exempt
from disclosure, any reasonably segregable portion of the record
shall be provided to the requester after deletion of the exempt
portions.  If documents, or portions of documents, in an Inmate
Central File have been determined to be nondisclosable by
institution staff but are later released by Regional or Central
Office staff pursuant to a request under this section,
appropriate instructions will be given to the institution to move
those documents, or portions, from the Inmate Privacy Folder into
the disclosable section of the Inmate Central File.]

32. [DENIALS AND APPEALS OF FREEDOM OF INFORMATION ACT REQUESTS
§ 513.66.  If a request made pursuant to the Freedom of
Information Act is denied in whole or in part, a denial letter
must be issued and signed by the Director or his or her designee,
and shall state the basis for denial under § 513.32.  The
requester who has been denied such access shall be advised that
he or she may appeal that decision to the Office of Information
and Privacy, U.S. Department of Justice, Suite 570, Flag
Building, Washington, D.C.  20530.  Both the envelope and the
letter of appeal itself should be clearly marked: "Freedom of
Information Act Appeal."]

28 CFR 513.32 refers to Section 7 of this Program Statement.

During the appeal and any subsequent litigation, Bureau staff
shall assist DOJ staff, including OIP staff, in reviewing
contested Bureau documents necessary to resolve the appeal and/or
litigation.

33.   [**FEES FOR FREEDOM OF INFORMATION ACT REQUESTS** § 513.67.
**Fees for copies of records disclosed under the FOIA, including
fees for a requester's own records, may be charged in accordance
with Department of Justice regulations contained in 28 CFR
16.10.**]

See further description of fees in Section 16 above.

34.   [**TIME LIMITS FOR RESPONSES TO FREEDOM OF INFORMATION ACT
REQUESTS** § 513.68.   **Consistent with sound administrative practice
and the provisions of 28 CFR 16.1, the Bureau strives to comply
with the time limits set forth in the Freedom of Information
Act.**]

Staff processing requests for release of information under the
FOIA are expected to be familiar with the provisions of
28 CFR 16.1(d), as follows:

- A requester must be notified of the decision on his or her
  request within 10 days after its receipt (excluding
  Saturday, Sunday, and legal public holidays).  Conditions
  for extension of this time are discussed in 28 CFR 16.1(d).

- Generally, all FOIA requests shall be processed in the
  approximate order of receipt, unless the requester shows
  exceptional circumstances exist to justify an expedited
  response.  Examples of exceptional circumstances which might
  justify an expedited response include the following:

  - a threat to life or safety,

  - the loss of substantial due process rights, or

  - in cases of widespread and exceptional interest to the
    media, **and** upon approval of DOJ's Office of Public
    Affairs, possible questions about the Government's
    integrity which affect public confidence.

Because a decision to take a FOIA request out of order delays
other requests, simple fairness demands that such a decision be
made only upon careful scrutiny of truly exceptional
circumstances.

  - Regional Counsel shall follow DOJ guidelines as to
    whether to expedite a particular request because it
    fits into one of the **first two** exceptions described
    above.

PS 1351.05
9/19/2002
Page 29

- Requests which are being considered for expedited processing because of the **last exception** described above shall first be sent through the FOIA/PA Administrator to the General Counsel for obtaining DOJ approval.

35. **TRANSITION.** Inmates must remove any copies of PSRs and SORs as listed in Section 12.a.(2)(d)(1) they currently possess no later than 45 days after the effective date of this PS. Each inmate must inspect his or her personal property for photocopies of these documents and then dispose of them.

Inmates possessing these documents when this transition period expires will be subject to disciplinary action for possession of contraband.

Inmates may dispose of their PSRs and SORs by any of the following methods:

- Mailing the documents out of the institution to someone of the inmate's choosing;

- Destroying or discarding the PSRs or SORs themselves; or

- Delivering them to a staff member for destruction.


                              /s/
                              Kathleen Hawk Sawyer
                              Director