Attachment A
Part 2

PS 1351.05
9/19/2002
Attachment A, Page 1

DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

## EXEMPTIONS TO DISCLOSURE PROVIDED IN
## THE FREEDOM OF INFORMATION ACT

1.   The Freedom of Information Act (5 U.S.C. § 552) provides
generally for the disclosure of agency records.  Section 552(b)
exempts from mandatory disclosure matters that are -

"(1) (A) specifically authorized under criteria established
by an Executive order to be kept secret in the interest of
national defense or foreign policy and (B) are in fact properly
classified pursuant to such Executive order;

(2)  related solely to the internal personnel rules and
practices of an agency;

(3)  specifically exempted from disclosure by statute (other
than section 552b of this title), provided that such statute (A)
requires that the matters be withheld from the public in such a
manner as to leave no discretion on the issue, or (B) establishes
particular criteria for withholding or refers to particular types
of matters to be withheld;

(4)  trade secrets and commercial or financial information
obtained from a person and privileged or confidential;

(5)  inter-agency or intra-agency memorandums or letters
which would not be available by law to a party other than an
agency in litigation with the agency;

(6)  personnel and medical files and similar files the
disclosure of which would constitute a clearly unwarranted
invasion of personal privacy;

(7)  records or information compiled for law enforcement
purposes, but only to the extent that the production of such law
enforcement records or information

(A) could reasonably be expected to interfere with
enforcement proceedings,

(B) would deprive a person of a right to a fair trial
or an impartial adjudication,

(C) could reasonably be expected to constitute an
unwarranted invasion of personal privacy,

(D) could reasonably be expected to disclose the
identity of a confidential source, including a State, local, or
foreign agency or authority or any private institution which

PS 1351.05
9/19/2002
Attachment A, Page 2

furnished information of a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source,

(E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or

(F) could reasonably be expected to endanger the life or physical safety of any individual;

(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(9) geological and geophysical information and data, including maps, concerning wells.

2. Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."

3. Under 5 U.S.C. § 551, Federal "agency records" are defined **not** to include records of

(1) the Congress;

(2) the courts of the United States;

(3) the governments of the territories or possessions of the United States; or

(4) the government of the District of Columbia.

```
                                                    PS 1351.05
                                                    9/19/2002
                                         Attachment B, Page 1
```

DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

## PUBLIC INFORMATION

**STAFF:**

> Name
> Position Title (past and present)
> Grade (past and present)
> Salary (past and present)
> Duty Station (past and present)
> Duty Station Address (past and present)

**INMATES:**

See list provided in the Program Statement on News Media Contacts
and the Public Information Officer's Handbook  (PIO Handbook).

PS 1351.05
9/19/2002
Attachment C, Page 1

## PUBLISHED SYSTEMS OF RECORDS

| #: | NAME: | PUBLICATION DATE: |
|----|-------|-------------------|
| 001 | Custodial/Security Record System | 09/28/78 |
| 002 | FOIA Record System | 09/17/77 |
| 003 | Industrial Inmate Employment Record System | 09/28/78 |
| 004 | Inmate Administrative Remedy Record System | 09/28/78 |
| 005 | Inmate Central Records System | 06/07/84 |
| 006 | Inmate Commissary Accounts Record System | 09/17/77 |
| 007 | Inmate Physical/Mental Health Record System | 09/28/78 |
| 008 | Inmate Safety/Accident Compensation Record System | 09/28/78 |
| 009 | Federal Tort Claims Act Record System | 09/28/78 |
| 010 | Access Control Entry/Exit System | 10/04/95 |
| 011 | Telephone Activity Record System | 04/21/95 |
| 012 | Office of Internal Affairs Investigative Record System | 08/29/95 |
| 101 | NIC Technical Assistance Resource Persons Directory | 04/18/83 |
| 102 | NIC Field Readers List | 04/18/83 |

PS 1351.05
9/19/2002
Attachment D, Page 1

(Date)

Re: _____
Our Reg. No: _____
Docket No: _____

Dear _____,

Please advise us as to whether the attached document(s) prepared by your agency may be (1) disclosed to the above inmate and (2) used with respect to the inmate's parole hearing(s).

Disclosure of information contained in an inmate's prison files is governed by a variety of Federal laws, principally the Freedom of Information Act (5 U.S.C. § 552) and the Privacy Act (5 U.S.C. § 552a). Guidelines for the implementation of these laws are given below.

## GUIDELINES FOR DISCLOSURE TO A FEDERAL PRISON INMATE

Upon an inmate's request, materials in that inmate's files will be disclosed to that inmate unless there is a legal exemption to such disclosure. Typical examples of documents which may be withheld are those which, if disclosed, might –

   a. constitute a clearly unwarranted invasion of personal privacy;

   b. reveal sources of information obtained upon a legitimate expectation of confidentiality or otherwise endanger the life or physical safety of any person;

   c. lead to a serious disruption of the subject inmate's institutional program, due to the diagnostic or evaluative opinions contained in the document, and which could likely affect the inmate's clearly documented adjustment difficulties;

   d. interfere with ongoing law enforcement proceedings, including administrative investigations; or

   e. enable the requestor to violate any law or threaten the security of a Federal Bureau of Prisons institution through disclosure of law enforcement techniques or procedures.

PS 1351.05
9/19/2002
Attachment D, Page 2

**GUIDELINES FOR DISCLOSURE FOR USE AT THE INMATE'S PAROLE HEARING**

A Federal prison inmate must be provided reasonable access to reports or documents to be used by the Parole Commission in making its parole release determination. The Commission, of course, wants to use all the information in the documents you prepare. If you determine that some information may not be disclosed, in accordance with the guidelines listed above, you must prepare a summary of excluded information if it is to be used by the Parole Commission. This summary, as well as the disclosable portions of the document, will then be available to the inmate, **and the Commission thereby be permitted to review the entire document**. The summary need only be phrased in general terms to enable the inmate to respond to the essential allegations made in excluded material. It should not reveal specific information which might compromise a legitimate need for confidentiality.

**OPTIONS FOR DISCLOSURE OF INFORMATION**

There are three options which exist under Federal law with respect to disclosure to the inmate and to the U.S. Parole Commission of the information prepared by your agency.

**Option 1** - You may authorize complete disclosure of the document. The document is available for inmate review and copying. Court disclosure instructions, if any, will be followed.

**Option 2** - You may recommend exclusion of a portion or all of the document from disclosure. Please identify the part(s) of the document you consider exempt form disclosure and prepare an adequate summary of the excluded material. The Federal Bureau of Prisons will review the reasons given in accordance with the guidelines listed in this letter. If at least one of the guidelines is met, both the summary and the disclosable portion of the document, if any, will be available to the inmate. If the Federal Bureau of Prisons determines the document to be entirely disclosable, the document will be returned to you, and no copy will be retained by the Federal Bureau of Prisons or for release to the U.S. Parole Commission or to the inmate.

**Option 3** - You may refuse to authorize disclosure of the document, or a summary in any form to the inmate. If this option is selected, please provide a memorandum detailing reasons for non-disclosure. The Federal Bureau of Prisons will review the reasons given in accordance with Bureau policy and the guidelines listed in this letter. If at least one of the guidelines is met, the document will be placed in the Inmate Privacy Folder and will not be available for release either to the inmate or to the U.S.

PS 1351.05
9/19/2002
Attachment D, Page 3

Parole Commission.  If the Federal Bureau of Prisons considers
the document disclosable, the document will be returned to you,
and no copy will be retained for use by the Federal Bureau of
Prisons.  Please consider carefully before choosing this option.

We appreciate your review of the attached documents with respect
to their disclosure.  We have enclosed a form for your response.
Thank you for you cooperation.

Sincerely,

Warden

Attachments

PS 1351.05
9/19/2002
Attachment D, Page 4

(Date)
To:   Warden:_____
      Institution:_____

FROM: (Authorized Agency Representative)
      (Agency)

SUBJECT: Disclosure of Information to Federal Inmate and to
         U.S. Parole Commission

This replies to your (date) letter in which you forward to us,
and ask that we review, certain document(s) prepared by our
agency to determine whether the document(s) may be disclosed to
the Federal inmate involved and the U.S. Parole Commission.

**Document(s):**

The following action may be taken with respect to these
documents:

____ 1. Complete disclosure of the document(s) is (are)
authorized.

        The document may be made available for inmate review and
        copying.

____ 2. The following portion(s) of the document(s) is (are) to be
        excluded on the basis that if disclosed, it might –

            ____ constitute a clearly unwarranted invasion of
                 personal privacy;

            ____ reveal sources of information obtained under a
                 legitimate expectation of confidentiality or
                 otherwise endanger the life or physical safety of
                 any person;

            ____ lead to a serious disruption of the subject
                 inmate's institutional program, due to the
                 diagnostic or evaluative opinions contained in the
                 document, and which it could likely affect the
                 inmate's clearly documented adjustment
                 difficulties;

            ____ interfere with ongoing law enforcement
                 proceedings, including administrative
                 investigations; or

PS 1351.05
9/19/2002
Attachment D, Page 5

_____ enable the requester to violate any law or threaten the security of a Federal Bureau of Prisons institution through disclosure of law enforcement techniques or procedures.

_____ Other:  (specify) _____
A summary of the excluded material is attached.

_____ 3. Neither the document nor a summary of the document is to be disclosed in any form to the inmate.

Jones v. Department of Justice, et al.
Case No. 06-0248 (PLF)
Benning Declaration
Exhibit D – Administrative Remedy Data

```
MCRSD          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      02-13-2007
PAGE 001 OF                                                         14:36:12
        FUNCTION: L-F SCOPE: REG   EQ 88286-079    OUTPUT FORMAT: SAN_____
-------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS LISTED BELOW----------
DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____
DT STS: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT ADD
DT TDU: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT TRT
STS/READ: ___ ___
SUBJECTS: ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___
EXTENDED: _ REMEDY LEVEL: _ _         RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ ___   ____
TRACE:  DEPT: ___   ____   ____   ____   ____   ____
        PERSON: ___   ____   ____   ____   ____   ____
          TYPE: ___   ____   ____   ____   ____   ____
EVNT FACL: EQ ___   ____   ____   ____   ____   ____
RCV FACL.: EQ ___   ____   ____   ____   ____   ____
RCV UN/LC: EQ ___   ____   ____   ____   ____   ____
RCV QTR..: EQ _____
ORIG FACL: EQ ___   ____   ____   ____   ____   ____
ORG UN/LC: EQ ___   ____   ____   ____   ____   ____
ORIG QTR.: EQ _____


G0002    MORE PAGES TO FOLLOW . . .
```

```
NCRSD          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      02-13-2007
PAGE 002 OF 002 *              SANITIZED FORMAT            *      14:36:12

REMEDY-ID    #SUBJ1/SUBJ2 ------------------ABSTRACT----------------------
              RCV-OFC      RCV-FACL    DATE-RCV      STATUS    STATUS-DATE


295949-F1    26BM/        RQT COMPLETE COPY OF MEDICAL RECORDS.
              BMP          BMP          04-18-2003    CLO       04-29-2003


295849-R1    26BM/        RQT COMPLETE COPY OF MEDICAL RECORDS.
              SCR          BMP          05-22-2003    REJ       05-22-2003


295849-R2    26BM/        RQT COMPLETE COPY OF MEDICAL RECORDS.
              SCR          BMP          06-05-2003    CLG       07-09-2003


321140-F1    34BM/        RETALIATION AGAINST STAFF.
              BMP          BMP          01-05-2004    REJ       01-06-2004


321140-R1    34BM/        RETALIATION AGAINST STAFF.
              SCR          BMP          02-06-2004    REJ       02-06-2004


403151-F1    16BM/        OTHER MAIL COMPLAINTS
              LVN          LVN          02-09-2006    CLD       02-15-2006


403151-R1    16BM/        OTHER MAIL COMPLAINTS
              NCR          LVN          03-02-2006    CLD       03-13-2006





              7 REMEDY SUBMISSION(S) SELECTED
G0000         TRANSACTION SUCCESSFULLY COMPLETED
```

<u>Jones v. Department of Justice, et al.</u>
Case No. 06-0248 (PLF)
Benning Declaration
Exhibit E - Program Statement 5800.11,
*Inmate Central File, Privacy Folder, and Parole Mini-Files*



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change

# Notice

**DIRECTIVE BEING CHANGED:** 5800.11
**CHANGE NOTICE NUMBER:** 01
**DATE:** 12/31/97

1.  <u>PURPOSE AND SCOPE</u>.  This Change Notice incorporates an Executive Staff decision and amends the filing requirements for documents to be contained in the Inmate Central File.

2.  <u>SUMMARY OF CHANGES</u>.  The September 1997 Executive Staff meeting approved the maintenance of inmate cenral files at High security level facilities in either a centralized location or within the functional unit with Regional Director approval.

The Central Inmate Monitoring White Card has been reinserted as a document to be filed in Section One of the Inmate Central File. The "White Card" is also a core document that is to be included in the establishment of a second volume of an inmate's central file.

The filing requirement for an inmate's telephone list has also been clarified.

3.  <u>TABLE OF CHANGES</u>

| <u>Remove</u> | <u>Insert</u> |
|---|---|
| Pages 5 - 8 | Pages 5 - 8 |
| Pages 15 - 16 | Pages 15 - 16 |

4.  <u>ACTION</u>.  File this Change Notice in front of PS 5800.11, Inmate Central File, Privacy Folder, and Parole Mini-Files.

/s/
Kathleen M. Hawk
Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD
**NUMBER:** 5800.11
**DATE:** September 8, 1997
**SUBJECT:** Inmate Central File, Privacy
Folder, and Parole Mini-Files

1. <u>PURPOSE AND SCOPE</u>. The Bureau of Prisons maintains complete information on all inmates confined in Bureau institutions. Staff use the Inmate Central File, Privacy Folder, and Parole Mini-file to maintain pertinent information regarding a detainee, unsentenced and sentenced offenders.

The Bureau of Prisons has had numerous policy sources on all facets of the Inmate Central File System. This Program Statement consolidates many of these sources for easier reference. This issuance sets forth guidelines in the following areas:

    a. Inmate Record Functions,
    b. Inmate Central Files,
    c. Standardization of Inmate Central File Material,
    d. Maintenance, Security, and Access Responsibilities and Procedures,
    e. Routine Uses of Inmate Central File,
    f. Disclosure of Inmate Central File Materials,
    g. Inmate Review of Inmate Central File,
    h. Documentation of Oral Disclosure,
    i. Transfer of Records Between Bureau Facilities,
    j. Requests for Forwarding of Inmate Files,
    k. Retirement of Inmate Central File, and
    l. Parole Mini-files.
    m. Pretrial Inmate File Material/Immigration & Naturalization Service (INS) Detainees

2. <u>PROGRAM OBJECTIVES</u>. The expected results of this program are:

    a. Inmate files will be maintained with complete information on each inmate confined in a Bureau of Prisons institution.

    b. U.S. Parole Mini-Files will be completed and accessible to the U.S. Parole Commission for all inmates specified in this Program Statement.

PS 5800.11
September 8, 1997
Page 2

3.  DIRECTIVES AFFECTED

    a.  Directive Rescinded

        PS 5800.09        Inmate Central File, Privacy Folder and
                          Parole Commission Files (7/21/93)

    b.  Directives Referenced

        PS 1330.13        Administrative Remedy Program (12/22/95)
        PS 1351.04        Release of Information (12/5/96)
        PS 5100.06        Security Designation and Custody
                          Classification Manual (6/7/96)
        PS 5180.04        Central Inmate Monitoring System (8/16/96)
        PS 5310.12        Psychology Services Manual (8/30/93)
        PS 5321.06        Unit Management (7/31/96)
        PS 5800.07        Inmate Systems Management Manual (12/24/91)
        PS 7331.03        Pretrial Inmates (11/22/94)

        TRM 5802.01       SENTRY General Use Technical Reference Manual
                          (06/01/94)

        Federal Register, Volume 41, Number 181 (9/16/76)

4.  STANDARDS REFERENCED

    a.  American Correctional Association 3rd Edition Standards for
Adult Correctional Institutions:  3-4092, 3-4093, 3-4095,3-4096,
3-4233, 3-4234.

    b.  American Correctional Association 3rd Edition Standards for
Adult Local Detention Facilities:  3-ALDF-1E-05, 3-ALDF-1E-01,
3-ALDF-1E-02, 3-ALDF-1E-04, 3-ALDF-1E-05, 3-ALDF-1E-06, 3-ALDF-
IF-08, 3-ALDF-3C-19, 3-ALDF-3C-20.

    c.  American Correctional Association 2nd Edition Standards for
Administration of Correctional Agencies:  2-CO-1E-01, 2-CO-1E-02,
2-CO-1E-03, 2-CO-1E-04, 2-CO-1E-06, 2-CO-1E-07, 2-CO-1E-08,
2-CO-1E-09.

    d.  American Correctional Association Standards for Adult
Correctional Boot Camp Programs:  1-ABC-1E-04, 1-ABC-1E-05, 1-
ABC-1E-06, 1-ABC-1E-07, 1-ABC-1E-08, 1-ABC-3C-13.

5.  PRETRIAL PROCEDURES.  File materials for pretrial inmates
shall be kept in letter size, straight cut, drop file folders.
The location of the folders shall be identified in the local
Institution Supplement at the Warden's discretion.  Depending on
where the pretrial file is maintained will determine the
appropriate accountability procedures.  For example, if the file
is maintained in Inmate Systems Management (ISM), ISM will
account for the file folders according to the ISM Department

accountability procedures; likewise, if the file is maintained in the unit, the unit will account for the file folders according to unit accountability procedures.  In either situation, accountability procedures shall be established and outlined in the Institution Supplement.

Staff shall adhere to the general requirements concerning the handling of inmate files addressed in this Program Statement. Pretrial file material shall include any documentation normally retained for a sentenced inmate.  FOI Exempt material shall be placed in the drop file folders appropriately stamped "FOI Exempt."

6.   DETAINEES (INS).  Institution staff shall maintain the Inmate Central File on an inmate who completes his/her sentence and is reclassified as an INS detainee.  The existing Inmate Central File shall incorporate any documents accumulated during his/her status as an INS detainee.  The existing Inmate Central File shall be maintained active until the inmate is removed from the institution by INS officials.

For inmates who are initially classified as INS detainees and therefore have had no previous Inmate Central File created, institution staff shall adhere to Section 5 (Pretrial Procedures) of this Program Statement on specific instructions on file materials for INS detainees.  The Institution Supplement shall address the location of the files and establish file accountability procedures.

6.   WITNESS SECURITY FILES.  Because of the sensitivity of Witness Security Cases, procedures for handling these files may differ.  For specific instructions refer to the Central Inmate Monitoring Manual and/or the Protective Custody Unit Manual.

7.   INMATE RECORD FUNCTIONS.  Many inmate administrative and clerical functions are appropriately performed in the unit while others are appropriately performed in the ISM Department. Normally, the functions of Central Files, Privacy Folder, and mini-files created for use by the U.S. Parole Commission are separated by Unit Staff/ISM Staff responsibilities in the following manner.

   a.   Unit Functions

      • Create Inmate Central Files,
      • Create Privacy Folder,
      • Maintain Inmate Central File,
      • Monitor the filing/security of Inmate Central File, and
      • Create Parole Mini-files.

PS 5800.11
September 8, 1997
Page 4

    b.  <u>Inmate Systems Management Functions</u>

        • Coordinate movement of Central Files/Central File
          material to units,
        • Interagency transfer of files, and
        • Retirement and retrieval of inactive files.

    c.  <u>Regional Inmate System Functions</u>

        • Create and maintain State concurrence Central Files.

    d.  <u>Community Corrections Managers Functions</u>

        • Create and maintain Inmate Central Files on Federal
          inmates being boarded in state facilities (State
          Boarders).

8.  <u>INMATE CENTRAL FILE</u>

   a.  <u>Documents File</u>.  Part of the Inmate Central Records System
is defined in the Federal Register, September 16, 1976, Volume
41, No. 181, page 39918.

   b.  <u>Creation</u>.  Each Unit Secretary shall review the SENTRY
Daily Log for unit assignments and create the Inmate Central File
and Privacy Folder immediately after the assignment to a housing
unit at the institution to which the inmate has been designated.
   Inmates who have been previously classified and who are
subsequently transferred from other Bureau institutions
ordinarily shall not require creation of another Inmate Central
File.  Former files on individuals recommitted under the same
sentence shall be reactivated.

   The six-position Inmate Central File Folder shall be used,
along with a pressure-sensitive label.  Tattered or torn file
folders should be replaced.  The General Services Administration
currently supplies the Inmate Central File Folder.  Specific
details and ordering instructions may be obtained from the
institution Business Office.

   c.  <u>Location</u>.  The Inmate Central File is maintained at the
current or last institution or facility of confinement.  Once the
inmate has been released, refer to the Inmate Systems Management
Manual for further instructions.

   d.  <u>Categories of Individuals Covered</u>.  Current and former
sentenced inmates under the custody of the Attorney General of
the United States to include Study and Observation cases.

   e.  <u>Organization</u>.  The six-position Inmate Central File folder
provides for the organization of filed material, topically, as
follows:

**Section No.**                    **Topic**

        1.        Sentence Data/Detainers/IFRP
        2.        Classification/Parole Material
        3.        Mail, Visits, and Property, etc.
        4.        Conduct, Work and Quarters Reports
        5.        Release Processing
        6.        General Correspondence

In addition, a Privacy Folder, attached to the top of Section 5, provides a receptacle for storing Freedom of Information Act (FOIA) Exempt material.  The department responsible for ordering Privacy Folder inserts shall consult the institution Business Office to ensure proper procedures are followed.

   f.  Standardization of Inmate Central File Material. Standardization streamlines the filing of material, expedites accessibility and retrieval of data, and eliminates the need to rearrange files of inmates transferring into the unit.

   (1)  Responsibilities.  All institutions shall comply with the standardized system for organizing material in the Inmate Central File and Privacy Folder.

   Unit Managers are ordinarily responsible for ensuring all Inmate Central Files and Privacy Folders are organized as stated herein.  At institutions retaining a centralized file system, the Warden shall designate staff accountable for standardized filing of material.

   (2)  Requirements.  Detailed instructions for the order of routine filing are included in Section 9 of this Program Statement, with the filing of FOIA Exempt materials in the Privacy Folder detailed in Section 10.

   (3)  Storage.  Files shall be stored alphabetically.

   g.  Multiple Volumes.  When it becomes necessary to establish a second volume of an inmate's Central File, the second volume shall be created containing all the original core documents required for an initial file.

   (1)  Core Documents.  Core documents shall include:

*
        (a)  CIM White Card                                              *
        (b)  Intact FOIA Exempt section from primary volume
        (c)  J&C
        (d)  PSI
        (e)  Chronological Disciplinary Record for Incident
             Reports written before December 1, 1990.

PS 5800.11
CN-01 12/31/97
Page 6

(2)  <u>Privacy Folder</u>.  A new Privacy Folder shall not
ordinarily be re-created.  Staff shall remove the FOI Section
from the preceding volume and insert it in the newly created
volume.

(3)  <u>Controls</u>.  Multiple volumes shall be clearly identified on
the check-out cards, file tabs, and on the file cover (i.e.,
Volume I of III, Volume II of III, etc.)

- A Check-out Card (BP-387) shall be used for each
  volume.

- If all volumes of multiple files are not maintained in
  the regular Central File cabinet, the current volume is
  to be marked as to the location of the other volume(s).

- Each **volume** shall be accounted for daily.  Thus the
  total file count will exceed the inmate count when
  multiple volumes exist.

- At the beginning of each month, a list of inmates with
  multiple volume files is to be included on the file
  count record noting the number of volumes.  Addition
  and deletion of files and volumes of files will then be
  noted on the file count record for the remainder of
  that month.

- Multiple volume files shall be created chronologically,
  maintaining the six-position file's order.

9.  <u>INMATE CENTRAL FILE ORDER</u>.  The six-position Inmate Central
File provides for the organization of filed material.  Material
shall be filed in the following order in the Inmate Central File
(top to bottom) by sections when the document, report, etc. is
appropriate, available, and disclosable to the inmate.

   a.  <u>Section One:  (Sentence Data/Detainers/Inmate Financial</u>
<u>Responsibility Program)</u>

\*
        (1)  CIM White Card                                        \*
        (2)  SENTRY Sentence Computation Record (most current)
        (3)  Copy of Judgment in a Criminal Case or Judgment and
             Commitment Papers (all)
        (4)  Financial Responsibility SENTRY Module Contract (most
             current)

           (a)  Installment Schedule Agreement for Unpaid Fines form
                     (if applicable)
           (b)  Cost of Incarceration Fee form (BP-546) (if
                applicable)
           (c)  Correspondence relating to IFRP
                i.e. (BP-445's, Financial Litigation Unit
                Correspondence)

   (5)  Extra Good time Recommendation (BP-390) (all)
   (6)  Statutory Good Time Action Notice (BP-389) (all)
   (7)  Good Conduct Time Action Notice (BP-448) (all)
   (8)  Detainer Action Letter (BP-394) (all)
   (9)  Interstate Agreement on Detainer forms (BP-235 through 239) (copy, if applicable)
 (10)  FBI Fingerprint Report (RAP Sheet) or request for RAP Sheet; no Bureau run NCIC/III records in disclosable portion of File
 (11)  Disclosable AO-235/AO-245/USA-792, (with response, if applicable)

b.  Section Two:  (Classification and Parole Materials)

   (1)  Inmate Activity Record form (BP-381); new form for each institution (all)
   (2)  In-Transit Data form (most current)
   (3)  Copy of Transfer Order (BP-399) (all)
   (4)  Copy of Redesignation Approval, SENTRY Clearance Data - no separatees listed (most current)
   (5)  Request for Transfer (all)
   (6)  Request for Management Variable Application/Updated Expiration Date or PSF Waiver (all)
   (7)  Custody Classification form (most current; all exception cases resulting in custody reductions)
   (8)  Parole forms (in chronological order) (all)

     (a)  Parole Commission Appeals, National/Regional
     (b)  Notice of Action
     (c)  Notice of Action, Part II-Salient Factor
     (d)  Waiver of Notice, Representation or Disclosure Staff Representative form
     (e)  Notice of Hearing
     (f)  Parole Application/Waiver (I-24)
     (g)  Background Statement of Inmate (I-32)
     (h)  Attorney Witness Election forms (I-16) and (CJA 22)

   (9)  Related Correspondence to Parole Commission (all)

     (a)  Parole Violation Warrant Application
     (b)  USPO packet excluding duplication

 (10)  Most current Progress Report
 (11)  Classification Material

      Program Review forms (BP-191) (6 most current)

 (12)  Treaty Transfer Packet (copy, if applicable)

     (a)  Transfer Inquiry form (BP-297) (if applicable)
     (b)  Treaty Transfer Case Summary (if applicable)

    (13)   Executive Clemency Report (if applicable)
    (14)   Request for PSI (U.S. District Courts Only)
    (15)   Security Designation form (BP-337)
    (16)   Presentence Investigation Report (PSI) (U.S. District Courts Only)/Probation Violator Report
    (17)   Correspondence relating to PSI (disclosable)

c.   Section Three:  (Mail, Visits, Property, etc)

    (1)   Extra Photographs, stored in envelope (most current)
    (2)   Social Security Card, Drivers License, etc. (stored in envelope; send to R&D upon release)
    (3)   Approved Visiting List (most current)
    (4)   Correspondence relating to Visiting List (disclosable)
    (5)   Telephone List (most current since the last Program Review)
    (6)   Telephone Number Request form (BP-505) (all)
    (7)   Correspondence relating to Telephone List (disclosable)
    (8)   Inmate to Inmate Correspondence Approvals (all)
    (9)   Acknowledgment of Inmate (BP-407/408) (all)
  (10)   Inmate Personal Property Records (BP-383) (all)
  (11)   Confiscation & Disposition of Contraband forms (BP-402) (all)
  (12)   Commissary Issue Card form (most current)
  (13)   Request/Authorization to Mail Inmate Packages (BP-329) (maintain for two years)
  (14)   Authorization to Receive Packages or Property (BP-331) (maintain for two years)
  (15)   Injury Report - Inmate (BP-S140.016) (all)
  (16)   Uniform Basic Safety Regulations (BP-169) (most current)
  (17)   Institution AIDS Training (most current)
  (18)   Admission and Orientation Program Checklist (all)
  (19)   Intake Screening form/(Rights & Responsibilities (all)
  (20)   Medical/Psychology Intake Screening Form (BP-354) (all)

d.   Section Four:  (Conduct, Work, Quarters Reports, etc)

    (1)   Chronological Disciplinary Record for Incident Reports written prior to December 1, 1990
    (2)   Incident Reports, UDC Actions (all)
    (3)   Discipline Hearing Officer Packet; file each UDC/DHO action as a packet in chronological order (all)

    (a)   Incident Report (BP-288)
    (b)   Inmate Rights at Discipline Hearing (BP-293)
    (c)   Notice of Discipline Hearing Before the DHO (BP-294)
    (d)   Duties of Staff Representative (BP-306)
    (e)   Waiver of Appearance (BP-307)
    (f)   Discipline hearing Officer (DHO) Report (BP-304)
    (g)   DHO Checklist (BP-447)
    (h)   Administrative Detention Order (BP-308)
    (i)   Special Housing Unit Record (BP-292)
    (j)   Special Housing Review (BP-295)

PS 5800.11
September 8, 1997
Page 9

   (k)   Temporary Placement in Disciplinary Segregation
        Order (BP-321), including any supporting disclosable
        documentation

(4)  Work Performance Rating forms, UNICOR and IPP (purged
     after incorporated into the inmate's progress report)
(5)  Request for Vacation (most current)
(6)  Education Data

   (a)   Education Data Transcript (most current)
   (b)   High School Diploma or proof of its attainment GED
   (c)   V/T Certificates (all)
   (d)   Other Education Related Documents

(7)  Drug Abuse Program correspondence (most current
     on top)

e. Section Five:   (Release Processing)

(1)   Institution/Unit Release Preparation Checklists (most current)
(2)   Program Review Report (BP-571) (if applicable; original report regarding Notification of Prisoner Release)
(3)   Notification of Community Treatment Programs form (if applicable)
(4)   USPO Plan Approval (most current)
(5)   Parole Certificates, Parole form (H-13) (all)
(6)   Parole Certificate Request form (most current)
(7)   Release Correspondence (Pre-release progress report receipts) (most current)
(8)   Notice of Release and Arrival, Parole form (I-13) (all)
(9)   Deportation Notice (Parole form 55) (all)
(10)  Supervision Release Plan form (BP-522) (all)
(11)  Inmate Education Data Transcript (most current)
(12)  Certificate of Mandatory Release, Mandatory Release to Special Parole, Special Parole or Court Designated Parole (Parole form I-33) (all)
(13)  Release Authorization (BP-392) (all)
(14)  Gratuity forms (BP-189 or BP-379) (most current)
(15)  Notification of Prisoner Release Form (if applicable)
(16)  Release of Immigration Detainee with Supervision to follow (BP-325) (all)
(17)  Conditions of Probation and Supervised Release, (Probation form 7A) (if applicable)
(18)  CCC Terminal Report (if applicable)
(19)  CCC Packet (most current)

   (a)   Furlough Approval and Record form (BP-291) (CCC Only)
   (b)   Institution Referral for CCC Placement (BP-210)
   (c)   Acceptance/Denial Documentation from CCM
   (d)   Exception Memorandum from Warden done prior to April 30, 1993.

(e) Exclusion memorandum from the Warden with rationale
    for exclusion from CC programs/Inmates refusal to
    participate in CC programs memorandum
(f) Medical Evaluation for CCC Placement (BP-351)
(g) Community Based Program Agreement

(21) Prior Release Documents (file entire packet together)


f.  Section Six: (General Correspondence) - Chronological

   (1) Correspondence, General
   (2) Furlough Packet (all)

      (a) Furlough Questionnaire USPO (BP-302)
      (b) Furlough Questionnaire
      (c) Furlough Approval form (BP-291)
      (d) Correspondence Regarding Furlough
      (e) Furlough Evaluation

   (3) Record of Escorted Trip (most current)
   (4) Inmate Request to Staff Member (BP-148) (all)
   (5) Congressional Correspondence - Entire Packet (all)
   (6) Consent forms - General (all)

Note: No Administrative Remedy Responses should be
maintained in the Inmate Central File.  See the Program Statement
on the Administrative Remedy Program for file maintenance.

10. PRIVACY FOLDER.  The Privacy Folder is to be located on the
top of Section 5 of the Inmate Central File.  The Privacy Folder
contains two sections.

   • FOIA Exempt material for Section I shall include Central
     Inmate Monitoring documents and Victim/Witness
     Information.

   • Section II shall include other non-disclosable material
     from the Inmate Central File.

All material not considered FOIA Exempt shall be filed in the
appropriate section of the Inmate Central File.

   a.  Section One: Central Inmate Monitoring and Victim/Witness
Notification Packet

      (1) CIM (BP-339) (most current)
      (2) CIM (BP-340) (all)
      (3) CIM Documentation (all)
      (4) Cover Memorandum to Appropriate Review Authority (all)
      (5) CIM Approval Letter from Appropriate Review Authority
          (all)

    (6)  CIM Clearance Request with corresponding SENTRY
         Clearance Data Display.
    (7)  Victim/Witness Protection Packet - Notification Log
         (all)

      (a)  Initial Notification Letter
      (b)  All Other Victim/Witness Notification Documents (all)

  b.  <u>Section Two:  Miscellaneous Non-Disclosable Materials</u>

    (1)  Secret Service Card
    (2)  Non-Disclosable PSI, AO 235, 245, USA 792 and
         Sentencing Memo/Transcript
    (3)  FOIA Exempt In-Transit Data form (most current)
    (4)  Psychological/Psychiatric Intake Screening form (BP-435
         and 436) (Only FOIA EXEMPT) documents determined by
         Psychology staff.
    (5)  Visitor Information form (BP-309) (all)
    (6)  Visitor Authorization for Release form (BP-310) (all)
    (7)  Request for Conviction Information form (BP-311) (all)
    (8)  Any Materials from the Central File which are FOIA
         Exempt are to be filed chronologically.
    (9)  Any other Materials that are FOIA exempt:

      (a)  Study and Observation Cases (all)
      (b)  Confidential Investigations (all)

11.  <u>U.S. PAROLE COMMISSION MINI-FILES</u>.  All facilities shall
adhere to the U.S. Parole Commission Rules and Regulations in
creating and handling these files.

   a.  <u>Origin</u>.  The Unit Secretary shall create the Parole
Mini-file at the time of admission for all commitments who are
eligible for parole and will eventually be released with U.S.
Parole Commission supervision to follow.

   Files on inmates who do not receive a hearing or are not
granted parole but who have a mandatory or special parole term
after release shall be sent immediately after the inmate's
release to the appropriate U.S. Parole Commission Office which
has supervision responsibility.

   Parole Mini-files shall be created for adult sentences imposed
under 18 U.S.C. 4205(f) and the YCA provision 18 U.S.C. 3401(g)
of the Federal Magistrate Act of 1979.  Files shall also be
created for all inmates serving sentences imposed under 21 U.S.C.
848 (Continuing Criminal Enterprise) even though inmates
sentenced under such sentences are not eligible for parole.  Upon
the inmate's release from confinement, these files shall be sent
to the appropriate U.S. Parole Commission Office supervising the
inmate.

PS 5800.11
September 8, 1997
Page 12

(Supplies of file folders and pressure-sensitive folder labels
are obtained from the appropriate U.S. Parole Commission Office.)

b. <u>Maintenance and Use</u>. These files are to be maintained at
the same institution at which the inmate is confined. Prior to
the initial parole hearing, the files are to be shipped via
certified mail or via United Parcel Service, to the appropriate
U.S. Parole Commission office. Following review at the U.S.
Parole Commission, the file is returned to the institution for
storage until the hearings occur.

When practical, after hearings, U.S. Parole Commission
examiners may take smaller quantities of these files with them
when they return to their office. Otherwise, other staff the
Warden designates shall clip the Commission Order, hearing
summary, tape and notes, and other hearing documents to the
inside of the Parole Mini-file before transmittal in the order
indicated. These shall be delivered to the institution mailroom
for shipment. Hearing tapes shall be boxed and sent as soon as
possible to the U.S. Parole Commission office.

When an inmate waives parole consideration or no hearing is
conducted, the Parole Mini-file shall be forwarded upon the
inmate's release to the U.S. Parole Commission office provided
the inmate is released to the U.S. Parole Commission's
supervision.

c. <u>Contents</u>. The contents of the Parole Mini-files are to be
limited to the following:

   (1)  SENTRY Sentence Computation Record
   (2)  FBI Fingerprint Record (RAP Sheet)
   (3)  Judgment in a Criminal Case or Judgment and Commitment Order
   (4)  Pre-Sentence Report (if disclosable)
   (5)  Prosecuting Agency Report
   (6)  Classification Material
   (7)  Medical, Psychological and Psychiatric Reports (if separate from classification material and disclosable)
   (8)  U.S. Attorney/Judges Report (USA-792, AO-235)
   (9)  Progress Report (most current)
  (10)  Escape Reports
  (11)  Front Side of all Incident Reports with Discipline Hearing Officer Packet Given to Inmate
  (12)  Background Statement of Inmate (Parole form I-32)
  (13)  Application for Parole (Parole form I-24)
  (14)  Pre-Release Matters:

     (a)  Correspondence regarding release planning and aftercare arrangements.
     (b)  Correspondence regarding detainers.
     (c)  Release Certificates where applicable.

    (d)  Recommendations relative to CCC or halfway house
        transfer including adjustment reports.
    (e)  Committed fine documents.
    (f)  Other pre-release matters.

(15)  Correspondence Relative to Parole Consideration
(16)  Policy established within the U.S. Parole Commission
     governing material emanating from the Commission and
     needed in the files.  All material received from the
     Commission shall be filed.

Note:  FOIA Exempt Material shall not be placed in Parole
Mini-files.

e.  Organization.  Material shall be organized within folders,
by position, as follows with the latest date on top:

(1)  No. 1  Sentence Data

    (a)  SENTRY Sentence Computation Record
    (b)  Prosecuting Agency Report
    (c)  Report of U.S. District Judge, AO-235 form
    (d)  Report of U.S. Attorney, 792 form
    (e)  FBI Fingerprint report (RAP Sheet)
    (f)  Judgment and Commitment Order

(2)  No. 2  Classification Material

    (a)  Progress Report (most current)
    (b)  Escape Reports
    (c)  Front Side of an Incident Report
    (d)  Medical, psychological, and psychiatric reports, if
        disclosable
    (e)  Classification Materials
    (f)  Presentence Report of USPO (Probation form 2a), if
        disclosable

(3)  No. 3  General Correspondence

(4)  No. 4  Parole Material

    Notice of Hearing - Parole Application (current and
    previous ones), Representative, and Disclosable Request
    (Parole form I-24)

e.  Maintenance, Security and Access, Responsibilities and
Procedures.  The same rules as for the Inmate Central File shall
apply.  Institution staff shall file any of the material
described above that is received or generated prior to shipment
of the files to the appropriate U.S. Parole Commission office.
Routine filing material received or generated after that time

shall be forwarded to the appropriate U.S. Parole Commission office for filing. Commission staff shall file official communications provided for Commission use through other channels.

f. <u>Transfers</u>. As inmates are transferred between institutions, each Parole Mini-file still held at the institution shall be included in the same package with the appropriate institution Inmate Central File as specified in the Security Designation and Custody Classification Manual.

g. <u>Inmate Review of Parole Commission Files</u>. Inmates may request review of the Parole Mini-file through the U.S. Parole Commission in accordance with 28 CFR 2.55 and 2.56.

12. <u>MAINTENANCE, SECURITY, AND ACCESS PROCEDURES</u>

a. <u>Responsibility</u>. At the Warden's delegation, the Inmate Systems Manager (ISM) is the official custodian of inmate records. The ISM is responsible for file retention and disposal, certification purposes, and court appearances when the record's presence is required outside normal operating situations.

The Regional Inmate Systems Administrator, at the Regional Director's delegation, shall have the same responsibilities at the Regional Office level.

At institutions where inmate files are stored centrally, the Warden's designee has supervisory responsibility. Wherever Inmate Central Files are decentralized to functional units, supervisory responsibility shall belong to the Unit Manager and his/her staff. Although some delegation is necessary, the Unit Manager is accountable for file security, control, and maintenance. A clear method of accountability is to be established for the removal and return of files from this area (see subsection b. of this Section).

b. <u>General Requirements</u>. The following rules apply at every institution where inmates are confined and files maintained, regardless of whether the Inmate Central Files are centralized or decentralized.

(1) Files may **never** be left unsecured or handled in such a way as to be accessible to unauthorized persons. Staff shall ensure that inmates do not transport files and confidential materials.

(2) Files shall be stored in secure cabinets in secure areas when not in use. Fireproof cabinets shall be used or acquired except for those institutions which have specifically obtained a written exemption from the Assistant Director, Correctional Programs Division.

(3)  Because of the need for files in emergency situations, all files shall be returned to the file cabinet prior to the close of business or tour of duty of each user.  **Files shall not be locked away overnight in private desks, offices, cabinets or vaults, since accessibility to these locations in times of emergency poses problems.**  Inmate Central Files for inmates not housed in the institution (i.e. inmates on writ, home confinement, or housed in CCCs) are also counted on the same basis.  These files shall be kept in a separate section of the file cabinet to better facilitate file accountability.

(4)  An Inmate File Check-Out Card (BP-387) shall be prepared for each volume and remain with that volume.  The card is to be placed in the file cabinet with the volume, and each user shall sign and date the card when a volume is removed and leave the card in the volume's place.  This system provides a tracking device when files are missing or needed for other purposes and improves the ability to take inventory.

(5)  All Inmate Central Files shall be counted any time that Central File cabinet is unlocked.  For example, if staff are on duty and open a file cabinet, all the files in that particular file cabinet must be counted that day.  Conversely, if staff are on duty but have no need to open the file cabinet, the files do not have to be counted.  Staff shall indicate "file not opened", initial, and date the file count record.  The following information shall be included in the file count record:

- the date/time of the count,
- total volumes counted,
- initials of the counter, and
- reasons for any changes since the previous day's count.

A name roster **and census** count must be conducted at least weekly.  This count consists of accounting for each file by securing a name roster printout from SENTRY and comparing the files in the cabinet with the name roster.  After completion, the printout shall be initialed, dated, and maintained for 90 days. The file count record shall be maintained for a period of 2 years.

c.  Security Level Requirements

(1)  Inmate Central Files in Minimum and Low Security Level institutions may be maintained securely within the functional unit in a secure manner at the Warden's discretion.

(2)  Inmate Central Files in Medium Security Level facilities may be maintained securely within the functional unit at the Regional Director's discretion and approval.

＊　　(3)  Inmate Central Files in High Security Level facilities
may be maintained in either the functional unit with the Regional
Director's approval or, in a secure, centralized location.
Inmate Central Files maintained in a secure centralized location
do not require Regional Director approval.                    ＊

　　(4)  The location and security of Inmate Central Files in
Administrative facilities shall be reviewed and a determination
made on a case-by-case basis with the Regional Director's
approval.

13.  <u>ROUTINE USES OF INMATE CENTRAL FILES</u>.  The routine uses of
Bureau Inmate Central Files are periodically published in the
Federal Register.  At the time of this Program Statement's
publication, those include:

　　a.  <u>Routine Uses</u>.  Routine uses of these files are to:

　　(1)  Provide an information source to officers and employees
of the Department of Justice who have a need for the information
in the performance of their duties;

　　(2)  Provide an information source to law enforcement
officials for investigations, criminal prosecutions, civil court
actions, or regulatory proceedings;

　　(3)  Provide an information source for disclosure of
information on matters solely of general public record, such as
name, offense, sentence data, and release date;

　　(4)  Disclose information to contracting or consulting or
correctional agencies that provide correctional services for
federal inmates;

　　(5)  Provide an information source for responding to
inquiries from federal inmates involved in Congressional
inquiries;

　　(6)  Provide information relating to federal offenders to
the courts, including court officials and probation officers;

　　(7)  Provide victims and/or witnesses, pursuant to
victim/witness federal legislation and policy, information
relating to an inmate's furlough, parole (including appearance
before the U.S. Parole Commission), transfer to a community
corrections center, mandatory release, expiration of sentence,
escape (including apprehension), death, and other such release-
related information;

　　(8)  Provide state agencies or authorities, pursuant to
Public Law 98-135, identifying data of Bureau inmates for the

purpose of matching the data against state records to review the
eligibility of these inmates for unemployment compensation; the
requesting state is to erase the Bureau data after this
determination has been made;

(9)   Provide the Social Security Administration (SSA),
pursuant to Public Law 96-473, identifying data of Bureau inmates
for the purpose of matching the data against SSA records to
enable the SSA to determine the eligibility of Bureau inmates to
receive benefits under the Social Security Act; SSA is to erase
the Bureau data after the match has been made;

(10)   Provide the Veterans Administration (VA), pursuant to
Public Law 96-385, identifying data of Bureau inmates for the
purpose of matching the data against VA records to determine the
eligibility of Bureau inmates to receive veteran's benefits; the
VA is to erase the Bureau data after the match has been made;

(11)   Provide information from an inmate record to an
employee, former employee, or his or her designated
representative when such information is included in the
employee's or former employee's adverse or disciplinary personnel
action file with respect to proposed adverse or disciplinary
personnel action against that employee or former employee; the
employee's or former employee's adverse or disciplinary personnel
action file is covered by a government-wide system of records
published by the Office of Personnel Management (OPM) entitled
"Adverse Action Records, OPM/GOVT-3;" to protect the privacy of
the inmate, information transferred to the employee's or former
employee's adverse or disciplinary personnel action file will be
sanitized as warranted and/or appropriate protective orders may
be requested to prevent further dissemination; and

(12)   Provide an employee, former employee, or his or her
designated representative information from an inmate record
pursuant to regulations or order of any body properly trying the
merits of an adverse or disciplinary personnel action, including
an administrative agency, arbitrator, or court of competent
jurisdiction; to protect the privacy of the inmate, information
provided the employee, former employee, or his or her designated
representative will be sanitized as warranted and/or appropriate
protective orders may be requested to prevent further
dissemination.

   b.   <u>Release of Information to the News Media</u>.   Information
which may be released to the news media and the public pursuant
to 28 CFR 50.2 may be made available from systems of records
maintained by the Department of Justice unless it is determined
that release of the specific information in the context of a
particular case would constitute an unwarranted invasion of
personal privacy.

   c.  <u>Release of Information to Members of Congress</u>.  Information contained in systems of records maintained by the Department of Justice, not otherwise required to be released pursuant to 5 U.S.C. 552 may be made available to a Member of Congress or staff acting upon the Member's behalf when the Member or staff requests the information on behalf of and at the request of the individual who is the subject of the record.

   d.  <u>Release of Information to the National Archives and Records Administration</u>.  A record from a system of records may be disclosed as a routine use to the National Archives and Records Administration (NARA) in records management inspections conducted under the authority of 44 U.S.C. 2904 and 2906.

14.  <u>DISCLOSURE OF INMATE CENTRAL FILE MATERIAL</u>.  The Privacy Act of 1974 sets forth a series of requirements governing federal agency record-keeping practices intended to safeguard individuals against invasions of personal privacy.  The Act forbids release of information from agency records without a written request by, or without the prior written consent of, the individual to whom the record pertains, except in specific instances as described in the Act.  Civil sanctions and criminal penalties are prescribed for violation of the provisions of the Privacy Act.

It is, therefore, imperative that each Bureau employee be knowledgeable of this Act's provisions, and conform his or her conduct to the Act regarding the maintenance of records and the release of information contained in those records.  The Program Statement on Release of Information establishes procedures for the release of requested records in the possession of the Bureau.

15.  <u>INMATE REVIEW OF INMATE CENTRAL FILE</u>.  An inmate has the option to look at materials maintained in his/her Inmate Central File.  This procedure is not required by either the Freedom of Information Act or Privacy Act.  A request submitted under FOIA, for example, is processed formally under Department of Justice and Bureau guidelines for handling such requests, in light of the specific statutory provisions.  By contrast, the information contained in this section establishes an administrative procedure for inmate access to records which can properly be shown to the inmate in accordance with sound correctional practices and concerns.

   a.  <u>Local Procedures</u>.  Each institution and facility shall issue local instructions to implement this section.  Local procedures shall include but are not limited to those items listed in Section 15.a. and 15.b. of this Program Statement. Each Chief Executive Officer (CEO) shall decide on the expeditious and efficient means to accomplish any necessary file review.  The CEO must designate those staff who are responsible for the:

PS 5800.11
September 8, 1997
Page 19

    (1)   initial review of all current files of the inmate
         population;
    (2)   receipt of inmate requests to review files, and the
         monitoring of the inmate review of files; and
    (3)   screening of all records and documents in the future as
         they are sent to the Inmate Central File for filing.

   Each institution may adopt its own procedures and forms for
submitting and acknowledging requests and for logging and
scheduling Inmate Central File reviews.

   b.   <u>Inmate Request and Review</u>.  Any inmate seeking to look at
his/her Inmate Central File shall submit a request to a staff
member, as designated in the local instruction.

     • The inmate's request should be acknowledged.
     • The inmate should be permitted to review the file whenever
       practicable.
     • All file reviews must be done under constant and direct
       staff supervision.
     • Those materials which have been determined to be non-
       disclosable shall be removed from the folder before inmate
       review.
     • An entry shall be made on the Inmate Activity Record
       (BP-381) to show the date the inmate reviews the file.
       The staff member monitoring the review shall initial the
       entry and the inmate shall be asked to initial it.

   c.   <u>Inmate Challenge to Information</u>.  An inmate may challenge
the accuracy of the information in his or her Inmate Central
File.  Unit team staff shall take reasonable steps to
ensure the accuracy of challenged information, particularly when
that information is capable of being verified.  The inmate is
required to provide staff with sufficient information in support
of a challenge (names of persons to contact, government agency,
etc...).

  When an inmate provides such information, staff shall review
the alleged error(s) and take reasonable steps to ensure the
information is correct.

   For example, if an inmate challenges information in the
Presentence Investigation Report (PSI), staff should inform the
appropriate U.S. Probation Office (USPO) in writing of the
disputed information, and request that a written response also be
provided.  **USPO procedures, however, do not allow for changes or
addendums to be made to the Presentence Investigation Report
after sentencing since it is a court document.**

  If the USPO subsequently reports that the challenged
information, or some part thereof is not accurate, staff shall
attach the Bureau's inquiry and the USPO response to the

challenged document.  Staff shall file this information in the

applicable section of the Inmate Central file, and also make a
notation on the Inmate Activity Record form (BP-381) to ensure
that future decisions affecting the inmate are not based on the
discredited information.

When the USPO verifies that the information in the PSI is
indeed inaccurate, as claimed by the inmate, staff should
subsequently review, and where indicated, correct Bureau
generated reports or data such as the Inmate Load and Security
Designation form (BP-337), the Custody Classification form
(BP-338), Progress Report, and any other reports that may have
been based on the PSI.  Bureau reports, data, or SENTRY
transactions should be corrected within a reasonable period of
time after identification as being inaccurate.

If the information source will provide a corrected document or
data, it should be immediately inserted in the file or data base
and the inaccurate information or document removed.  A notation
on the Inmate Activity Record form should acknowledge the
insertion of the corrected information or document.

   d.  <u>Inmate Copies</u>.  Any inmate who wishes to receive copies of
disclosable materials from the file shall submit a request to
institution staff.  Within a reasonable time after the request,
institution staff shall provide the inmate copies of requested
disclosable documents maintained in the Inmate Central File.
Fees for the copies are to be calculated in accordance with the
Program Statement on Release of Information.

   e.  <u>Privacy Folder</u>.  Records which have been determined, under
separately issued guidelines, to be excluded from inmate review
shall be placed in the Privacy Folder.  Normally, actual
placement of documents in the Inmate Central File is the Unit
Secretary's responsibility.  The Privacy Folder shall be placed
on top of section 5 in the Inmate Central File.

As materials from any source are submitted for placement in
the Inmate Central File, they are routed to an appropriate staff
member the Warden designated.  The Case Manager shall review the
materials, to ascertain whether to place them in the regular
sections, the Privacy Folder, or discard them.  Any document to
be excluded from inmate review must be stamped "FOI EXEMPT".  At
each Program Review and before an inmate reviews his/her Inmate
Central File, the Case Manager shall review the file to ensure
the proper location of forms and purge outdated or unnecessary
forms and/or documentation.

   f.  <u>Parole Files</u>.  Parole Mini-files, examiner packets, and
pre-hearing assessments are not disclosable unless specifically
authorized by the U.S. Parole Commission.  The Parole Mini-file
and other hearing materials must be removed from the Inmate
Central File prior to inmate review.  The inmate may seek review

of those materials through the U.S. Parole Commission in accordance with 28 CFR 2.55 and 2.56.

16.  <u>DOCUMENTATION OF DISCLOSURES</u>.  The Privacy Act of 1974 requires accounting for both written and oral disclosures of information about inmates.  Except for disclosures of information of records made to other Department of Justice employees, and all components thereof, and for disclosures required by the FOIA (i.e., public information), an accounting of disclosures of any information concerning an individual contained in a system of records maintained by the Bureau shall be kept in accordance with the following guidelines:

   a.  <u>Oral Disclosures</u>.  Staff are to take the position that only public information is to be released orally.  Form BP-171 is designed to assist the person receiving an oral request for information in accounting for the results of the request.  The form may also be used to document information which is released and not covered by the FOIA.

   A memorandum shall be prepared and retained in the file from which the record is disclosed, or an appropriate notation will be maintained in the file, attached to the recorded disclosed.

   b.  <u>Written Disclosure</u>.  Accounting for written disclosures is made in the same manner as for oral disclosures, or may be made by retaining a copy of the correspondence requesting the information and a copy of the response in the file from which the record is disclosed.

17.  <u>TRANSFER OF RECORDS BETWEEN BUREAU FACILITIES</u>

   a.  <u>Transfer Out</u>.  Procedures for processing all records, including the Inmate Central File, are covered in the Inmate Systems Management Manual.

   b.  <u>Transfer In</u>.  Inmate Systems Department staff shall receive and process records on transferring inmates as follows:

      (1)  Judgment in a Criminal Case and Judgment and Commitment Files shall be pulled for audit by the Inmate Systems staff;

      (2)  Medical records shall be sent to the Health Services Administrator;

      (3)  Mental Health records shall be sent to the Chief Psychologist/Psychiatrist;

      (4)  Inmate Central Files related materials and Parole Mini-files, if any, shall be sent to the appropriate Unit Manager.

PS 5800.11
September 8, 1997
Page 22

c.  Parole Violators, Mandatory Release Violators, Escapees
Files.  If the inmate is committed elsewhere, his/her files shall
be shipped immediately upon designation.  Files shall be prepared
for shipment the same as for transfer and mailed by **Certified
Mail, Return Receipt Requested**.  Files on these cases, if not
already received, shall be requested by telephone, BOPNet
GroupWise, or EMS, and shall be processed upon receipt the same
as for transferring inmates.

18.  REQUESTS FOR FORWARDING INMATE FILES.  All requests for
inmate files from individuals or agencies outside the Bureau
shall be referred to the ISM Department for review and action as
required in the Inmate Systems Management Manual.  Requests from
Bureau facilities shall also be referred to the ISM Department
for review.

Ordinarily, if an inmate's projected stay at another institution
(i.e., writs) is for 60 days or more, the parent institution
shall be contacted to forward the Inmate Central File to the
holdover institution.  This contact is to be documented and
should not require weekly follow-up.

19.  RETIREMENT OF INMATE CENTRAL FILES

a.  Files on Expired Sentences.  Files on these sentences shall
not be combined with new sentence files.  However, they may be
retrieved for review and then returned to the Federal Records
Center after the review is completed.

b.  Files Processing at Final Release.  The following
procedures shall be completed at the time of each inmate's
release.

(1)  Inmate Central File folders shall be retained in the
unit for approximately two weeks after the inmate's release.
Files for inmates housed in halfway house facilities or community
release status (i.e. home confinement, community corrections
centers (CCC)) shall be maintained with the unit files until the
final release paperwork is received from the CCC.  This allows
for final release papers to be consolidated and filed before the
file is forwarded to the ISM Department for inactive file
storage.  Unit Managers are responsible for ensuring all required
documents are in the Inmate Central File prior to retirement of
the file.

(2)  Inmate Central Files are preserved for 30 years after
the sentence expiration.  Therefore, following release from
service of the confinement portion of the sentence, medical,
mental health, and visiting records shall be forwarded to the
appropriate unit for consolidation with the Inmate Central File.
The consolidated file is then sent to the ISM Department.  The
Judgment in a Criminal Case/Judgment and Commitment file is

included in the consolidated file at retirement.

The outside of the file folder shall be stamped with the year of expiration of sentence and files shall be stored according to local procedures.  Expiration of sentence for this purpose is defined as the date supervision expires plus any special parole term, probation, supervised release, or the date released from confinement with no supervision to follow plus any special parole term.

(3)  Files designated for research purposes shall be forwarded to the Office of Research and Evaluation (ORE), Central Office and scheduled for disposal as ORE determines.  A notation shall be entered on the permanent alpha index card in each case to indicate to whom in ORE the file was sent.

(4)  Material received regarding inmates who have been released from serving their sentences shall be destroyed with the exception of death notices or certificates and copies of U.S. Parole Commission correspondence to the U.S. Marshals Service transmitting warrants and court orders or documents. Questionable material may be referred to the Case Management Coordinator, Inmate Systems Manager, or the Regional Correctional Programs Administrator for a decision.

c.  <u>Retention and Disposal of Inmate Central Files</u>.  Specific procedures for the retention and disposal of Inmate Central Files are contained in the Inmate Systems Management Manual.

20.  <u>INSTITUTION SUPPLEMENT</u>.  Each institution is to develop an Institution Supplement to include the following information:

a.  Designate the location of pretrial and INS file folders.

b.  Identify the pretrial and INS file folder accountability procedures.

<u>Note</u>:  These instructions should clearly set forth procedures to ensure the maintenance, security, and access responsibilities.

c.  Procedures to implement the inmate review of the Inmate Central File.

/s/
Kathleen M. Hawk
Director