UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMIN JONES,                                    )
                                               )
                    Plaintiff,                 )
                                               )
          v.                                   )          Civil Action No. 06-248 (PLF)
                                               )
U.S. DEPARTMENT OF JUSTICE, et al.,            )
                                               )
                    Defendants.                )
_____)

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move, pursuant to Fed. R. Civ. P. 56(c), for summary judgment in connection

with plaintiff's Freedom of Information Act claims in this case.  Plaintiff's Privacy Act claims

have been addressed in defendant's filing dated February 23, 2007.

The Court is respectfully referred to the attached statement of materials facts not in

dispute, memorandum of points and authorities and the attached supporting documents.  A

proposed order is attached.

Plaintiff should take notice that any factual assertions contained in the attachments in

support of defendant's motion will be accepted by the Court as true unless the plaintiff submits

his own affidavit or other documentary evidence contradicting the assertions in the  attachments.

See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), Local Rule 7.1 and Fed. R. Civ. P. 56(e) which

provides as follows:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein.  Sworn or certified copies of
> all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith.  The court may permit
> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits.  When a motion for

summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMIN JONES,                              )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          Civil Action No. 06-248 (PLF)
                                         )
U.S. DEPARTMENT OF JUSTICE, et al.,      )
                                         )
                    Defendants.          )
_____ )

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552, plaintiff has

requested records from the U.S. Department of Justice, and specifically the Executive Office for

United States Attorneys ("EOUSA"). EOUSA has responded to plaintiff's request and released

all records in its possession, with the exception of information properly redacted and withheld

under the statute. EOUSA referred 41 pages of records to the Drug Enforcement Administration

for a direct response. As more fully set forth below, since defendants have fully met its

obligation under the statute, and there is no material issue in dispute on this point, it respectfully

moves for judgment in its favor.

I.       **BACKGROUND**

         A.       **Procedural History relating to EOUSA Records.**

         In this law suit brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, plaintiff, on or around July 6, 2003, submitted a request for records relating to himself to

EOUSA. See Exhibit 1, Declaration of David Lucynski, Attorney Advisor, EOUSA, ("Lucynski

Decl.") ¶¶ 1 & 2. Specifically, plaintiff sought "[a]ny file, records, or memoranda, or documents

on tape computer generated or stored informatino [sic] to Amin Jones, SS# [REDACTED], from

1996 to the foregoing date."  Lucynski Decl. at ¶ 7.  Accompanying plaintiff's FOIA request was a "Certification of Identity" form purportedly executed under oath on March 10, 2003.  Id. and Exhibit 1, thereto.

Plaintiff's request was deemed to be one for any and all records pertaining to himself maintained by the United States Attorney's Office for the Middle District of Florida (USAO-FLM).  Id. at ¶ 4 and Exhibit 2, thereto.  That District was the only one known to have been involved in proceedings with plaintiff, having been the District where he was indicted and prosecuted for drug trafficking.  Id. at ¶ 4 and Exhibit 3, thereto.

By letter dated September 11, 2003, EOUSA advised plaintiff that his inquiry had been designated Request No. 03-2895 ("Subject:  SELF/FLM") for purposes of processing. Lucynski Declaration at ¶ 3 and Exhibit 2, thereto.

Because of the expansive scope of plaintiff's request for any and all records on himself, the request was classified as a large or "project" request for processing purposes, and EOUSA's September 11, 2003, acknowledgment letter cautioned that, unless narrowed in scope, processing could take approximately nine months:

> Your request will be placed in the order in which it was received for processing, unless it is a very large request (Project Request). Then, it will be placed in a separate group of Project Requests, which are also processed in the order received.  EOUSA makes every effort to process most requests within a month (20 working days).  There are some exceptions, for example, Project Requests take approximately nine months to process.  *Requests for "all information about myself in criminal case files" are Project Requests.  If you have made such a request, you may either write us and narrow your request . . . , or we will consider that you have agreed to a due date of nine months from the date of this letter.*
> (emphasis added)

Id. at ¶ 5 and Exhibit 2.

2

On October 10, 1003, EOUSA received a response from the USAO-FLM advising that it had expended the two free hours of search time afforded to all requesters free-of-charge pursuant to the regulations at 28 C.F.R. § 16.11(d)(3). Id. at ¶ 6. The USAO-FLM also advised EOUSA that law enforcement proceedings were still actively pending against plaintiff and a co-defendant. id. Specifically as to the plaintiff, the District advised that he had appealed his conviction and that his conviction had been affirmed, although a mandate had not yet issued. Id.

Plaintiff apparently sent two appeal letters to the Department's Office of Information & Privacy ("OIP") regarding his FOIA request to EOUSA, although they are not in OIP's file. Id. at ¶ 7. By letters dated November 18 and December 23, 2003, OIP responded to the plaintiff's correspondence, which sought to inquire as to the status of Request No. 03-2895 and/or administratively appeal EOUSA's failure to process it sooner. Id. at ¶ 8. OIP advised plaintiff that "EOUSA is still processing your request [and] . . . [a]lthough the Act authorizes you to treat the failure of the EOUSA to act on your request within the specified time limit as a denial thereof, . . . [o]ur function is limited to the review of those records to which access is in fact denied." Id. and Exhibit 4, thereto.

Because plaintiff's criminal proceedings were still pending, EOUSA's initial non-disclosure decision (Luycinski Decl. at Exhibit 5) invoked FOIA exemption (b)(7)(A).[1] See Id. at ¶¶ 10 and 11 and Exhibit 5. This decision also invoked three other FOIA exemptions: Exemption (b)(3); Exemption (b)(5); and Exemption (b)(7)(C). Id. at ¶ 12. Defendants no longer invoke Exemption (b)(3). See EOUSA Vaughn Index found at Exhibit 1a, hereto.

---

[1] 5 U.S.C. § 552(b)(7)(A) exempts from public disclosure "information compiled for law enforcement purposes . . . to the extent that the production [thereof] . . . (A) could reasonably be expected to interfere with enforcement proceedings."

EOUSA also noted that non-disclosure was further required by the Privacy Act (PA), to the extent the requested records were being sought under the PA's access provisions.  Id. at ¶ 13. In so concluding, EOUSA's December 8, 2003 initial non-disclosure decision cited Privacy Act exemption (j)(2).  5 U.S.C. § 552a(j)(2).  Id.  That statutory provision authorizes the promulgation of regulations exempting from PA disclosure records maintained by an agency performing, as its principal function, activities relating to the enforcement of criminal laws. Pursuant to subsection (j)(2)'s delegation of authority, the Attorney General has promulgated regulations, at 28 C.F.R. §16.81(a), which expressly exempt from PA disclosure information contained in United States Attorneys' criminal case files.  Because the requested records here reside in that system of records (JUSTICE/USA-007, Criminal Case Files) their disclosure to the plaintiff is not authorized under the Privacy Act.[2]  Id.

EOUSA's letter of December 8, 2003, also advised plaintiff that publicly filed court records were also available and could be obtained either from the clerk of court, or from EOUSA if he wished to incur FOIA duplication fees, stating in pertinent part:

> There are public records of approximately _ 1200 _ pages which may be obtained from the clerk of the court or this office, upon specific request.  If you wish to obtain a copy of these records, you must submit a new request.  These records will be provided to you subject to copying fees.

---

[2]  See 5 U.S.C. § 552a(j)(2), authorizing regulations exempting from PA disclosure records maintained by an agency performing, as its principal function, activities relating to the enforcement of criminal laws; accord 28 C.F.R. § 16.81(a) ("The following systems of records are exempt from 5 U.S.C. 552a(c)(3) and (4), (d) [i.e., the Privacy Act's accounting and access provisions] :  . . . (4) Criminal Case Files (JUSTICE/USA–007)").

4

Id. at ¶14 and Exhibit 5 at 2.[3]   The letter of December 8, 2003, also advised plaintiff of his

administrative appeal rights in accordance with 28 C.F.R. § 16.9. Id. at ¶ 15.

    Instead of choosing one of the options to obtain records, plaintiff lodged an

administrative appeal with OIP. Id. and Exhibit 6.  On January 29, 2004, OIP acknowledged

receipt of Plaintiff's appeal and assigned it Appeal No. 04-0837.  Id. at ¶ 16 and Exhibit 7,

thereto.

    By letter dated May 11, 2004, OIP administratively affirmed EOUSA's December 8,

2003, non-disclosure decision stating:

> After carefully considering your appeal, I have decided to affirm
> the EOUSA's action on your request.
>
> These records are exempt from the access provisions of the
> Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(j)(2) . . . [and]
> EOUSA properly withheld certain information pursuant to 5
> U.S.C. § 552 (b)(7)(A). . . . The EOUSA informed you that you
> may obtain approximately 1200 pages of public records . . . subject
> to copying fees. . . .  Based on a review of . . . all of the
> information available to me, I am denying your request for a
> waiver of fees. . . .  If you are unwilling or unable to pay fees
> associated with your request, you may reformulate or narrow the
> scope of your request.

Luczynski Decl. at ¶ 17 and Exhibit 7.

    During the pendency of his administrative appeal, plaintiff instituted this civil action.

---

[3] EOUSA's policy on public court records is based on EOUSA's experience in prior
FOIA/PA cases that persons seeking information about themselves in criminal cases typically do
not wish to receive – or pay for – court records from their own proceedings (which can be
obtained from counsel or the court, if not already in their possession), but rather typically seek to
obtain internal *agency* records residing in United States Attorney's Office case files.  Conse-
quently, before producing public records, EOUSA offered the Requester an opportunity to obtain
them directly from the court  or, alternatively, from EOUSA subject to FOIA copying fees.
Luycinski Decl. at ¶ 14.

R.1.    In response to EOUSA's litigation notice, the USAO-FLM forwarded to EOUSA all

available responsive records.  Id. at ¶ 20.  The documents were processed under the FOIA and

224 pages were released-in-full ("RIF"), 5 pages were released-in-part ("RIP"), and 74 pages

were withheld-in-full ("WIF") after a reasonable segregability analysis and pursuant to several

cited FOIA/PA exemptions, as further described below.  Id. at ¶¶ 21-22 and Exhibit 11

correspondence dated June 30, 2006.  Withholdings were made pursuant to Privacy Act

Exemption (j)(2) and FOIA Exemptions (5)(7)( C) and (b)(3). 5 C.F.R. § 2634.605. Id. at § 25.

As noted above, defendants are no longer asserting Exemption (b)(3).

EOUSA's disclosure decision also noted that 41 pages originated with, and were being

referred to, the Drug Enforcement Administration ("DEA") in accordance with the Department's

FOIA referral regulations at 28 CFR § 16.4.  Id. at ¶ 23 and Exhibit 11.  Under the regulations,

the originator of a document is presumed to be best able to render a disclosure decision:

> **Consultations and referrals.**  When a component receives a
> request for a record in its possession, it shall determine whether
> another component . . . is better able to determine whether the
> record is exempt from disclosure under the FOIA . . . [and] either:
>
> (1) Respond to the request . . . after consulting with the [other]
> component . . . ; or (2) Refer the responsibility for responding to
> the request regarding that record to the component best able to de-
> termine whether to disclose it. . . . *Ordinarily, the component . . .*
> *that originated a record will be presumed to be best able to*
> *determine whether to disclose it.*

28 C.F.R. § 16.4(C) (italics added); _accord_ 28 C.F.R. § 16.4(d) ("Law enforcement

information"). Id. at ¶ 23.

    B.  EOUSA's Search for Records

Plaintiff's FOIA request sought any and all records concerning him from 1996 to the date

of his request.  See Luczynski Decl. at ¶ 2 and Exhibit 1.  Because United States Attorneys'

records are generally decentralized among over 100 offices nationwide, "SELF" requests, such

as the one submitted by plaintiff, are typically forwarded to the particular USAO in which

proceedings involving the requester are known to have been pending.  This maximizes the

requester's two free hours of search time without driving up costs, while "enable[ing]

Department personnel to locate [responsive records] with a reasonable amount of effort" within

the meaning of 28 C.F.R. § 16.3(b). Id. at § 28.

   Plaintiff's request was forwarded to the USAO-FLM to conduct a search for responsive

records because the USAO-FLM was the only District known to have been involved in

proceedings with plaintiff, having been the District where he was indicted and prosecuted for

drug trafficking. Id. at ¶ 27.

   The USAO-FLM's initial search revealed that law enforcement proceedings were still

pending against plaintiff as of October 9, 2003, as attested to by the prosecuting Assistant United

States Attorney.  Id. at ¶ 30 and Exhibit 9.  This, in turn, served as the basis for EOUSA's

asserting Exemption 7(A), among various others, in its initial non-disclosure decision dated

December 8, 2003.  Id. at ¶ 30 and Exhibit 5.  Exemption 7(A) is not being asserted here.

   After the institution of these proceedings, the USAO-FLM conducted a supplemental

search on or about May 22, 2006. Id. at ¶ 31 and Exhibit 10.  After this supplemental search, the

District located and forwarded numerous records to EOUSA for further processing. Id.

   EOUSA released and withheld certain records as summarized in its final disclosure

decision, dated June 30, 2006. Id. at ¶ 32 and Exhibit 16; see also attached Vaughn Index.  As

noted above, in total plaintiff received 229 pages of responsive documents from EOUSA – of

which 224 pages were released-in-full and 5 pages were released-in-part – and 74 pages were

withheld-in-full, as further detailed herein.  Id. at ¶ 32; see also Vaughn Index.  No FOIA

processing fees were charged because Departmental regulations state that the first 100 pages of

documents, and the first two hours of search time, are to be provided to non-commercial

requesters free of charge – and, furthermore, "[w]henever a total fee . . . is $14.00 or less for any

request, no fee will be charged."  28 C.F.R. § 16.11(d)(4).[4]  Id. at ¶ 33.[5]

###    C.  DEA Records.

Forty-one pages of DEA records were referred by EOUSA to DEA for direct response to

plaintiff. Exhibit 2, hereto (Declaration of William C. Little, Jr., DEA Privacy Office ("Little

Decl.")), ¶¶ 12-14 and Exhibit 2, thereto.  DEA acknowledged the receipt of the documents from

EOUSA by letter dated July 24, 2006.  Id. at ¶ 15.  A copy of the DEA letter dated July 24, 2006,

is attached as Exhibit B to the Little declaration.

By letter dated August 15, 2006, DEA released portions of three (3) pages, withheld 16 in

their entirety and referred one (1) page to another agency for review. Id. at ¶ 16.  DEA withheld

information pursuant to Privacy Act (PA) Exemption (j)(2), and FOIA Exemptions (b)(2),

---

[4]  Accord 28 C.F.R. § 16.11(d)(3) ("Except for requesters seeking records for a com-
mercial use," no charge is made for the first two hours of search time or the first 100 pages of
copying).

[5]  Here, the total pages released consisted of 229 pages, and, after deducting 100 free
pages, that leaves 129 pages for which a duplication fee of $.10/page could be charged, for a
total of $12.90, which is under the regulations' $14 threshold.  Moreover, while the District's
search forms reflect that two hours were expended on or about October 9, 2003 (Exhibit 9), and
another two hours were spent on or about May 22, 2006 (Exhibit 10), no search fees were
assessed given the posture of the case and to minimize potential issues. Id. at ¶ 34.

(b)(7)(C), (b)(7)(D) and (b)(7)(F).  The plaintiff was also advised that 21 pages were duplicates.[6]
Id.  A copy of the DEA Letter dated August 15, 2006, is attached to the Little declaration as
Exhibit C.

On August 15, 2006, DEA forwarded one (1) page, for consultation to the U.S. Border
Patrol to review and return.  Id. at ¶ 17.  A copy of the DEA letter dated August 15, 2006, is
attached as Exhibit D.

During the course of the litigation review, DEA discovered that the August 15, 2006,
letter was never delivered to the plaintiff and was returned to DEA by the U.S. Postal Service.  It
was also discovered that the 21 pages delineated as duplicates were not.  The 21 pages were
processed and by letter dated February 28, 2007, DEA released portions of 11 pages to the
plaintiff, and withheld 30 in their entirety.  Information was withheld pursuant to FOIA
Exemptions (b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(F), and PA exemption (j)(2).   A copy of the DEA
letter dated February 28, 2007, is attached to the Little declaration as Exhibit E. Id. at ¶ 18.  A
Vaughn index detailing DEA's withholdings has been prepared, and it is found as Exhibit 2a,
hereto.

In sum, the 41 pages of responsive information consists of:

(a).  12  DEA Reports of Investigation (ROI);

(b).  two (2) DEA Report of Drug Property Collected, Purchased or Seized forms; and,

(c).  one (1) DEA Acquisition of Non-Drug Property and Regulatory Seizure form.

Id. at ¶ 20; see also DEA's Vaughn Index.  These records were compiled during criminal law
enforcement investigations of the plaintiff and several third-parties.  Id. at ¶ 21.

_____

[6] The 21 pages were deemed duplicates of pages contained in DEA FOIA Request No.
03-0640-P processed in response to a direct request received by DEA from the plaintiff.

9

## II. ARGUMENT

### A.    Standard of Review

Summary judgment is the procedure by which courts resolve nearly all FOIA actions. See, e.g. Misciavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment, once the documents in use are properly identified."); Evans v. U.S. Office of Personnel Management, 276 F.Supp.2d 34, 37 (D.D.C. 2003). Rule 56(c) of the Federal Rules of Civil Procedure mandates summary judgment where "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; see also Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  As the Supreme Court has declared, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The FOIA generally provides that any person has a right, enforceable in court, of access to federal agency records, except to the extent that such records (or portions thereof) are protected from mandatory disclosure by one of nine exemptions.  See 5 U.S.C. § 552(b).  The Court's review of the matter is de novo.  5 U.S.C. § 552 (a)(4)(B).

In a FOIA dispute, the Government bears the burden of justifying nondisclosure of information, McCutchen v. HHS, 30 F.3d 183, 185 (D.C. Cir. 1994), which it sustains through detailed agency declarations that identify the information at issue and the bases for the exemption(s) claimed, see Summers v. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998). Summary judgment for the federal government is appropriate in a FOIA case if the declarations

submitted in support of the motion (1) describe the documents and justification for their nondisclosure in reasonably specific detail; (2) demonstrate that the information withheld logically falls within the claimed exemption; and (3) are not controverted by either (a) contrary evidence in the record or (b) evidence of agency bad faith. See Shaw v. United States Dep't of State, 559 F. Supp. 1053, 1056 (D.D.C. 1983) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see also Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984).

Given the unique nature of FOIA cases, the court accords the agency's declarations substantial weight. See, e.g. Gardels v. CIA, 689 F.2d 1100, 1104 (D.C. Cir. 1982). Indeed, agency affidavits are to be accorded a presumption of good faith. In re Wade, 969 F.2d 241, 246 (7th Cir. 1992)("Without evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding the documents should not be questioned.") Thus, an agency should prevail on summary judgment based solely on its declarations if the declarations are clear, specific, reasonably detailed, and describe the withheld information in a factual and nonconclusory manner. Miller, 730 F.2d at 776.

## B.     The Adequacy of EOUSA's Search

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records. Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Weisberg v. U.S. Dept. of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983); Judicial Watch, Inc. v. U.S. Dept. of Commerce, 337 F.Supp.2d 146, 158 (D.D.C. 2004); Allen v. U.S. Secret Service, 335 F.Supp.2d 95, 97 (D.D.C. 2004); Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, 844 F. Supp. 770, 776 (D.D.C. 1993). The adequacy of a search is necessarily "'dependent upon the circumstances of the case.'" Kronberg v. Department of Justice, 875 F. Supp. 861, 869 (D.D.C.

1995) (quoting Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also

Judicial Watch, Inc., 337 F.Supp.2d at 158. "[A] search need not be perfect, only adequate, and

adequacy is measured by the reasonableness of the effort in light of the specific request."

Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986).

Indeed, an agency is not required to search every record system, but need only search

those systems in which it believes responsive records are likely to be located. Oglesby, 920 F.2d

at 68. Additionally, the search standards under the FOIA do not place upon the agency a

requirement that it prove that all responsive documents have been located. Nation Magazine v.

U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). Even when a requested document

indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful

search for the document so long as the search was diligent. Id.; see also Allen, 335 F.Supp.2d at

99-100 (mere fact that plaintiff discovered one document from a third source that possibly

should have been uncovered by the defendant agency "does not render the search process

unreasonable.")

The burden rests with the agency to establish that it has "made a good faith effort to

conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested." Oglesby, 920 F.2d at 68. "An agency may prove the

reasonableness of its search through affidavits of responsible agency officials so long as the

affidavits are relatively detailed, non-conclusory and submitted in good faith." Miller, 779 F.2d

at 1383; Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1987), cert.

denied, 445 U.S. 927 (1980). Once the agency has proffered such evidence, i.e., a legally-

sufficient affidavit, the burden then shifts to the requester to rebut the evidence by a showing of

bad faith on the part of the agency.  Miller, 779 F.2d at 1383.  It is insufficient, however, for a

requester to attempt to rebut the agency affidavit with purely speculative claims.  See Carney v.

U.S. Department of Justice, 19 F.3d 807, 813 (1st Cir. 1994); SafeCard Services, Inc. v. S.E.C.,

926 F.2d 1197, 1200 (D.C. Cir. 1991).

The Luczynski declaration demonstrates that, in this case, the EOUSA engaged in "good

faith effort[s] to conduct. . .a search for the requested records, using methods which [were]

reasonably expected to produce the information requested." Oglesby, 920 F. 2d at 68.

Specifically, a search was conducted in the location where responsive documents were likely to

be found, i.e., United States Attorney's Office for the Middle District of Florida (USAO-FLM).

Indeed, it was the only District known to have been involved in proceedings with the plaintiff,

having been the District where he was indicted and prosecuted for drug trafficking. Luczynski

Decl. at ¶ 27.

Because United States Attorneys' records are generally decentralized among over 100

offices nationwide, "SELF" requests, such as plaintiff's, are typically forwarded to the particular

USAO(s) in which proceedings involving the requester are known to have been pending. Id. at ¶

28.  In addition, each USAO, including the USAO-FLM, has a designated FOIA Contact who

serves as the official liaison between that District and the FOIA/Privacy Staff in EOUSA. Id. at ¶

29.

The USAO-FLM's initial search revealed that law enforcement proceedings were still

pending against the plaintiff as of October 9, 2003, as attested to by the prosecuting Assistant

United States Attorney.  Id. at Exhibit 9.  (As noted above, this fact served as the basis for

EOUSA's asserting Exemption 7(A), among various others, in its initial non-disclosure decision

dated December 8, 2003).  Id. at ¶ 30 and Exhibit 5.

After the institution of this lawsuit, the USAO-FLM conducted a supplemental search on or about May 22, 2006. Id. at ¶ 31 and Exhibit 10.  After completion of the search, the District located and forwarded numerous records associated with the plaintiff to EOUSA for further processing. Id.  Those records were processed and a release was made to plaintiff on June 30, 2006. Id. at ¶ 32 and Exhibit 16.  Because EOUSA has provided a detailed memorandum that shows that it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested" [Oglesby, 920 F.2d at 68], its search obligation under the law was satisfied.

### C.  Privacy Act Non-Disclosure Justification

#### 1.  EOUSA records.

Plaintiff's request was processed under both the Privacy Act and FOIA, so as to afford the maximum disclosure authorized by law, consistent with applicable exemptions. Luczynski Decl. at ¶ 34.  Criminal case files maintained by U.S. Attorney's Offices are part of a Departmental Privacy Act system-of-records known as JUSTICE/USA-007.  The Attorney General has promulgated regulations at 28 C.F.R. §16.81 exempting USAO criminal case files from the PA's access provisions, as authorized by 5 U.S.C. §552a(j)(2) ("subsection (j)(2)"). Id.

In subsection (j)(2) of the Privacy Act, Congress expressly authorized the promulgation of regulations exempting from PA disclosure all records maintained by an agency performing, as its principal function, activities relating to the enforcement of criminal laws:

> The head of any agency may promulgate rules . . . to exempt any system of records within the agency . . . if the system of records is . . .
>
> (2) maintained by an agency . . . which performs as its principal

14

function any activity pertaining to the enforcement of criminal laws . . . and which consists of

> (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders . . . ;

> (B) information compiled for the purpose of a criminal investigation . . . ; or

> (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).  See Luczynski Decl. at ¶ 35.

The Attorney General has promulgated regulations exempting from PA disclosure information from USAO criminal case files – PA system-of-records JUSTICE/USA-007 – pertaining to Federal criminal law enforcement:

> **§ 16.81 Exemption of United States Attorneys Systems—limited access.**
>
> (a) The following systems of records are exempt from 5 U.S.C. 552a(c)(3) and (4), (d) [*i.e.,* the Privacy Act's accounting and access provisions, *inter alia*] : . . .  (4) Criminal Case Files (JUSTICE/USA–007). . . .

28 C.F.R. §16.81(a).  See Luczynski Decl. at ¶ 37.

In this case, plaintiff is seeking information maintained in the criminal case files pertaining to criminal law enforcement within the meaning of 5 U.S.C. § 552a(j)(2) and 28 C.F.R. § 16.81.  Those case files contain material directly associated with the plaintiff's investigation and prosecution – as well as sensitive law enforcement records, recommendations, and other information such as reports of potential witnesses, informants and investigators – associated with identifiable individuals and retrievable by name or other personal identifier.  As such, they are clearly law enforcement records. See Duffin v. Carlson, 636 F.2d 709, 711 (D.C. Cir. 1980).  Accordingly, EOUSA determined that the records from the plaintiff's criminal case

15

file were not properly disclosable under the PA, and next assessed whether it was releasable under FOIA. Luczynski Decl. at ¶ 37.

    2.  <u>DEA Records.</u>

DEA, like EOUSA, processed plaintiff's records under the Privacy Act and the FOIA. <u>See</u> Little Decl. at ¶¶ 29-32. DEA is a component of the Department of Justice whose primary responsibility is the enforcement of Federal criminal laws related to the illicit trafficking in controlled substances and chemicals, including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq*. See 28 C.F.R. § 0.100. <u>Id</u>. at ¶ 29. The records at issue have also been exempted from access under the Privacy Act. <u>See</u> 28 C.F.R. §16.98(c)(3).

Mr. Little further explained, "except pursuant to a written request by, or with prior written consent of [or a death certificate of] the individual to whom the record pertains, unless disclosure of the record is required by the FOIA, for a routine use or pursuant to the order of a court of competent jurisdiction" the information is properly withheld. <u>Id</u>. at ¶ 31. Since none of these factors were found in this case, the records were properly withheld by the DEA.

**D. FOIA Non-Disclosure Justification**

    1.  <u>FOIA Exemption (b)(2)</u>

Title 5, United States Code, Section 552 (b)(2) (" Exemption 2") exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. <u>Dept. of Air Force v.</u>

16

Rose, 425 U.S. 352, 369-70 (1976); National Treasury Employees Union v. U.S. Customs Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073-74 (D.C. CIR. 1981) (en banc).   This exemption protects routine internal administrative matters and functions of the FBI which have no effect on the public at large.  Disclosure of this information could impede the effectiveness of the FBI's internal law enforcement procedures.

A variety of information qualifies as predominantly internal under Exemption 2.   See PHE, Inc. v. United States Dept. of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993) (exempting general guidelines for conducting investigations); Schiller v. NLRB,  964 F.2d at 1207 (exempting guidelines for conducting post-investigation litigation); Jimenez v. FBI, 938 F. Supp. 21, 27 (D.D.C. 1996) (approving nondisclosure of criteria for prison gang member classification); Albuquerque Publishing Co. v. Department of Justice, 726 F. Supp. 851, 854 (D.D.C. 1989) ("The public has no legitimate interest in gaining information [pertaining to violator and informant codes] that could lead to the impairment of DEA investigations").

### a. EOUSA's Exemption (b)(2) Withholdings

Exemption (b)(2) was asserted by EOUSA to withhold exclusively internal DOJ information found on emails, Conflict of Interest Certification forms, a Case Initiation Form, cover pages, "Lions-Criminal Matter Initiation Form;"  facsimile transmission with cover page, an "Appeal Transfer Information Form."  See Vaughn Index, attached hereto at Documents 1, 2, 3, 4, 5, 7, 8, 9, 11, 14, 15.  These documents withheld are commonly referred to as "low 2" due to their content.  The information is of a relative trivial nature, internal to the agency, and of little public interest. See Luczynski Decl. at ¶ 39.

17

b.  DEA's Exemption (b)(2) Withholdings

Exemption (b)(2) was asserted by DEA to protect "violator identifiers" such as G-DEP

(Geographical Drug Enforcement Program) codes and NADDIS (mulit-digit numbers assigned

to drug violators and suspected drug violators).  Little Decl. at ¶ 34.  The release of G-DEP

codes would help to identify the priority given to narcotic investigations by DEA, the types of

criminal activities involved of which DEA was aware, and the violator ratings. Id. at ¶ 35.  The

NADDIS numbers codes are unique and personal to the individual to whom the number applies.

These records are used for internal use and there is no public interest in their release. Id. at ¶ 36.

2.  FOIA Exemption (b)(5)

Exemption (b)(5) protects "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party other than an agency in litigation with the agency."  5

U.S.C. § 552(b)(5); see also  See United States v. Weber Aircraft Corp., 465 U.S. 792, 799

(1984); FTC v. Grolier, Inc., 462 U.S. 19, 26 (1983); Martin v. Office of Special Counsel, 819

F.2d 1181 (D.C. Cir. 1987).

The deliberative process privilege is incorporated within Exemption 5.  NLRB v. Sears,

Roebuck & Co., 421 U.S. 132, 151 (1975).  The purpose of this privilege is to protect the

"quality of agency decisions."  Id.   The policy underlying this privilege is to encourage open,

frank discussions of policy matters between subordinates and supervisors, to protect against

premature disclosure of proposed policies before they become final, and to protect against public

confusion by disclosing reasons and rationales that were not in fact the ultimate grounds for the

agency's action.  See, e.g., Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir.

1982); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980); Jordan

18

v. United States Dep't of Justice, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc),  overruled in

part on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms, supra.  As the Court

in Coastal States held, the privilege protects "recommendations, draft documents, proposals,

suggestions, and other subjective documents which reflect the personal opinions of the writer

rather than the policy of the agency" before a decision is made.  Coastal States, 617 F.2d at 866.

Courts have recognized that agencies are entitled to deference in regard to the way they

characterize their deliberative process.  See generally Allen v. Wright, 468 U.S. 737 (1984);

Women's Equity Action League v. Bell, 743 F.2d 42, 43 (D.C.Cir.1984).

Exemption (b)(5) incorporates the attorney-client privilege, the attorney work-product

privilege, in addition to the executive "deliberative process" privilege that protects candid

internal discussion of legal or policy matters".  Maricopa Audubon Society v. U.S. Forest

Service, 108 F.3d 1082, 1084 n. 1 (9th Cir. 1997); see also  Mead Data Central v. Department of

the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977).

EOUSA invoked FOIA Exemption (b)(5) in connection with the documents noted in the

accompanying Vaughn index to protect intra-governmental law enforcement information and

recommendations covered by the attorney work product and deliberative process privileges.  The

withheld documents contain attorney work product and prosecutorial recommendations. Id. at

¶42; see Vaughn Index at Documents 1, 3, 5-16.  Briefly stated, they included information on

emails between attorneys discussing legal files and procedures (Document 1), case initiation

form with initiating information on them (Document 3), a letter from an AUSA to an individual

informing the individual of his witness status (Document 5), internal DOJ communications

including those between attorneys and law enforcement officials concerning plaintiff

19

(Documents 6, 9 & 14), handwritten attorney notations and margin notations on a checklist concerning certain aspects of the plaintiff's case (Documents 7, 11 & 16), forms with identifying information relating to and/or connected with plaintiff's case (Document 8), draft copy of an affidavit from a task force agent discussing the case (Document 10), draft copy of an authorization for departure from sentencing guidelines prepared by an attorney (Document 12), and a draft copy of a government motion (Document 13). See EOUSA's Vaughn Index.

The withheld documents reflect the drafter's and/or prosecutor's interpretations and evaluations of the pertinent facts and law, as well as legal opinions pertinent to the plaintiff's criminal case and the Federal interest therein. See Luczynski Decl. at ¶ 42. Public disclosure of such materials would chill sensitive internal deliberations and stymie the effective enforcement of Federal criminal laws. Id. To disclose the withheld material would also reveal pre-decisional communications among government officials related to litigation theories, issues, alternatives, and/or strategies. Disclosure would jeopardize the candid and comprehensive deliberations essential for meaningful, efficient, and effective decision-making by Federal law enforcement agencies. Id. The withheld information is thus deemed classic Exemption (b)(5) material. Id.

4. FOIA Exemption (b)(7)(C)

The FOIA, 5 U.S.C. § 552, does not apply to matters that are:

> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. Reporters

Comm. for Freedom of the Press v. U.S. Dept of Justice, 816 F.2d 730, 780 (D.C. Cir. 1987),

modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S.

749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904

(D.C. Cir. 1996).  Indeed, an agency in a FOIA case may categorically assert Exemption 7(C) to

protect the identities of witnesses or other persons mentioned in law enforcement files in such a

way as to associate them with criminal activity.  Reporters Comm. for Freedom of the Press, 489

U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir.

1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

       The names of law enforcement officers who work on criminal investigations have also

traditionally been protected against release by Exemption 7(C).  Davis v. U.S. Dep't of Justice,

968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-488

(D.C. Cir. 1980).  Similarly, individuals who provide information to law enforcement authorities,

like the law enforcement personnel themselves, have protectable privacy interests in their

anonymity.  Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dep't of

Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).

       Once a privacy interest has been established, as here, it must be balanced against the

public interest, if there is any, that would be served by disclosure.  Albuquerque Publ'g Co. v.

Dep't of Justice, 726 F. Supp. at 855.  The public interest in disclosure is limited to the FOIA's

"core purpose" of shed[ing] light on an agency's performance of its statutory duties."  Reporters

Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).  This standard is not easily satisfied

when law enforcement information pertaining to individuals is sought, for there "is no

reasonably conceivable way in which the release of one individual's name . . . would allow

citizens to know 'what their government is up to.'" Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990). See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation). Furthermore, in order to overcome legitimate privacy interests, the requester must not only demonstrate the existence of the public interest but also that the public interest is both significant and compelling. Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

### a. EOUSA's Exemption (b)(7)(C) Withholdings.

As reflected in the Vaughn Index provided by EOUSA, certain records of EOUSA were deemed exempt under FOIA Exemption (b)(7)(C), as they were compiled for law enforcement purposes, and if disclosed they could reasonably be expected to constitute an unwarranted invasion of personal privacy. Indeed, this information was compiled to facilitate the investigation and criminal prosecution of the plaintiff. Luczynski Decl. at ¶ 43.

Specifically, Exemption (b)(7)(C) was asserted by EOUSA to withhold information contained in Documents 1, 3, 5-10, 14 and 17 in an effort to protect the identity of third-party individuals, such as potential witnesses and law enforcement personnel, the release of which could subject such persons to an unwarranted invasion of their personal privacy. See Id. at ¶ 44 and attached Vaughn Index. Release of such personal identifiers could result in unwanted efforts to gain further access to such persons or to personal information about them – or subject them to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences – all to their detriment. Luczynski Decl. at ¶ 44.

22

EOUSA determined that such information is exempt from disclosure under Exemption (b)(7)(C), and that there was no countervailing public interest in the release of this privacy-protected information. Its dissemination would not help explain government activities and operations or outweigh third-party individuals' privacy rights in the information withheld under this exemption. Moreover, no third-party individual provided authorization or consent to disclose such information. *Cf*. 5 U.S.C. § 552a(b) ("No agency shall disclose any record . . . contained in a system of records . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains" unless otherwise authorized by law). Luczynski Decl. at ¶ 45.

### b. DEA's Exemption (b)(7)(C) Withholdings.

As described below and in DEA's Vaughn Index, many of the documents in the investigative case file contain names and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with the plaintiff. The individuals, which include third-parties, suspects, criminal associates, non-implicated individuals, and law enforcement officers and support personnel, are protected from the disclosure of their identities. Little Decl. at ¶ 38.

DEA withheld the identities of DEA Special Agents, and other Federal, state/local law enforcement officers under Exemption (b)(7)(C). Little Decl. at ¶41. As noted by Mr. Little, releasing their identities and identifying information would place the Special Agents, and the other law enforcement officers in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file. Id. These Special Agents and other law enforcement officers

were assigned to handle tasks relating to the official investigation into the criminal activities of

the plaintiff. Id. at ¶ 42. They were, and possibly still are, in positions of access to information

regarding official law enforcement investigations. If their identities are released, they could

become targets of harassing inquiries for unauthorized access to information pertaining to

ongoing and closed investigations. Id. There is no public interest to be served by releasing the

identities of DEA agents. Id.

DEA also withheld the identities of government employees, including DEA and FBI

Special Agents, and a DEA non-drug evidence custodian. Id. at ¶ 43. Like the Special Agents

describe above, releasing the identities and identifying information of these individuals would

place them in such a position that they may suffer undue invasions of privacy, harassment and

humiliation from disclosure of their identities in a criminal law enforcement investigatory file.

Id. There is no public interest to be served by releasing the identities of government employees.

Id. and ¶ 44. As explained by Mr. Little:

> In making the determination to withhold this information, the individuals' privacy
> interests were balanced against any discernible public interest in disclosure of the
> individuals' identities. In this instance, the plaintiff provided no facts to show
> any public interest for which any potential public interest would outweigh the
> privacy interests of the individuals. Thus, disclosure of the identities would be an
> unwarranted invasion of their personal privacy.

Little Decl. at ¶ 39.

Mr. Little also noted that each piece of information was examined to determine the

degree and nature of the privacy interest of any individual whose name and/or identifying data

appeared in the documents at issue. Id. at ¶ 40. The public interest in disclosure of the

information was determined by whether the information in question would inform the plaintiff or

the general public about DEA's performance of its mission to enforce Federal criminal statutes

and Controlled Substance Act, and/or how DEA conducts its internal operations and

investigations.  In this case, it was determined that there was no legitimate public interest in the

information withheld under exemption (b)(7)C, and release of any information about a third

party would constitute an unwarranted invasion of that third party's personal privacy. Id.

     5.  FOIA Exemption (b)(7)(D)

     Title 5, United States Code,  § 552 (b)(7)(D) (hereinafter Exemption (7)(D)), exempts

from disclosure material that:

> could reasonably be expected to disclose the identity of a
> confidential source including a State, local or foreign agency or
> authority or any private institution which furnished information on
> a confidential basis, and, in the case of a record or information
> compiled by a criminal law enforcement authority in the course of
> a criminal investigation, or by an agency conducting a lawful
> national security intelligence investigation, information furnished
> by a confidential source.

Exemption (7)(D) recognizes that information furnished by third parties cooperating with

Federal, state or local law enforcement investigations is, by its very nature confidential.

Significantly, the statute affords protection from disclosure to all the information furnished by

third-party sources, as well as the actual identity of the cooperating individual, if there has been

an explicit assurance of confidentiality or circumstances exist from which such an assurance

could reasonably be inferred.  U.S. Dep't of Justice v. Landano, 508 U.S. 165 (1993).  This

exemption recognizes the distinct likelihood that the identity of a source may often be

determined from an analysis of the information furnished by the source himself.  Indeed, this

becomes more inevitable when the analysis is made by a person familiar with the facts and

circumstances on which the investigation was predicated.

     Here, the plaintiff was convicted of conspiracy to distribute large quantities of marijuana

and methamphetamine. Id. at ¶ 47. It is reasonable to infer that the individuals who provided information about the plaintiff and other individuals would fear for their safety, if their identities or the information they provided was revealed. Id. Additionally, release of the name of the sources could jeopardize DEA operations, since their cooperation and that of other similarly situated individuals could be needed in future criminal investigations. Id.

DEA provides a detailed report in Mr. Little's declaration concerning the pages that were withheld pursuant to Exemption (b)(7)(D). He notes the number of pages and the information contained therein. He explains that the sources were identified and provided information about the drug trafficking activities of himself/herself, the plaintiff, and third parties, and that the plaintiff and other third-parties are mentioned throughout the documents. Id. at ¶¶ 48-52; see also Vaughn Index.

When it cannot be ascertained that a source was found to have been expressly made a promise of confidentiality, certain circumstances characteristically may support an inference of confidentiality, such as the character of the crime being investigated, and the source's relation to the nature of the crime. Id. at ¶ 46. The description provided by Mr. Little provides sufficient information concerning the records withheld to warrant a withholding under Exemption (b)(7)(D).

### 6. Exemption (b)(7)(F) Withholdings.

FOIA, 5 U.S.C. § 552 (b)(7)(F), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of a wide range of individuals. This exemption provides broad protection to "any individual" when disclosure of information about him or her "could reasonably be expected to endanger [his or her life] or physical." Id. This protection flows to

law enforcement officers and others. See e.g., Rugiero v. U.S. Dep't of Justice, 257 F.3d 534,

552 (6th Cir. 2001) (protecting names of DEA agents), cert. denied 534 U.S. 1134 (2002);

Blanton v. U.S. Dep't of Justice, 182 F.Supp. 2d 81, 87 (D.D.C. 2002) (same); Spirko v. USPS,

147 F.3d 992, 994 (D.C. Cir. 1998) (protecting handwritten notes about suspects; Jimenez v.

FBI, 938 F.Supp. 21,  (D.D.C. 1996) (protecting names and identifying information furnished by

confidential sources).  Although Exemption 7(F)'s coverage is in large part duplicative of that

afforded by Exemption 7(C), it is potentially broader in that no balancing of interests is defined

for withholding under Exemption 7(F).  See Garcia v. U.S. Department of Justice, 181 F.Supp.

2d 356,  373 (S.D.N.Y. 2002) (protecting names of FBI agents and other government agents);

see also Jimenez v. FBI, 938 F.Supp. 21, 30-31 (D.D.C. 1996) (disclosure of names of DEA

investigative personnel would endanger lives of agents and have "detrimental effect" on DEA's

operations).

     As explained in Mr. Little's declaration that it has been DEA's experience that discovery

of the identities of sources has, in the past, resulted in several instances of physical attacks,

threats, harassment, attempted murder and murder of sources and individuals connected to them.

Little Decl. at ¶ 54.  Many of the violators are armed and many have known violent tendencies.

Id.  It therefore may be reasonably anticipated that sources and individuals associated with the

source would become targets of similar abuse if they were identified as participants in DEA

enforcement operations. Id.  Accordingly, DEA properly applied Exemption 7(F) to protect

individuals identified in its records. See Id. and Vaughn Index.

    **E.  Segregability**

     The FOIA requires that if a record contains information that is exempt from disclosure,

any "reasonably segregable" information must be disclosed after deletion of the exempt

information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." Mead Data, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

EOUSA closely evaluated for segregability all documents that were either released-in-part or withheld-in-full. Luczynski Decl. at ¶ 46. All nondisclosed information was exempt from release pursuant to one or more of the various FOIA and/or PA exemptions listed above, and EOUSA determined that no meaningful portions of the withheld documents could reasonably be released without destroying the integrity of those document as a whole. Id. In short, no reasonably segregable non-exempt information has been withheld from the plaintiff. Id.

28

DEA also evaluated each page of the records to determine whether any reasonably segregable information could be released. Little Decl. at ¶¶ 56, 58, 60.  As Mr. Little explained:

> Pages were withheld in their entirety where the release of any additional information would (1) result in the disclosure of no useful information or incomprehensible words and/or phrases that would not shed any light on how the Government conducts business, (2) could result in compromising the identity of and  information provided by sources of information who were granted express confidentiality or, because of the circumstances, implied confidentiality was applicable, (3) would be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation, and/or (4) place in jeopardy the lives and safety of third parties which includes sources of information, individuals associated with or mentioned in the investigative reports, and DEA agents and other law enforcement personnel.

Id. at ¶ 56.  Most of the pages withheld in their entirety comprise interviews with and statements of confidential informants regarding the drug trafficking activities of the plaintiff and other third-parties. Id. at ¶ 57.  Numerous third party individuals discussed in the material have strong interests in not being publicly associated with a criminal investigation. Id.  Consideration was also specifically given to the processing of the pages withheld in their entirety, i.e., Pages 1 through 3, 4 through 14, 27 through 29, 30 through 32, 33 through 35, 36 through 39 and 40 through 41. Id. at ¶ 61 (Exemption (b)(7)(D) withholdings).  Id.   As the declaration and accompanying Vaughn Index provided by the DEA demonstrates, DEA processed and released all segregable records.

### III.    CONCLUSION

For the reasons stated herein, Defendants request that summary judgment on plaintiff's FOIA claims be entered in their favor.  A proposed order is attached.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMIN JONES,                                    )
                                               )
                    Plaintiff,                 )
                                               )
          v.                                   )          Civil Action No. 06-248 (PLF)
                                               )
U.S. DEPARTMENT OF JUSTICE, et al.,            )
                                               )
                    Defendants.                )
_____        )

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.  Plaintiff, on or around July 6, 2003, submitted a request for records relating to himself

to EOUSA.  See Exhibit 1, Declaration of David Lucynski, Attorney Advisor, EOUSA,

("Lucynski Decl.") ¶¶ 1-2, 7.

2.  Accompanying plaintiff's July 6, 2003, FOIA request was a "Certification of Identity"

form purportedly executed under oath on March 10, 2003.  Id. at ¶ 7, and Exhibit 1, thereto.

3.  By letter dated September 11, 2003, EOUSA advised plaintiff that his inquiry had

been designated Request No. 03-2895 ("Subject:  SELF/FLM") for purposes of processing.

Lucynski Declaration at ¶ 3 and Exhibit 2, thereto.

4.  Plaintiff's request was deemed to be one for any and all records pertaining to himself

maintained by the United States Attorney's Office for the Middle District of Florida (USAO-

FLM).  Id. at ¶ 4 and Exhibit 2, thereto.  That District was the only one known to have been

involved in proceedings with plaintiff, having been the District where he was indicted and

prosecuted for drug trafficking.  Id. at ¶ 4 and Exhibit 3, thereto.

5.  On October 10, 1003, EOUSA received a response from the USAO-FLM advising

that it had expended the two free hours of search time afforded to all requesters free-of-charge

pursuant to the regulations at 28 C.F.R. § 16.11(d)(3). <u>Id</u>. at ¶ 6. The USAO-FLM also advised EOUSA that law enforcement proceedings were still actively pending against plaintiff and a co-defendant. <u>Id</u>.

6. Plaintiff apparently sent two appeal letters to the Department's Office of Information & Privacy ("OIP") regarding his FOIA request to EOUSA, although they are not in OIP's file. <u>Id</u>. at ¶ 7.

7. By letters dated November 18 and December 23, 2003, OIP responded to the plaintiff's correspondence, which sought to inquire as to the status of Request No. 03-2895 and/or administratively appeal EOUSA's failure to process it sooner. <u>Id</u>. at ¶ 8.

8. OIP advised plaintiff that "EOUSA is still processing your request [and] . . . [a]lthough the Act authorizes you to treat the failure of the EOUSA to act on your request within the specified time limit as a denial thereof, . . . [o]ur function is limited to the review of those records to which access is in fact denied." <u>Id</u>. and Exhibit 4, thereto.

9. EOUSA responded to plaintiff on December 8, 2003, releasing some records and withholding others pursuant to the Privacy Act, and FOIA exemptions (b)(3); (b)(5); and (b)(7)(C). <u>Id</u>. at ¶¶ 12-14, and Exhibit 5. Defendants no longer invoke Exemption (b)(3).

10. The letter of December 8, 2003, also advised plaintiff of his administrative appeal rights in accordance with 28 C.F.R. § 16.9. <u>Id</u>. at ¶ 15.

11. Instead of choosing one of the options to obtain records, plaintiff lodged an administrative appeal with OIP. <u>Id</u>. and Exhibit 6. On January 29, 2004, OIP acknowledged receipt of Plaintiff's appeal and assigned it Appeal No. 04-0837. <u>Id</u>. at ¶ 16 and Exhibit 7, thereto.

2

12.  By letter dated May 11, 2004, OIP administratively affirmed EOUSA's December 8, 2003.  Luczynski Decl. at ¶ 17 and Exhibit 7, thereto.

13.  Forty-one pages of DEA records were referred by EOUSA for direct response to plaintiff. Declaration of William C. Little, Jr., DEA Privacy Office ("Little Decl."), ¶¶ 12-14 and Exhibit 2, thereto.

14.  DEA acknowledged the receipt of the documents from EOUSA by letter dated July 24, 2006.  Id. at ¶ 15.  A copy of the DEA letter dated July 24, 2006, is attached as Exhibit B.

15.  By letter dated August 15, 2006, DEA released portions of three (3) pages, withheld 16 in their entirety and referred one (1) page to another agency for review. Id. at ¶ 16.

16.  DEA withheld information pursuant to Privacy Act (PA) Exemption (j)(2), and FOIA Exemptions (b)(2), (b)(7)(C), (b)(7)(D) and (b)(7)(F).  The plaintiff was also advised that 21 pages were duplicates. Id.  A copy of the DEA Letter dated August 15, 2006, is attached as Exhibit C to the Little Declaration.

17.  On August 15, 2006, DEA forwarded one (1) page, for consultation. to the U.S. Border patrol to review and return.  Id. at ¶ 17.  A copy of the DEA letter dated August 15, 2006, is attached as Exhibit D.

18.  During the course of the litigation review, it was discovered that the August 15, 2006, letter was never delivered to the plaintiff and was returned to DEA by the U.S. Postal Service.  It was also discovered that the 21 pages delineated as duplicates were not.  The 21 pages were processed and by letter dated February 28, 2007, DEA release portions of 11 pages to the plaintiff, and withheld 30 in their entirety.

19.  Information was withheld pursuant to FOIA Exemptions (b)(2), (b)(7)(C), (b)(7)(D),

(b)(7)(F), and PA exemption (j)(2).   A copy of the DEA letter dated February 28, 2007, is

attached as Exhibit E. Id. at ¶ 18.

    20.  A Vaughn index detailing DEA's withholdings is attached as Exhibit F to the Little

Declaration.

    21.  Both EOUSA and DEA processed the records to determine that all nonsegregable

records were released.  Luczynski Decl. at ¶ 46; Little Decl. at pp. 17-19.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

4

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion and supporting documents was

served this 2nd day of March 2007, on plaintiff by first class mail, postage prepaid, at:

AMIN JONES, pro se
LAUREN JAMES BRIEFING INC.
P.O. Box 585
Bronx, NY 10461

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

5